Bridget B. Hirsch, Esq.
Jeremy E. Deutsch, Esq.
 *(Admitted Pro Hac Vice)*
Christian V. Cangiano, Esq.
 *(Admitted Pro Hac Vice)*
ANDERSON KILL L.L.P.
Wells Fargo Building
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071
Tel:  (213) 943-1444
Fax:  (212) 278-1733

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN A. SUGARMAN, COR CAPITAL, LLC, COR ADVISORS, LLC<br><br>Plaintiffs,<br><br>-against-<br><br>MUDDY WATERS CAPITAL, LLC, JASON GALANIS, CASTALIAN PARTNERS, LLC, CARSON BLOCK, JAMES GIBSON, DAVID Q. MATTHEWS, GARY ROBERT MATTHEWS, KALYN MATTHEWS DENNO, ADAM J. DENNO, KEITH ALLEN DILLING, ROSEMARY NORRIS HALL, CASTALIAN PARTNERS VALUE FUND, LP, QKM, LLC, MUDDY WATERS RESEARCH LLC, MLAF LP, MWCP LLC, JOHN DOES 1-30<br><br>Defendants. | **Civil Action No.** 19-cv-04248-MMC<br><br>**Hon. Maxine M. Chesney, U.S.D.J.**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA CODE 17200 FOR UNFAIR COMPETITION;**<br><br>**(2) CONSPIRACY TO VIOLATE CALIFORNIA CODE 17200 FOR UNFAIR COMPETITION;**<br><br>**(3) DEFAMATION;**<br><br>**(4) VIOLATION OF THE RACKETEER INFLUENCE CORRUPT ORGANIZATIONS ACT - 18 U.S.C. § 1962(c); and**<br><br>**(5) CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(c) OF THE RACKETEER INFLUENCE CORRUPT ORGANIZATIONS ACT IN VIOLATION OF 18 U.S.C. § 1962(d)**<br><br>**DEMAND FOR JURY TRIAL** |

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

# <u>TABLE OF CONTENTS</u>

**Page**

OVERVIEW OF THE ACTION ............................................................................ 1

PARTIES AND RELATED NON-PARTIES .......................................................... 1

GALANIS ............................................................................................................ 2

BLOCK/MUDDY WATERS .................................................................................. 3

GIBSON/CASTALIAN ......................................................................................... 4

DAVID Q. MATTHEWS AND THE MATTHEWS DEFENDANTS ........................ 5

OTHER RELATED PARTIES .............................................................................. 7

THE SMEAR ENTERPRISE ............................................................................... 8

GENERAL OVERVIEW OF THE SCHEME ...................................................... 10

JURISDICTION AND VENUE ........................................................................... 13

INTRADISTRICT ASSIGNMENT ...................................................................... 15

FACTS WITHIN THE EXCLUSIVE CUSTODY AND CONTROL OF DEFENDANTS ........ 15

AGENCY AND CIVIL CONSPIRACY ALLEGATIONS ...................................... 15

OPERATIVE FACTS COMMON TO ALL COUNTS .......................................... 16

BACKGROUND ................................................................................................ 16

   SUGARMAN AND GALANIS .................................................................... 16

   GALANIS DECIDES TO RETALIATE AGAINST AND ATTEMPTS TO THREATEN WITNESS SUGARMAN ............................................................. 19

   GALANIS JOINS WITH THE OTHER DEFENDANTS ............................... 21

   GALANIS PROVIDES FALSE INFORMATION AND DOCUMENTS............ 22

   THE ACTIONS OF THE DEFENDANTS .................................................... 26

   MUDDY WATERS FIRST ATTEMPT TO PUSH THE FALSE INFORMATION ............. 29

   THE INITIAL BLOG POST ......................................................................... 30

   THE SECOND BLOG POST ...................................................................... 39

   THE WEBSITE .......................................................................................... 41

   THE THIRD BLOG POST .......................................................................... 44

   THE TWITTER ATTACKS.......................................................................... 49

   OTHER WAYS IN WHICH THE SMEAR ENTERPRISE HAS ATTACKED PLAINTIFFS ............................................................................................... 56

      Spreading False Information to Regulators ........................................ 56

      Spreading False Information to the Media........................................... 57

      Abuse of Litigation Process ................................................................ 58

      Spreading False Information to the Financial Community.................... 58

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

i

**FIRST AMENDED COMPLAINT**

Other Joint Acts ........................................................................................ 59

MR. SUGARMAN AND THE COR PLAINTIFFS ARE DAMAGED BY THE ATTACKS 61

DEFENDANTS USE THE ATTACKS TO PROFIT ........................................... 65

Defendants' Trading Profits................................................................... 66

Defendants Cover Their Shorts .............................................................. 68

Innocent Third-Parties are Defrauded by Defendants Through Non-Securities Transactions ........................................................................................... 71

ROTA FORTUNAE WAS USED TO DEFRAUD SEEKING ALPHA .................. 76

ON-GOING SCHEME AGAINST PLAINTIFFS – TO COVER THEIR TRACKS ............. 79

CAUSES OF ACTION ................................................................................. 80

FIRST CAUSE OF ACTION:  UNFAIR COMPETITION  (CA Civil Code § 17200 – Against All Defendants)........................................................................................ 80

SECOND CAUSE OF ACTION:  CONSPIRACY TO ENGAGE IN UNFAIR COMPETITION (Against All Defendants) ............................................................................. 82

THIRD CAUSE OF ACTION:  DEFAMATION  (Against All Defendants)............................ 83

FOURTH CAUSE OF ACTION:  VIOLATIONS OF THE RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962(c)  (Against All Defendants)........... 84

Enterprise .............................................................................................. 84

The Racketeering Violations.................................................................. 87

Pattern of Racketeering Activities ......................................................... 89

The Predicate Acts constituting Wire Fraud .......................................... 91

Damages and Standing........................................................................... 92

FIFTH CAUSE OF ACTION:  VIOLATIONS OF THE RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962(d)  (Against All Defendants)........... 93

JURY TRIAL DEMAND ............................................................................. 96

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Plaintiffs, Steven A. Sugarman, COR Capital, LLC, and COR Advisors, LLC, as and for their complaint against all defendants set forth above in the caption, respectfully allege upon personal knowledge or upon information and belief where indicated, as follows:

## OVERVIEW OF THE ACTION

1.      This action is brought against defendants who, individually and collectively, engaged and continue to engage in a pattern of racketeering activity and unfair competition by means of unlawful, unfair and/or fraudulent business acts and practices.

2.      Defendants' conduct was a collective undertaking and conspiracy to destroy the reputation and business prospects of Steven Sugarman and his limited liability companies in a scheme to retaliate against Mr. Sugarman for his past testimony, to attempt to intimidate, threaten or corruptly persuade Mr. Sugarman from providing further testimony to Federal law enforcement in regards to various frauds attempted and committed by Jason Galanis, and simultaneously to profit from the destruction of Mr. Sugarman's and the other plaintiffs' professional reputations. As a result of the serial, coordinated attacks on Mr. Sugarman and his associated entities, plaintiffs were damaged, the defendants profited, and other unrelated parties were also defrauded.

3.      The plaintiffs seek recovery under claims of violation of the Racketeer Influenced and Corrupt Organizations statutes, the California Unfair Competition statutes, and under common law claims.

## PARTIES AND RELATED NON-PARTIES

4.      Plaintiff Steven A. Sugarman ("Sugarman") is the former Chairman of the Board, President, and Chief Executive Officer of Banc of California and a prominent California businessman.  He is also the Managing Member of COR Plaintiffs.  He is now and at all times relevant was a resident of the County of Los Angeles and the State of California.  Plaintiff Sugarman has suffered an injury-in-fact for which he is entitled to seek monetary damages and/or equitable relief.

5.      COR Capital, LLC is a Delaware limited liability company, headquartered and registered to do business in California that is managed by Steven Sugarman and owned by Mr.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    Sugarman and his wife.

2         6.      COR Advisors, LLC is a Delaware limited liability company headquartered and

3    registered to do business in California that is managed by Steven Sugarman and owned by Mr.

4    Sugarman and his wife.

5         7.      Mr. Sugarman was also at all relevant times the managing member of COR

6    Capital LLC, a Southern California-based investment firm ("COR Capital") and COR Advisors

7    LLC ("COR Advisors") (collectively, the "COR Plaintiffs").

8         8.      Banc of California, a non-party, is a federally chartered financial holding

9    company under the laws of the United States with its principal place of business in Santa Ana,

10   CA.  It is a publicly traded company under the ticker symbol "BANC" on the New York Stock

11   Exchange.  Banc of California has a national bank subsidiary Banc of California, NA (Banc NA).

12   Banc of California was incorporated in March 2002 and formerly known as "First PacTrust

13   Bancorp, Inc."  It changed its name to Banc of California in July 2013.  Mr. Sugarman and the

14   COR Plaintiffs led the recapitalization of Banc of California (then called First PacTrust Bancorp)

15   in November 2010 and Mr. Sugarman became a member of Banc of California's Board of

16   Directors following the closing of the transaction.  In 2012, Mr. Sugarman became the Chief

17   Executive Officer of Banc of California and in 2013 Mr. Sugarman became the Chairman,

18   President, and Chief Executive Officer of both Banc of California and Banc NA.

19                              **GALANIS**

20        9.      Defendant Jason Galanis ("Galanis") is a convicted felon who presented himself

21   as an investor and businessman until he pled guilty to participating in two separate financial

22   frauds, one of which involved the manipulation through a "pump and dump" scheme of the stock

23   of the now-defunct reinsurer, Gerova Financial Group, Ltd., and the other of which involved a

24   scheme to defraud a Native American tribe and multiple pension funds through the issuance of

25   $60 million worth of tribal bonds.  Upon information and belief, Mr. Galanis is now and was at

26   the time of the filing and service of the complaint a resident of the Metropolitan Detention

27   Center in Brooklyn, New York where he is serving out a sentence for those crimes with a

28   published "release date" of July 9, 2030.  Galanis' brother, Derek Galanis, in a book he

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL.: (213) 943-1444 FAX: (213) 278-1733

published in 2019, states that Galanis is an expert at forging and lifting signatures, manipulating documents, and creating fraudulent documents. He also states that Galanis, who was dubbed "Porn's New King" by Forbes Magazine in 2004, and was charged by the SEC in 2005 for his role in a fraud relating to Penthouse Magazine, has long-term connections with the Gambino organized crime family and often threatens people (including his own family) with extortion, including by threatening to make false regulatory reports in order to pressure them into facilitating his wrongdoing or to punish them for not facilitating his wrongdoing.

### BLOCK/MUDDY WATERS

10.     Defendant Muddy Waters Capital, LLC (Muddy Waters Capital) is affiliated with Defendants Muddy Waters Research LLC, MLAF LP, and MWCP LLC (collectively "Muddy" or "Muddy Waters" or the "Muddy Waters Entities") which all hold themselves out as specializing in research, investment, and trading in short sales of publicly traded equities[1]. Muddy Waters Capital and MWCP are limited liability companies formed under the laws of the State of Delaware with their principal places of business in San Francisco, CA. MLAF is a limited partnership formed under the laws of the State of Delaware with its principal place of business in San Francisco, CA. Upon information and belief, Muddy Waters Research is a limited liability company formed under the laws of the State of Delaware with its principal place of business in San Francisco, CA. Muddy Waters has admitted to using pseudonyms and anonymous blogs and sham "research" organizations to publish allegations of wrongdoing to support its short positions in the past (and Muddy Waters has been sued for such conduct by parties who allege its allegations were false, defamatory and violated the law) (see Exhibit V hereto). Upon information and belief, Muddy Waters' members and/or partners are all residents and domiciliaries of the State of California.

11.     Defendant Carson Block ("Block") is the managing member and founder of

---

[1] A short sale of common stock is a trading strategy which speculates on the decline in the price of the stock. Under a short trade, a trader borrows a security which is trading for $X and pledges to return the security by a date specified. The trader then sells the security for that same $X with the expectation that the price of the security will drop such that the trader can repurchase the security from another party at the lower price ($X-1) prior to the date on which the security must be returned to the party from whom the trader borrowed it. The trader intends to profit from the difference between the price at which she sold the security and the price for which she had to repurchase prior to returning it.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Muddy Waters and is also a resident of the State of California.  Block controls each of the Muddy Waters entities.

12.     Block and Muddy Waters operate a subscription based newsletter published under their real names and are paid contributors to seekingalpha.com and appear on television providing short seller investment opinions under their real names and personas.

13.     In 2018, Block and Muddy Waters admitted in a federal civil case to having used anonymous blogs in the past to attack a public company and its leadership in July 2015 shortly prior to the attack on Plaintiffs, including on seekingalpha.com, to conceal their identity and involvement in publications that smeared third parties in an effort to profit from trading done in the wake of such attacks. The companies Block and Muddy Waters cover in their newsletter, television appearances, and online articles under their real names are different from those they smear using concealed identities, as to which they do not want the public to be aware of their involvement in the smears.  An example of this practice is the creation of the account Dupre Analytics' Blog on seekingalpha.com and the creation and use of the alias Dupre Analytics to conceal Muddy Waters' identity relating thereto.

14.     Once Block was exposed as directly using anonymous blog posts to smear third parties, he turned to a practice of partnering with smaller companies to act as fronts between him, the Muddy Waters Entities and the smears and attacks that he wanted made against other companies and persons.

## GIBSON/CASTALIAN

15.     Defendant Castalian Partners Value Fund, LP ("Value Fund") is a limited partnership organized under the laws of Delaware with the principal place of business in Excelsior, Minnesota.  Upon information and belief, Value Fund's partners are all residents and domiciliaries of the State of Minnesota.

16.     Defendant Castalian Partners, LLC ("Castalian Partners"), the general partner of Value Fund, is a Minnesota limited liability company with its principal place of business at the same address as the Value Fund (Castalian Partners together with Value Fund are referred to herein as "Castalian" or the "Castalian Entities").  Upon information and belief, Castalian's

1    members all residents and domiciliaries of the State of Minnesota.

2        17.    Defendant James Gibson ("Gibson") is a resident of the State of Minnesota and is

3    the manager of Castalian Partners and the executive officer of the Castilian Value Fund.  Gibson

4    controls the Castalian Entities.

5        18.    Gibson and the Castalian Entities are one of the groups which act as a front for

6    Block and Muddy Waters to publish smears against people and companies – such as Plaintiffs –

7    which have been targeted by Block and the Muddy Waters Entities for such treatment.  Actions

8    taken by Gibson and Castalian herein are believed to be under the influence, direction,

9    coordination and control with Block and Muddy Waters, as set forth below.

10       19.    Gibson and the Castalian Entities have joined with Block and Muddy Waters in

11   their joint effort to profit from trading in the wake of such attacks.  Gibson and the Castalian

12   Entities operate and control an on-line presence known as "Aurelius".  The Aurelius on-line

13   presence is a paid contributor and blogger on the website Seeking Alpha and a twitter account

14   has been created for that on-line presence.  Gibson and the Castalian Entities control and are

15   responsible for the publication of content including on behalf of Muddy Waters and Block which

16   is posted through the Aurelius on-line presence on the Seeking Alpha Blog and any tweets,

17   retweets or comments made through the Aurelius twitter account.  Gibson and the Castalian

18   Entities create the content in partnership with others such as Muddy Waters, Block, Galanis, and

19   Matthews/QKM.  An executive at another public company who had previously been the target of

20   an attack by the Aurelius on-line presence told Mr. Sugarman that he was personally aware of

21   evidence which showed that Gibson was the author of the content under the Aurelius on-line

22   personas' blog and Twitter account.  Mr. Sugarman subsequently confirmed Mr. Gibson's

23   trading in Banc of California stock immediately preceding the publications of content under the

24   Aurelius on-line presence systematically on several occasions.  When Block and Muddy Waters

25   use Gibson and Castalian as a front to publish smears against targeted persons and companies,

26   they use the Aurelius on-line persona to do so.

### DAVID Q. MATTHEWS AND THE MATTHEWS DEFENDANTS

28       20.    Defendant David Q. Matthews also known as Quinton Matthews ("Matthews") is

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

a resident of the State of Texas and a co-conspirator and short seller who also manages a registered investment advisor, Defendant QKM, LLC, whose clients include Kalyn Matthews Denno, Adam J. Denno, Keith Allen Dilling, Rosemary Norris Hall, and David Matthews, amongst others.

21.     Defendant QKM, LLC ("QKM") is a registered investment advisor located in Texas that is managed and controlled by Matthews and was responsible for recommending and/or placing the trades for the benefit of Defendants Matthews, Gary Robert Matthews, Kalyn Matthews Denno, Adam J. Denno, Rosemary Norris Hall, Keith Allen Dilling and QKM who are referred to collectively as the "Matthews Defendants".  Upon information and belief, QKM's members are all residents and domiciliaries of the State of Texas.

22.     Defendant Gary Robert Matthews is, upon information and belief, a resident of the State of Texas and/or the State of Kansas and is a co-conspirator.

23.     Defendants Kalyn Matthews Denno, Adam J. Denno are, upon information and belief, residents of the State of Kansas and/or the State of Colorado and are co-conspirators

24.     Defendants Keith Allen Dilling and Rosemary Norris Hall are residents of the State of Texas and are co-conspirators.

25.     Matthews and QKM operate and control an on-line presence called "Rota Fortunae".  The Rota Fortunae on-line presence is a paid contributor on the website Seeking Alpha and a twitter account has been created for that on-line presence.  Matthews and QKM control and are responsible for the publication of the content which is posted through the Rota Fortunae on-line presence on the Seeking Alpha website, including exclusive articles posted as paid contributors, tweets, retweets or comments made by through the Rota Fortunae twitter account.  Matthews and QKM use the Rota Fortunae on-line presence to attack targets people and companies with an eye towards profiting from trading done in the wake of such attacks. Matthews and QKM operate in conjunction with a regular group of investors who invest with Matthews and QKM pursuant to a pre-approved and pre-arranged strategy.  The group who works with and invests with Matthews and QKM in relation to the Rota Fortunae on-line presence are Gary Robert Matthews, Kalyn Matthews Denno, Adam J. Denno, Keith Allen

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1  Dilling, and Rosemary Norris Hall.  The basis for this allegation includes trading records, public

2  documents filed in civil court proceedings relating to the Matthews and Rota Fortunae, and

3  conversations which Mr. Sugarman has had with market participants with relationships in Dallas,

4  Texas,  publicly available materials regarding Rota Fortunae and Matthews, and publicly

5  available legal documents in other actions against Rota Fortunae which identify it as Texas-

6  based with connections to investors in Texas and Kanas (all of the other Matthews Defendants

7  have ties to Texas or Kansas).  See, e.g. Rota Fortunae's First Amended Responses to Farmland

8  Partners Interrogatories 2 and 4. Filed on the public docket sheet of the United States District

9  Court for the District of Colorado in the matter of Farmland Partners, Inc. v. Rota Fortunae, et

10  al., Case No. 18-cv-02351-KLM, filed on October 15, 2019 (attached hereto as Exhibit L) at pgs.

11  4-7 of 8.

12      26.      Based upon the foregoing and as alleged more fully herein, Matthews, QKM and

13  the other Matthews Defendants used the Rota Fortunae on-line presence in pre-arranged

14  coordination with Gibson and Castalian's use of the Aurelius on-line presence to publish attacks

15  at the direction of Block and Muddy Waters – including with respect to Plaintiffs and Banc of

16  California.  The Matthews, QKM, and other Matthews Defendants role in such joint actions is to

17  amplify, spread, and lend an aura of impartiality to the original attack allegations through the use

18  of the Rota Fortunae on-line presence and, beginning in February 2017 to publish what appeared

19  to be independent content which was developed in coordination with Gibson, Castalian, and

20  Muddy Waters.  These joint actions between the three groups are highly coordinated with each

21  other and the three groups each communicate, receive, edit, write, coordinate and agree to the

22  content of attacks, date and time of publication of attacks, and the content and publication of any

23  efforts to amplify or spread the attacks.  The three groups also agreed upon a highly coordinated

24  trading strategy to allow themselves to best take advantage of trading in the wake of their attacks

25  in order to maximize their mutual profits.

26                          **OTHER RELATED PARTIES**

27      27.      Based on allegations and information set forth in more detail below, Block,

28  Muddy Waters, Gibson, Castalian, Matthews, QKM and the other Matthews Defendants also

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

7

employ a number of other persons and entities to either assist in the coordination and masking of their trading activity or to assist in the amplification and spreading of their attacks.

28.     Ryan Kealy ("Kealy") is a non-party, upon information and belief, a resident of the State of New York and was an institutional trader at Keefe, Bruyette and Woods ("KBW") who coordinated and conspired with the Defendants by coordinating with John Does and other institutional traders at other investment banks (many of whom were former employees of KBW) on behalf of the Smear Enterprise prior to and concurrent with the publication of the Smear Enterprise blogs to enable Defendants to profit from their scheme to distort Sugarman's good name and reputation.

29.     Nikolai Bjorkedal ("Bjorkedal") is a non-party, upon information and belief, a resident of the State of New Jersey and was an institutional trader at FIG Partners, LLC, and on information and belief a former KBW employee, who coordinated and conspired with the Defendants by coordinating with John Does and other institutional traders at other investment banks on behalf of the Smear Enterprise prior to and concurrent with the publication of the Smear Enterprise blogs to enable Defendants to profit from their scheme to distort Sugarman's good name and reputation.

30.     Zander Rosenbluth ("Rosenbluth") is a nonparty who controls and operates the on-line presence with a blog at the Seeking Alpha website and controls and operates a Twitter account under the name @zrosenbluth45.  Rosenbluth has been employed directly by Gibson and Castalian since 2019, and as alleged more fully herein, prior to that, used his Twitter account to amplify and spread posts and tweets made through the Aurelius and Rosa Fortunae on-line personas.

31.     John Does 1-20 are other persons and entities used by the Defendants to support, amplify and spread their attacks or to hide their coordinated trading activity.

## THE SMEAR ENTERPRISE

32.     Defendants Galanis, Block, Muddy Waters, Gibson, Castalian, Matthews, QKM and the other Matthews Defendants joined together sometime after December 2015 to form the Smear Enterprise ("Smear Enterprise") an association-in-fact operated and directed by each of

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   them Defendants to engage in the publication of information, research and communications over

2   the internet in order to attack, retaliate against, attempt to intimidate Mr. Sugarman for this past

3   truthful and potentially further truthful testimony regarding frauds perpetrated by Galanis and for

4   their own personal profit.

5       33.    As will be shown below, each of the Defendants was highly involved in the joint

6   collection, organization, drafting, editing, publishing of false information concerning Mr.

7   Sugarman the COR Plaintiffs, and also in the spreading and amplification of such false

8   statements and, other than Galanis, in trading upon those attacks both as a way to create the false

9   impression that such attacks were widely and generally believed, and so that they could profit as

10  a result of such attacks.

11      34.    As alleged more fully below, the Smear Enterprise also included Kealy,

12  Bjorkedal, Rosenbluth, Thomas Mazzucco and others (the John Does) as members, who, while

13  not defendants herein, joined with the Defendants to support their activities through the Smear

14  Enterprise and otherwise participate in the Smear Enterprise, and profit on their own behalf from

15  the activities of the Smear Enterprise.  The Smear Enterprise is operated as an enterprise under

16  18 U.S.C. Sec. 1961(4) in that it is, among other things, a group of individuals associated in fact

17  although not itself a legal entity.  While the identity of the co-conspirators who direct and

18  operate the Smear Enterprise is currently not publicly disclosed, each of the Defendants direct,

19  manage, operate, coordinate, participate in, and/or contribute to the Smear Enterprise.

20  Additionally, the Defendants profited from the Smear Enterprise through stock trading, and

21  through the posting of blog materials on the Seeking Alpha website in an effort to boost their

22  own personal profiles and monetize their opinions through development a critical mass of

23  followers due to the notoriety they would achieve through these false allegations, and they acted

24  to knowingly facilitate the Smear Enterprise's schemes, including financially and operationally

25  to further their mutual goals.  Defendants and other co-conspirators participated as set forth

26  herein in the operation, management, and control of the enterprise but all defendants, upon

27  information and belief, did actively participate.  Indeed, Aurelius' disclosures on Seeking Alpha

28  state that "I am/we are short BANC" implying that an association of persons controls the blog

**FIRST AMENDED COMPLAINT**

1    and the Smear Enterprise which worked through it.

2        35.    The Smear Enterprise published allegations of wrongdoing against other public

3    companies and their executives with the intent of causing harm to the reputations of the subjects

4    of the allegations.  Since 2016, the Smear Enterprise's allegations have consistently been called

5    false, misleading, and fraudulent; have been proven false by independent investigations; and

6    have resulted in several claims of wrongdoing against the Smear Enterprise and its members and

7    conspirators.

8                    **GENERAL OVERVIEW OF THE SCHEME**

9        36.    Galanis, a now convicted multiple fraudster, was at liberty on bail in May 2016

10    pending the outcome of the investigation and ultimate trial stemming from his involvement in a

11    financial fraud to manipulate the stock price of Gerova Financial Group Ltd and then dump the

12    shares at inflated prices (the "Gerova Fraud").

13        37.    On May 11, 2016, Galanis was rearrested and his bail in the Gerova Fraud was

14    revoked as a result of his participation in a scheme to steal proceeds of bond issues from an

15    affiliate of South Dakota's Oglala Sioux Nation (the "Tribal Bond Fraud").

16        38.    Based in part on Mr. Sugarman's testimony and the FBI's review of documents

17    and other evidence, the FBI Affidavit alleged that Galanis fraudulently asserted that he and his

18    entities had an affiliation with Mr. Sugarman that did not reflect the reality of their relationship.

19    Galanis built an appearance of affiliation based on forged documents, falsified documents

20    created by Galanis, documents based on information stolen from Mr. Sugarman and his affiliated

21    entities, inaccurate corporate documents prepared by Galanis, and false and misleading

22    communications sent by Galanis – amongst other things.

23        39.    As a result of reviewing the affidavit of the FBI Agent submitted in support of his

24    rearrest and bail revocation, Galanis was able to determine Mr. Sugarman had provided truthful

25    testimony to law enforcement officials concerning Galanis' commission of federal offenses in

26    relation to the Tribal Bond Fraud.

27        40.    Galanis blamed Sugarman for his rearrest and immediately imprisonment without

28    bail beginning on or about May 11, 2016 and continuing through October 2106, devised a plan to

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

10

retaliate against Mr. Sugarman and the COR Plaintiffs to attempt to intimidate, threaten and corruptly persuade Mr. Sugarman from presenting further testimony or to induce federal prosecutors not to call Mr. Sugarman as a further witness against Galanis with regard to the Tribal Bond Fraud, through the publication of the false statements and false documents which purported to detail close business ties Galanis to Mr. Sugarman and the COR Plaintiffs – the same documents and claims of affiliation the FBI affidavit affirmed were fraudulently asserted.

41.     Galanis reached out from jail through intermediaries to contact the lawyer for Gibson and Castalian to join the Smear Enterprise comprised of Block, Muddy Waters, Gibson, Castalian, Matthews, QKM, and the other Matthews Defendants.  Galanis used the proceeds from the illegal activities which landed him in jail to pay his defense counsel Thomas Mazzucco to collect and provide the fraudulent documents used in his fraudulent activities to the lawyer for Gibson and Castalian and the Smear Enterprise and they all joined together in the Smear Enterprise. Galanis also used the proceeds from his illicit activities to pay Thomas Mazzucco to speak with the lawyers for Gibson and Castalian to provide content for their blogs and articles to be used to smear Plaintiffs in retaliation for their prior testimony and to obstruction their willingness or ability to provide impactful future testimony.

42.     Galanis paid his intermediaries (out of the funds that he obtained through his involvement in the Gerova Fraud and the Tribal Bank Fraud) to gather the false and fraudulent documents which he used to defraud investors and counterparties leading up to this in May 2016. He had these documents provided to Block, Muddy Waters, Gibson, Castalian, Matthews, QKM, and the other Matthews Defendants for them to repackage and use as false attacks on Sugarman and the COR Entities as if there were true.

43.     Block, Muddy Waters, Gibson, Castalian, Matthews, QKM and the other Matthews Defendants knew that the documents provided to them by Galanis, through his paid intermediary were false and fraudulent.  In the first instance, such documents were identified as false by the FBI Agent who attached several of them to her affidavit to secure Galanis' arrest. Several other documents were attached to legal documents filed by the Securities and Exchange Commission and Department of Justice alleging fraud against Galanis.   Additionally, they were

**FIRST AMENDED COMPLAINT**

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   each aware of the provenance of the documents were from Galanis through his agent Thomas

2   Mazzucco since Galanis was in jail and that the documents were the documents used in carrying

3   out the fraud that placed him in jail.

4       44.     Further, when Block and Muddy Waters, on behalf of and with the consent and

5   approval of the other members of the Smear Enterprise, had their repackaged Galanis story

6   leaked to Bloomberg News in September 2016, Bloomberg News reporters rejected most of the

7   allegations as unverifiable and/or false, and published a story in an edited version leaving out all

8   of the most scurrilous and false information.  This was based on discussions by Mr. Sugarman

9   with Bloomberg including review of the initial allegations and the final story, discussions

10  relating to Bloomberg's sources, including with market participants, and review of documents

11  provided to Bloomberg compared to initial blog posted by through the Aurelius on-line

12  presence's account.

13      45.     The repackaged false Galanis' narrative was then published by the Smear

14  Enterprise in a series of blog posts between October 2016 and January 2017 on a website set up

15  by the Smear Enterprise called www.bancexposed.com.  As will be demonstrated more fully

16  below, each of the Defendants knew that the narrative and the documents supporting it were false

17  and was being published to achieve their joint goal with Galanis of retaliating against and

18  attempting to intimidate Mr. Sugarman and the COR Plaintiffs to leave Banc of California

19  (through either termination or resignation) for the joint purposes of retaliation and to profit from

20  changes in the value of the stock of Banc of California.  The Defendants, other than Galanis,

21  were also motivated by an intention to profit from their short positions in the Company based on

22  the publication of the false narrative and documents combined with threats to Mr. Sugarman's

23  family's physical security and manipulative trading practices.

24      46.     Additionally, each of the Defendants, as demonstrated below, had possession of

25  the various false blog posts in advance of their publication, and communicated with each other

26  about, reviewed, drafted, and edited those blog posts prior to their publication, and collaborated

27  on them and jointly agreed on the date and times of their publication.

28      47.     The Blog Posts and the website were published by Gibson and Castalian through

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

the Aurelius online presence, but the content, and timing of publication were agreed to and approved by each of the Defendants.

48.     Additionally, the content of the Blog Posts and the website were spread and amplified by agreement and coordination of the Defendants through (a) Gibson and Castalian through the Aurelius on-line presence and Twitter account, (b) the Matthews, QKM, Matthews' Defendants use of the Rota Fortunae on-line presence and Twitter accounts beginning in October 2016 and continuing forward to the present; (c) through Muddy Waters on-line presence Muddy Waters Research and twitter account; and (d) other affiliates of the Defendants, including Gibson and Castalian affiliate Rosenbluth and other of John Does 1-20.

49.     Likewise, each of Block, Muddy Waters, Gibson, Castalian, Matthews, QKM and the other Matthews Defendants engaged in coordinated trading of options in Banc of California stock with their advanced knowledge of the pre-publication Blog Posts.  Mr. Sugarman's review of FINRA Records demonstrate that those defendants made up over ninety percent of the short sale trading of Banc of California in the days immediately leading up to the publication of the blog posts, and the material parties involved in the remaining ten percent of such trades were validated as persons and entities without advance knowledge, possession, and coordination of the content of the blog posts.

50.     The Smear Enterprise also engaged in repackaging and presenting the false information to the SEC and other regulators, and plaintiffs in other lawsuits all with the intention of further retaliating against and intimidating Mr. Sugarman and the COR Plaintiffs, including Galanis, Gibson and Castalian, Block and Muddy Waters, and Matthews and QKM.

51.     All Defendants, as more fully set forth below, participated in the unfair practices, illegal conduct, management or affairs of the Smear Enterprise, or agreed to facilitate the scheme including the racketeering activities of the Smear Enterprise.  Each of the above generalized allegations are more fully set forth in detail below.

## JURISDICTION AND VENUE

52.     The subject matter jurisdiction of this Court over the instant action is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted in it arise

1   out of the laws of the United States. As is more fully shown below, this action asserts claims that

2   Defendants violated and conspired to violated the Racketeer Influenced Corrupt Organizations

3   Act – 18 U.S.C. § 1962(c)-(d) and, therefore, the action arises under federal statute.

4        53.     This Court has personal jurisdiction over Defendants Block and Muddy Waters

5   because, upon information and belief, the individual defendants are both citizens, residents

6   and/or domiciliaries of the State of California, and as the entity defendants, upon information and

7   belief, have members that are residents of the State of California, and their principal place of

8   business is within the Northern District of California and they regularly and systematically

9   conduct business from that location.

10       54.     As to the remaining Defendants, this Court has personal jurisdictions over them

11  pursuant to 18 U.S.C. § 1965(b) as: (1) this Court has personal jurisdiction over at least one

12  participant in the alleged multidistrict conspiracy as set forth in the preceding paragraph; and (2)

13  there is no other district in which a court will have personal jurisdiction over all alleged co-

14  conspirators.  Indeed, the enterprise alleged herein was nationwide and accomplished primarily

15  through anonymous and pseudonymous postings published as part of a joint scheme by

16  defendants domiciled in California (Defendants Block, and Muddy Waters as previously stated),

17  defendants domiciled and residing in Minnesota (the Castalian Defendants), Texas, Kansas

18  and/or Colorado (the Matthews Defendants), Brooklyn, New York (Galanis).  Upon information

19  and belief, none of the Defendants (other than Galanis) had minimum contacts with any of the

20  states of residence in which the others are residents and but for their participation in this scheme

21  could not be hailed into a single State or Federal Court in on action.

22       55.     The Court has supplemental jurisdiction over Plaintiffs' related state law claims

23  for unfair competition and defamation pursuant to 28 U.S.C. 1367.

24       56.     Venue is properly placed in the Northern District of California under 28 U.S.C.

25  1391(b)(1), as, upon information and belief, at least two of the entity Defendants' principal

26  places of business are in the Northern District of California, and at least one of the individual

27  defendants maintains his residence there.

28

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**FIRST AMENDED COMPLAINT**
docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**INTRADISTRICT ASSIGNMENT**

57.     Upon information and belief, this case arose in San Francisco County, California and, pursuant to Rule 3-2(d) of the Local Rules of the Northern District of California, has been assigned to the San Francisco Division of the Northern District.

**FACTS WITHIN THE EXCLUSIVE CUSTODY AND CONTROL OF DEFENDANTS**

58.     The facts as set forth below are alleged with particularity and specificity where possible and where such information is known to Plaintiffs.  Where allegations are made upon information and belief, Plaintiffs have attempted to set forth the basis for their information and belief.  For many of the allegations made on information and belief, such information or belief is predicated on documents that are in the possession, custody, or control of the defendants as defendants produced them under strict confidentiality designations in another litigation. Plaintiffs will reference such documents as fully as possible, consistent with those confidentiality designations, but in sufficient detail for the defendants to understand the basis for the suit that has been brought against them and the source of plaintiffs' allegations made upon information and belief.

59.     However, as alleged herein, Defendants actively have taken steps to hide their identities and their activities and have acted, as set forth herein, to frustrate Plaintiffs' ability to obtain information.

60.     Thus, many of the details about the specifics of the fraudulent activity taken by the Defendants are within the sole and exclusive possession, control, or custody of the Defendants, or subject to protective orders in other proceedings and cannot be stated herein without the benefit of discovery or the vacation or lifting of the protective orders in those other proceedings.  However, Plaintiffs have pleaded with sufficient particularity from the results of the good faith investigation and inquiry they have made in order to put Defendants on notice of the specifics of the allegations and causes of action asserted against them.

**AGENCY AND CIVIL CONSPIRACY ALLEGATIONS**

61.     At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter

15

1    alleged, they each were acting within the scope and course of their authority as such agents,

2    principals, employees, servants, partners, joint venturers, and representatives, and were acting

3    with the permission and consent of the other Defendant.  All Defendants had knowledge of and

4    agreed to the misconduct alleged herein.

5        62.    All Defendants conspired with each other to engage in the common course of

6    misconduct alleged herein, or aided and abetted that common course of misconduct, for the

7    purpose of enriching themselves at the public's and Plaintiffs' expense, resulting in damage to

8    Plaintiff and all others similarly situated.

9                    **OPERATIVE FACTS COMMON TO ALL COUNTS**

10       63.    The following operative facts are common to each cause of action alleged herein

11   and as such are brought in this section together.

12                              **BACKGROUND**

13   SUGARMAN AND GALANIS

14       64.    At the time of the events herein, Mr. Sugarman was the Managing Member of the

15   COR Plaintiffs and until January 2017 Mr. Sugarman was the Chairman, President and Chief

16   Executive Officer of Banc of California, Inc. ("Banc" or "Banc of California").  Mr. Sugarman,

17   COR Plaintiffs, and other businesses affiliated with Mr. Sugarman – including Banc of

18   California, COR Securities Holdings, Inc. ("COR Securities" or "CORSHI") and COR Clearing,

19   LLC (collectively the "Sugarman Entities") – all were harmed by Defendants' wrongdoing.

20       65.    On information and belief, between 2012 and 2015, Galanis hijacked, without

21   disclosure or permission, Mr. Sugarman's reputation and business identity by falsely and

22   fraudulently claiming closer affiliations than were factual in furtherance of Galanis' own

23   fraudulent schemes.  For instance, without Mr. Sugarman's knowledge, consent, or approval,

24   Galanis:

25           a.   Obtained confidential documents relating to Mr. Sugarman, COR Plaintiffs and

26                Sugarman Entities through fraudulent and deceptive means;

27           b.   Prepared, created, and used false and fraudulent documents including documents

28                bearing forgeries of Mr. Sugarman's signature; and,

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

c. Prepared, created and used unauthorized and inaccurate documents including a document called "Introduction to COR Capital" to fraudulently assert and imply that Mr. Sugarman, COR Plaintiffs, Banc of California, Sugarman Entities and various other persons were Galanis' "financial sponsors."

66. On information and belief, between 2012 and 2015, Galanis attempted to hijack, without disclosure or permission, the business capabilities of COR Plaintiffs and Sugarman Entities for fraudulent purposes. For instance, without Mr. Sugarman's knowledge, consent, or approval, Galanis:

a. Caused third parties to seek margin loans from COR Clearing for improper purposes. The request was denied.

b. Caused third parties to request COR Clearing participate as a clearing firm for the Tribal Bond Fraud. The request was denied.

c. Caused third parties to seek a mortgage loan at Banc of California for a residential property based on false information. The request was denied.

67. Galanis, directly and through his intermediaries, threatened to retaliate against Sugarman Entities including COR Clearing and its management for refusing to cooperate with requests made by associates of Galanis. Ultimately, Galanis and his associates sought to extort the cooperation of Sugarman Entities and their management by issuing threats. In fact, in one instance, on information and belief, Mr. Galanis threatened an executive at COR Clearing in the fourth quarter of 2015 indicating that he had created a file that he would send to COR Clearing's regulators alleging wrongdoing by COR Clearing in an attempt at extortion. This behavior was consistent with the behavior outlined by Galanis' brother in his book published in 2019 relating to Galanis' practice of making regulatory threats to extort family members and business associates to commit wrongdoing. This threat shortly followed COR Clearing's refusal to participate as a clearing firm in the Tribal Bond Fraud and its subsequent demand for repayment of a debt owed by one of its correspondents in which Galanis had a financial interest. The executive rebuffed Galanis' threat, refused to participate in the Tribal Bond Fraud and filed a lawsuit to seek repayment of the defaulted debt.

**FIRST AMENDED COMPLAINT**

68.     In early 2016, the DOJ, FBI and SEC sought to interview Mr. Sugarman as a witness in their investigation of Jason Galanis.  Mr. Sugarman agreed to participate and was interviewed in March 2016.

69.     During the interview, Mr. Sugarman learned that Galanis had been claiming and implying that Mr. Sugarman, COR Capital, COR Clearing, and Banc of California were the "financial sponsors" of Galanis and other persons or entities.

70.     U.S. District Court Judge Ronnie Abrams characterized Galanis' modus operandi of engaging in fraud by creating and misusing entities that "were purposefully given names to make them appear related to … legitimate entities."  Opinion and Order, United States v. Galanis et al., No. 16-CR-271, Dkt. 690, at 3 (S.D.N.Y.) Nov. 15, 2018).

71.     During his March 2016 interview, Mr. Sugarman answered law enforcement's questions to the best of his abilities.  Information provided by Mr. Sugarman was cited in the government's documents used to arrest Mr. Galanis.

72.     Filings laying out Galanis' fraud, including the FBI affidavit and the fraudulent "Introduction to COR Capital" document, were made public by the government and, on information and belief, Galanis and Defendants became aware of and reviewed them.

73.     In May 2016, Galanis' bail was revoked and Galanis was remanded to prison.

74.     In the conduct of his legitimate business affairs, Mr. Sugarman was introduced to Galanis and had interactions with him prior to 2015.  However, at no time was Galanis ever an owner, officer, control person or employee of any of Mr. Sugarman's businesses.  Indeed each and every time that Mr. Sugarman has had such claims leveled against him, Mr. Sugarman has been vindicated. For example:

    a.     Mr. Sugarman entered into a Dismissal Agreement with Plaintiffs in a securities class action in the United States District Court for the Central District of California (In re Banc of California Sec. Litig., Case No. 8:17-cv- 00118-AG-DFM; hereinafter the "Securities Litigation") pursuant to which Plaintiffs voluntarily dismissed Mr. Sugarman with prejudice from the action following discovery (with no payment made by Mr. Sugarman) and the settlement

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

agreement related to which recited that: "(1) Plaintiff did not uncover any proof that Galanis exercised or had any control or decision making authority over Mr. Sugarman or any of Mr. Sugarman business entities; (2) Plaintiff did not uncover any proof that Galanis controlled or affected Mr. Sugarman's actions or decisions as an investor, officer or director of Banc of California, Inc.; and (3) the October 18, 2016 press release reflected information provided to Mr. Sugarman." Attached hereto as Exhibit A;

b.   The Securities and Exchange Commission's letter to counsel for Mr. Sugarman on December 20, 2019 stating that it had concluded its investigation of Mr. Sugarman with no action being taken against him. Exhibit B;

c.   Mr. Sugarman was dismissed from In re Banc of California Derivative Litigation [Case No. 8:19-cv-AG-DFMx consolidated with Cases No. 19-cv- 1152 and 19-cv-05488] for no payment based on the Plaintiffs investigation and review of the factual record. The case is ongoing against the Banc and several Defendants. See Exhibit C;

d.   Multiple investigations conducted on behalf of Banc by third-party law firms have determined that Mr. Sugarman committed no illegal acts and that Galanis' and the Smear Enterprise's claims to the contrary are false.

## GALANIS DECIDES TO RETALIATE AGAINST AND ATTEMPTS TO THREATEN WITNESS SUGARMAN

75.   On information and belief, Galanis blames his imprisonment in part on the evidence Mr. Sugarman provided to the DOJ and FBI and did seek to and in fact did retaliate against Mr. Sugarman for agreeing to serve as a witness to the DOJ, FBI and SEC relating to Mr. Galanis.  Indeed, Galanis testified at deposition in the Securities Litigation that he was both "upset" and "took offense" at the fact that Mr. Sugarman had testified under oath against him, and that Mr. Sugarman "had had a debriefing or proffer with the DOJ and FBI in March of 2016, and that reinforced [Galanis'] view that [Mr. Sugarman] had provided them testimony that resulted in some action, at least contributed to some action that happened two months later when

**FIRST AMENDED COMPLAINT**

1    I was indicted". See, Exhibit J, the non-confidential portions of the deposition of Jason Galanis

2    in the Securities Ligation, at pgs. 237-238.

3         76.   Galanis' indictment led to his first guilty plea for the Gerova Fraud in August

4    2016. See Exhibit N, Press Release from the United States Attorney's Office, dated January 31,

5    2020 regarding Galanis' most recent guilty plea in the Gerova Fraud but also setting forth the

6    facts surrounding his prior frauds and guilty pleas.

7         77.   Galanis pled guilty to the Tribal Bond Fraud in January 2017. See Exhibit N.

8         78.   Galanis entered a further guilty plea related to the Tribal Bond Fraud on January

9    31, 2020, and he will not be sentenced in that matter until May 12, 2020. *See* Exhibit N.

10        79.   The potential remains open for Mr. Sugarman to appear as a witness against

11   Galanis until his sentencing in the Tribal Bond Fraud on May 12, 2020 and the threat of

12   retaliation is ongoing.

13        80.   Later in 2017, Galanis was sentenced to over eleven years in federal prison for his

14   role in the Gerova Fraud and fourteen years for the Tribal Bond Fraud, ordered to disgorge illicit

15   profits and pay restitution of over $43 million to his victims, and to forfeit his assets. The SEC

16   thereafter also secured a judgment against Galanis that ordered a bar from the securities industry,

17   a censure, and the disgorgement of approximately $9.6 million.

18        81.   On information and belief, after learning that Mr. Sugarman acted as a witness for

19   the government, and prior his January 2017 guilty plea, Galanis determined to both retaliate

20   against Mr. Sugarman and COR Plaintiffs for Mr. Sugarman's past act of providing truthful

21   information to the DOJ and FBI during its investigation of Galanis, and attempted to intimidate,

22   threaten or corruptly persuade Mr. Sugarman from providing further testimony against Galanis

23   with respect to the Tribal Bond Fraud.

24        82.   According to court filings, Galanis threatened others whom he learned cooperated

25   with the government investigation of his illegal acts. Galanis' bail was revoked in June 2016

26   because, as per contemporaneous news articles, he sent threatening messages to a potential

27   witness in which he promised the witness that he would retaliate if that witness continued to

28   cooperate with the government and provide testimony against Galanis' interests. Galanis sent

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

messages such as, "Sleep tight and be worried" and " I'll teach you a lesson little guy", and "I'll pay you back for being awful and disloyal . . .".

83.     Additionally, according to a book published in 2019 by Derek Galanis titled the Galanis Crime Family, Galanis has extensive relationships with the Gambino crime family and had a history of threatening retaliation against others including members of his own family including by making false and misleading reports to government authorities to cause others legal jeopardy to intimidate, threaten and retaliate against them.

84.     Thus, Galanis was one of the key participants in this conspiracy and was motivated by a desire to retaliate against Mr. Sugarman because Mr. Sugarman provided information to the Department of Justice (DOJ), Federal Bureau of Investigation (FBI) and the Securities and Exchange Commission (SEC) in their investigation of Galanis for his various financial frauds and misrepresentations, and a desire to intimidate or threaten Mr. Sugarman so he didn't provide further testimony against Galanis in the Tribal Bond Fraud matter.

GALANIS JOINS WITH THE OTHER DEFENDANTS

85.     Between May 2016 and October 2016, Galanis joined together with Defendants Block, Muddy Waters, Gibson, the Castalian Entities, Matthews, QKM and the other Matthews Defendants to conspire to and to join and conduct the Smear Enterprise through a pattern of racketeering activities that included retaliatory acts, money laundering, witness tampering, fraud, unfair competition and unfair business practices targeting Mr. Sugarman, COR Plaintiffs and Sugarman Entities as set forth below and described above.

86.     The Smear Enterprise's scheme with respect to Mr. Sugarman and the COR Plaintiffs included the following elements (the "Scheme"):

    a.    To spread false statements and misleading information about Mr. Sugarman, COR Plaintiffs, and the Sugarman Entities to cause others who had a relationships with Sugarman and the COR Plaintiffs (the "Sugarman Relationships") to take actions adverse to the Sugarman Entities and Plaintiffs' interests, that damaged Plaintiffs as a direct and proximate result, and caused the Sugarman Relationships (and Plaintiffs) to incur great unwarranted and unjustified expense and injured Mr.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL.: (213) 943-1444 FAX: (212) 278-1733

Sugarman in his livelihood, lawful employment, and/or lawful employment prospects.  This harmed Mr. Sugarman and COR Plaintiffs and served Galanis' goal to retaliate against and harm Mr. Sugarman for his role cooperating with the government.

b.  To have Defendants, other than Galanis, initiate short positions in Banc of California's stock.

c.  To use the false statements and misleading information spread by the Smear Enterprise combined with manipulative trading tactics, and/or deceptive media strategies to further cause damage to Plaintiffs' reputations, lawful employment and/or livelihood, to attempt to intimidate, threaten or corruptly persuade Mr. Sugarman from providing further testimony against Galanis or to persuade federal prosecutors to not call Mr. Sugarman as a witness due to his now tarnished reputation and to also cause the stock price of Banc of California to move artificially lower.

d.  To coordinate among themselves to purchase or conspire with others, such as Kealy and Bjorkedal, to purchase shares to cover their short position and realize windfall profits.

87.  The Scheme also required the Defendants to conceal the names of Defendants in coordination with each other (including Galanis), and to conceal the fact that they were publishing knowingly false and materially misleading information gathered by Galanis through the use of the proceeds of the Gerova Fraud and the Tribal Bond Fraud to prevent harm to their own reputations and businesses and the Defendants did conspire to do so.

GALANIS PROVIDES FALSE INFORMATION AND DOCUMENTS

88.  Galanis conspired with the Defendants from prison to furnish false and misleading information for publication by the Smear Enterprise, and did so through the use of proceeds which he acquired as the result of the Gerova Fraud and the Tribal Bond Fraud, which proceeds were the subject of money laundering as set forth below.

89.  Indeed, Galanis has admitted that he was the source of the false documents and

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   information provided to the Smear Enterprise for attacking Mr. Sugarman.  He has admitted that

2   he contacted his then attorney, who he believes based on the timing was San Francisco attorney

3   Thomas Mazzucco with the firm of Murphy, Pearson, Bradley & Feeney, and he asked this

4   attorney to contact Aurelius.  He admitted that his attorney contacted Aurelius, and that

5   thereafter his attorney gathered documents and information which was passed to a Los Angeles-

6   based attorney for Aurelius.  Upon information and belief, the information provided by Galanis

7   through his lawyer was the basis for the various blog posts and tweets made thereafter by the

8   other members of the Smear Enterprise, and Galanis believed himself to the source of that

9   information and the so-called anonymous "whistleblower" listed as the source of information in

10  one of the blog posts.  Exhibit J, the non-confidential portions of the deposition of Jason Galanis

11  in the Securities Ligation, at pgs. 90, 91, 313, 314.

12      90.     Mazzucco was Galanis' attorney from at least August 2016 until March 2017,

13  when he moved to be relieved as counsel.  See Exhibit O, the Motion for Thomas P. Mazzucco

14  to be relieved as counsel for Galanis dated March 16, 2017, and filed in the matter of the United

15  States Of America v. Galanis, Appellate Docket No. 17-629, attaching Mr. Mazzucco's affidavit

16  in support of such motion and Galanis' financial affidavits of March 16, 2017 and August 12,

17  2016 (the "Financial Affidavits").

18      91.     Galanis' Financial Affidavits attest that he had received at least one million

19  dollars from the "sale of investments (securities)" which he spent on "legal fees" and "counsel

20  fees defense cases".  Upon information and belief, these funds represented proceeds of Galanis'

21  frauds and were spent prior to the Court ordered the tens of millions of dollars of restitution

22  which Galanis was ordered to pay to the victims of his frauds, and part of those "spent on legal

23  defense fees" and "spent on counsel fees defense case" included funds which Galanis used to pay

24  his lawyer to contact Aurelius, communicate with Aurelius and the Aurelius Los Angeles-based

25  attorney, gather the documents and information on Galanis behalf and pass the same to the

26  Aurelius attorney for use by the Smear Enterprise.  See Exhibit O at Galanis Financial

27  Affidavits; and Exhibit P, at press release from the United States Attorney's Office, dated

28  February 15, 2017, reporting on Galanis' sentencing on date in the Gerova Fraud and that he was

ordered to forfeit $37,591,681.10, as well as his interests in properties in New York and Los Angeles with a restitution amount for victims to be set at a future proceeding; and Exhibit Q a press release form the U.S. Attorney's Office, dated August 11, 2017, reporting on Galanis' sentencing in the Tribal Bond Fraud and that he was ordered to forfeit $43,277,436 and to make restitution to his victims in that fraud in the amount of $43,785,176.  Thus, Galanis used the proceeds of his frauds, which could have gone to repay his victims, to finance the gathering, and transmittal of documents and information to the Smear Enterprise so that they could effectuate the scheme to retaliate against Mr. Sugarman for his past testimony, attempt to intimidate, threaten or corruptly persuade Mr. Sugarman from giving further testimony, and to allow the other members of the Smear Enterprise to profit.  The sources of the funds were deliberately and intentionally concealed in violation of money laundering statutes as set forth below.

92.     Galanis' false statements to the court in furtherance of this scheme was a further predicate act of obstruction of justice, through perjury to a Federal Court, in his Financial Affidavits filed with the United States District Court for the Southern District of New York signed on August 12, 2016 and March 16, 2017 (Exhibit O).  Galanis statement that all of his approximately $1 million in income was either: "spent on counsel fees defense case"; or "spent on legal defense fees" is untrue and part of his scheme to pay his defense counsel to assist in the scheme to retaliate against and attempt to intimidate Mr. Sugarman (Exhibit O at the Affidavit Statements).

93.     The Affidavit Statements were false and misleading, as Galanis was paying his lawyer during this period to collect documents used in his frauds, contact the Defendants in furtherance of the Smear Enterprise, and provide documents, information and other communications to retaliate against Mr. Sugarman for serving as a witness to the government and to intimidate Mr. Sugarman in not offering further testimony.  This retaliation and attempted intimidation constituted obstruction of justice and was not properly described as "defense fees," and it appears that some or all of the $1 million dollars was laundered over time in this way.

94.     Galanis hid his involvement in the Smear Enterprise through "layering" his interactions through a paid intermediary, Mazzucco.  See Exhibit J, the non-confidential portions

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   of the deposition of Galanis in the Securities Ligation, at pgs. 90, 91, 313, 314.  He used moneys

2   derived from the "sale of securities" which he obtained in the furtherance of his fraudulent

3   business activities for which he currently is serving time in prison to pay for his involvement in

4   the Smear Enterprise.  Galanis used intermediaries to accomplish the "sale of the securities" and

5   the transfer of money to Mazzucco while he was incarcerated.  The practice of "layering" in

6   order to hide involvement in illegal activities including obstruction of justice, retaliation, and

7   fraud is a violation of the anti-money laundering statutes.  Galanis' sale of securities and

8   transfers of the proceeds of those sales to Mazzucco were conducted with and through financial

9   institutions including insured banks and broker-dealers in the United States which subjected

10  Galanis to anti-money laundering laws.

11       95.     The documents which Galanis, through his attorney, provided to the Smear

12  Enterprise were the very same documents used by Galanis to further the frauds to which he pled

13  guilty in January 2017, including documents that had been forged, manipulated, fraudulently

14  created, developed with false and/or stolen information, and misleading.  In his role as

15  intermediary for Galanis, being paid to gather documents and information and pass them along to

16  the other members of the Smear Enterprise, Mazzucco was a member of the enterprise.

17       96.     Upon information and belief, the other members of the Smear Enterprise knew

18  that the source of the documents and information was Galanis and that such information was

19  gathered and transmitted to them by Galanis' attorney who had been paid by Galanis with

20  proceeds of his frauds, and that is one of the reasons that they actively hid their connection to

21  Galanis and failed to identify him as the source of their information instead deceitfully

22  characterizing him as "a whistleblower with a deep knowledge of Jason Galanis' business

23  dealings with the Sugarmans".  *See*, Exhibit J, the non-confidential portions of the deposition of

24  Jason Galanis in the Securities Ligation, at pgs. 90, 91, 313, 314.

25       97.     The Defendants knew that Galanis was providing them documents, information

26  and financial support (through payments to Galanis' intermediary to collect and distribute the

27  documents and information to them), and they agreed to conceal Galanis' involvement in their

28  joint scheme.  They intentionally and knowingly mischaracterized the source of their

1  information, and became complicit in Galanis' scheme to layer his involvement through his

2  lawyer by falsely stating that their information came from "a whistleblower with a deep

3  knowledge of Jason Galanis' business dealings with the Sugarmans," when they knew that

4  Galanis, through his paid intermediary, was the actual source.  Galanis admitted this in his

5  deposition in the Securities Litigation.  See, Exhibit J, the non-confidential portions of the

6  deposition of Jason Galanis in the Securities Ligation, at pgs. 90, 91, 313, 314.

7  THE ACTIONS OF THE DEFENDANTS

8       98.    On information and belief, the Defendants jointly collaborated thereafter to draft

9  Blog posts, compile reports, create websites, and, collect documents.  The Defendants

10  simultaneously conspired through the Smear Enterprise to create a comprehensive plan to profit

11  from untrue allegations which they distributed to damage Plaintiffs' reputations and financial

12  prospects while also allowing the Defendants, other than Galanis, to profit when the price of the

13  Banc stock fell.  This allegation is based upon, e.g., previously identified Exhibits D-H.

14      99.    On information and belief, Defendants used documents, citations, and information

15  gathered from Galanis, directly and indirectly, to repackage Galanis' old story, which would

16  form evidence of his later fraud plea, and create false and intentionally misleading papers, blog

17  posts, websites, and other material to support or serve as the basis for several separate attacks on

18  Mr. Sugarman and the COR Plaintiffs, as well as the Sugarman Entities (the "Attacks") from no

19  later than September 2016 until the present.   The Attacks fraudulently claimed that Sugarman

20  and the COR Plaintiffs had material business partnerships with Galanis and were involved in his

21  financial crimes.

22      100.   On information and belief, Defendants all contributed to and worked together to

23  conduct the affairs of the Smear Enterprise and participate in its operations and management,

24  including coordinating and/or directing the development, drafting, research and/or sources for

25  the publications and communications of the Smear Enterprise; shorting Banc of California stock

26  in coordinated and consistent fashion with other Defendants, co-conspirators and participants in

27  the Smear Enterprise, contributing to and investing resources in the Smear Enterprise, its

28  racketeering activities and its schemes, and amplifying the allegations, claims and messages

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

published by the Smear Enterprise and helping it to attract a larger audience and an audience with the ability to increase the impact and success of its scheme, and retaliating against Mr. Sugarman and his lawful employment and livelihood.  *See, e.g.,* Exhibits D-I.

101.     The Defendants' actions in concealing their identities also furthered the Smear Enterprise's wire fraud, retaliation, and attempted intimidation in a similar way by preventing the Sugarman Relationships from evaluating the credibility of the Defendants, including Galanis. Thus, the concealment of the identities of the Defendants allowed the Defendants to induce independent auditors, directors, clients, counterparties, and vendors to Mr. Sugarman, COR Plaintiff's, COR Entities, all of whom were among the Sugarman Relationships, to take actions detrimental to Mr. Sugarman, COR Plaintiffs, and Sugarman Entities in a way that they would not have been able to do had the Defendants' identity been known.  In fact, the Smear Enterprise's misstatements coupled with the concealment of their identities caused the Sugarman Relationships to rely on those misstatements and taken actions thereupon which they would not have otherwise taken, and indeed would not have believed to be in their best interest to take, if they had known the identities of the Defendants, and if they had known the statements by the Defendants were false or materially misleading (i.e., not truthful).  Further, counterparties and clients of COR Securities and COR Clearing, each of whom were also among the Sugarman Relationships, made decisions to the detriment of Sugarman and the COR Plaintiffs that they would not have otherwise made also based on the Smear Enterprise's racketeering activities. This damaged Mr. Sugarman in his lawful employment and livelihood and his future lawful employment prospects and that was a goal of the retaliation.

102.     On information and belief, Defendants collaborated to draft Blog posts, compile reports, create websites, collect documents, and/or create a comprehensive plan to profit from untrue allegations published to damage Plaintiffs' reputations and financial prospects and damage Mr. Sugarman in his lawful employment and livelihood while also allowing Defendants to profit when the price of the stock fell.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain

**FIRST AMENDED COMPLAINT**

in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including but not limited to, previously identified Exhibits D-H.

103.     On information and belief, Block, Muddy, Gibson, Castalian, and the Matthews Defendants, all contributed to and worked together to conduct the affairs of the Smear Enterprise and participated in its management, including contributing to and investing resources in the blog, the strategy and the common enterprise, in at least the following ways:  collaborating on the drafting, editing, development and/or distribution of the Initial Blog Post; shorting the stock short prior to the publication of one of more of the Blogs, and covering their shorts upon or shortly after the publication of the respective Blog posts.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and that indicate there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including but not limited to, Exhibits D-H.

104.     The Defendants' unfair business practices were designed to prevent the Sugarman Relationships from accurately assessing the credibility of the Smear Enterprise's claims and to delay Mr. Sugarman's, COR Plaintiffs', the Sugarman Relationships' and other's ability to effectively counter and prove false the false allegations and defend against the retaliation.  It also enabled Defendants to protect their reputations and affiliated businesses from suffering competitive harm and reputational damage when their allegations were ultimately shown to be false and/or when the common enterprise was exposed.

105.     Defendants' scheme involved them using an on-going series of public and private attacks against Mr. Sugarman's reputation, his lawful employment and livelihood, and business in order to both profit from its effect on Banc of California's stock, achieve Galanis' goals of retaliation, and to cover their tracks by (i) disseminating false and misleading information, (ii) hiding and concealing material information, and (iii) engaging in other unfair practices.

106.     Defendants' scheme to distort the good name and reputation of Mr. Sugarman and

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

then to profit therefrom included the practice of spreading unverified bad news about a stock with the objective of panicking other investors into selling their stock to drive down the price, allowing the short sellers to profit. In this case, the *unverified bad news* about Banc was all calculated to attack Mr. Sugarman, his lawful employment and livelihood, and the COR Plaintiffs and their reputations, brands, and businesses with false information.

107. The Smear Enterprise was conducted as an open-ended and closed-ended scheme of racketeering activity, the implementation of which included the following components of racketeering activity: retaliation against a witness for past truthful testimony, attempts to intimidate, threaten and corruptly influence a witness from giving further testimony, the use of money laundering to use the proceeds of one crime to fund another fraud and wire fraud. The Defendants' conducted the Scheme with respect to Mr. Sugarman on multiple occasions including the periods leading up to the following Smear Enterprise publications:  October 18, 2016; October 20-24, 2016; and January 26, 2017.

108. The enterprise is on-going.  As recently as 2019, Galanis, from prison, and other Defendants have continued to retaliate against Mr. Sugarman by making false statements and taking discreet acts designed to further the harm to Plaintiffs in furtherance of the Smear Enterprise Scheme.  This is resulting in significant ongoing harm that would not have been incurred had Defendants and Galanis not provided, and continued to provide, the false and misleading information.

## MUDDY WATERS FIRST ATTEMPT TO PUSH THE FALSE INFORMATION

109. Block and Muddy Waters tried in early September 2016 to provided Galanis' repackaged false story and documents to the Bloomberg news agency in the hopes that they could get Bloomberg to act as an unwitting catspaw in the Smear Enterprise.  Bloomberg news refused to publish the story as presented because they realized that the allegations made were unverifiable and false, and instead published a heavily edited version without the most scurrilous allegations presented by Block and Muddy Waters.  This allegation is based upon discussions that Mr. Sugarman had with reporters for Bloomberg news and a review of the relevant documents as previously outlined above.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

110.    Upon information and belief, Muddy Waters Research and Block sell a for-profit newsletter and various social media communications relating to Muddy's short positions. Muddy and Block also appear on television, YouTube, and other platforms to promote their business and generate a following for their paid services and to enhance their influence in the marketplace.  However, Muddy Waters elected **not** to publish the false information through its public persona and did not disclose its trading in Banc stock.  On information and belief, this abnormal decision was made because they knew the information was false and misleading and they did not want to harm their reputations and influence in the marketplace by being associated with it.  In contrast, they knew that Mr. Sugarman's reputation would suffer irreparable harm and the Sugarman Relationships would be defrauded due to this false information but they didn't care and proceeded anyway.

111.    When they were unable to get a reputable news source to publish the repackaged falsehoods, the Defendants decided to publish the items on their own through the use of their various on-line accounts and presences.

THE INITIAL BLOG POST

112.    The Defendants coordinated, communicated, and/or directed the Smear Enterprise to launch a series of coordinated attacks on Mr. Sugarman beginning the second half of 2016. This included the decision to draft and publish a blog on the Smear Enterprise's seekingalpha.com account on October 18, 2016 at 12:40 pm Eastern Time (the "Initial Blog Post" - https://seekingalpha.com/instablog/38682326-aurelius/4925647-banc-extensive-ties-to-notorious-fraudster-jason-galanis-make-shares-un-investible) to attack Mr. Sugarman, the COR Plaintiffs, and the Sugarman Entities.  The Defendants elected to conceal their identities and role in the blog and to publish it on a platform with no editorial controls for accuracy or authenticity.

113.    The Initial Blog Post claims were false and misleading in that it alleged that Galanis controlled Mr. Sugarman and entities affiliated with Mr. Sugarman including COR Plaintiffs and Sugarman Entities.  The Initial Blog Post primary purpose was as a public attack intended to retaliate against Mr. Sugarman for his prior testimony and to attempt to intimidate, threaten or corruptly persuade Mr. Sugarman from providing further testimony by destroying Mr.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1  Sugarman's reputation, career, contractual relationships, and business prospects, lawful

2  employment and livelihood, as well as the reputation, business and value of COR Plaintiffs and

3  the Sugarman Entities.  It harmed Plaintiffs by deceiving readers who were the Sugarman

4  Relationships into taking actions and incurring expenses to protect themselves from the false

5  allegations that they were deceived into believing, into ceasing to do business with Sugarman

6  and/or the COR Plaintiffs, or into changing deal terms to the detriment of Sugarman and/or the

7  COR Plaintiffs.  These expenses incurred by the Sugarman Relationships, attributable to the

8  Defendants' actions and unfair business practices, were also either passed on to Plaintiffs for

9  reimbursement or were also incurred by Plaintiffs in the form of significantly higher due

10  diligence and legal fees from potential and existing counter-parties, existing banks, and other

11  regulated entities doing business with Plaintiffs.  It also enabled Defendants to drive down the

12  stock price of Banc of California to generate windfall profits for themselves.

13  114.    The Initial Blog Post made several other claims that Defendants knew to be false.

14  For example: (a) "Jason Galanis controlled COR, Banc's Founding Shareholder"; (b) "Steven

15  Sugarman's COR and Jason Galanis control the Same Offshore Insurance Company"; (c) "Jason

16  Galanis [controlled] an offshore insurance company that was simultaneously owned by COR

17  Capital, an entity ostensibly led by Steven Sugarman"; (d) that there was a significant risk that

18  "notorious criminals gained control over the $10 Billion taxpayer guaranteed Banc of

19  California," making Banc "uninvestible"; and (e) numerous other false and misleading

20  statements.  In fact, Defendants and Galanis all knew that Galanis never exercised any control

21  over Mr. Sugarman, COR Plaintiffs, or Sugarman Entities, nor did Galanis even ever own a

22  single share of stock or membership interests in any of those or any of Mr. Sugarman's

23  businesses.  These allegations were merely a repackaging of the claims for which Galanis had

24  been charged with fraud and relied upon the same fraudulent documents which law enforcement

25  used to support their charges against Galanis.

26  115.    Defendant Muddy Waters and Block received the Initial Blog Post prior to its

27  publication, and read, edited, drafted and approved the publication of the material false

28  statements in the Initial Blog Post set forth in the foregoing.  Moreover, as set forth above, Block

31

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    and Muddy Waters direct the activities of the Aurelius on-line presence through their

2    relationship with Gibson and Castalian, and so are directly liable for what is published through

3    that on-line presence. Defendant Muddy Waters and Block actions with respect to the Initial

4    Blog Post were taken on behalf of Defendants Muddy Waters Capital, LLC, MLAF LP, Muddy

5    Waters Research LLC, and MWCP LLC which were controlled by Block as managing member

6    or managing partner or similarly (directly or indirectly), to establish significant short positions in

7    Banc stock prior to the publication of the Initial Blog Post from which they could profit due to

8    the publication of that false information.  This allegation is based upon information and

9    conversations with market participants, and a review of trading records which showed Block and

10   Muddy Waters were one of the largest traders to establish short positions immediately before

11   publication of the Initial Blog Post and exit them shortly thereafter.  See also, e.g.,, Exhibit D at

12   pg. 19 of 23;  likewise Exhibit D at pg. 10 of 23 discusses the motion made by lawyers for

13   Aurelius, the same lawyers who now represent the Castalian Defendants, moved to quash

14   subpoenas to the Castalian Defendants, the Muddy Waters Defendants and the Matthews

15   Defendants relating solely to the reasons for their trading activity in Banc prior to the publication

16   of the Blog because, lawyers for Aurelius argued, such production would uncover

17   communications between those Defendants and others regarding Aurelius and the Blog prior to

18   its publication and would unmask Aurelius; Exhibit E at pg. 6 of 6; and Minutes of an Order on a

19   motion to quash a subpoena by the Muddy Waters Defendants in the In re Banc of California

20   Securities Litigation (attached hereto as Exhibit F) at pgs. 1 and 2 of 5, issued on January 8, 2019

21   on the Court's public website wherein the Court references FINRA trading records, held under

22   the protective order, which show the Muddy Waters Defendants' involvement in trading on

23   advance knowledge of the blog post; and Exhibit K (Letter from FINRA transmitting Trading

24   Records in the Securities Litigation).   Additionally, Plaintiff's understand that Defendants are in

25   possession of the unredacted versions of each exhibit above, and therefore for the purposes of

26   proper notice of allegations, hereby incorporate the relevant facts set forth in the unredacted

27   exhibits above.

28          116.    Upon information and belief, Defendant Castalian and Gibson received the Initial

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   Blog Post prior to its publication, and read, edited, drafted and approved the publication of the

2   material false statements in the Initial Blog Post set forth in the foregoing.  Moreover, as Gibson

3   and Castalian directly controlled the Aurelius' on-line presence they were responsible for the

4   posting of such information on the Aurelius on-line entities blog.  Gibson and Castalian took

5   such actions on behalf of one another and Defendants Castalian Partners and Value Fund which

6   they controlled as the manager and/or executive officer or similar position, to establish

7   significant short positions in Banc of California stock from prior to the publication of the Initial

8   Blog Post which they could profit due to the publication of that false information.  Each of them

9   ultimately approved the publication of the false Initial Blog Post, and established significant

10  short positions in Banc of California stock from which they profited due to the publication of that

11  false information.  This allegation is based upon information from market participants including

12  other issuers attacked by Aurelius and journalists.  This is based on Mr. Sugarman's discussions

13  with the executive of another bank which had been attacked through the Aurelius on-line

14  presence; a review of trading records which showed Gibson and Castalian were one of the largest

15  traders to establish short positions immediately before publication of the Initial Blog Post and

16  exit them shortly thereafter; and discussions with reporters at the Los Angeles Times who

17  confirmed the information about Gibson and Castalian.  See also, e.g.,  Exhibit D at pg. 19 of 23;

18  likewise Exhibit D at pg. 10 of 23 discusses the motion made by lawyers for Aurelius, the same

19  lawyers who now represent the Castalian Defendants, moved to quash subpoenas to the Castalian

20  Defendants, the Muddy Waters Defendants and the Matthews Defendants relating solely to the

21  reasons for their trading activity in Banc prior to the publication of the Blog because, lawyers for

22  Aurelius argued, such production would uncover communications between those Defendants and

23  others regarding Aurelius and the Blog prior to its publication and would unmask the Smear

24  Enterprise; and the Memorandum in Support of Mr. Sugarman's Motion to Compel Production

25  from Castalian Partners and James Gibson in the Securities Litigation, filed on September 28,

26  2018 (attached hereto as Exhibit G) at pgs. 10-11 of 23; transcript of oral argument held in the

27  United States District Court, District of Minnesota, in the Securities Litigation on the motion to

28  compel production from the Castalian Defendants, on October 22, 2018 (relevant portions

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    attached hereto as Exhibit I) at pgs. 26-27 wherein counsel for the Castalian Defendants admits

2    to Gibson and Castalian having numerous documents reflecting "voluminous communications

3    with other market participants, regulators, and attorneys" regarding the trading and blog posts. [2]

4    Exhibit K (Letter from FINRA transmitting Trading Records in the Securities Litigation.  See

5    also Footnote 2.  Additionally, Plaintiff's understand that Defendants are in possession of the

6    unredacted versions of each exhibit above, and therefore for the purposes of proper notice of

7    allegations, hereby incorporate the relevant facts set forth in the unredacted exhibits above.

8        117.    Upon information and belief, Matthews and QKM received the Initial Blog Post

9    prior to its publication, and read, edited, drafted and approved the publication of the material

10   false statements in the Initial Blog Post set forth in the foregoing.  Matthews and QKM also used

11   the information on behalf of Defendants Gary Robert Matthews, Kalyn Matthews Denno, Adam

12   J. Denno, Keith Allen Dilling, and Rosemary Norris Hall for their benefit to establish significant

13   short positions in Banc of California stock prior to the publication of the Initial Blog Post from

14   which they could all profit due to the publication of that false information.  Each of them

15   ultimately approved the publication of the false Initial Blog Post, and establish significant short

16   positions in Banc of California stock from which they profited due to the publication of that false

17   information.  This allegation is based upon, e.g., discussions which Mr. Sugarman had with

18   market participants with Texas connections prior to the publication of the Initial Blog Post who

19   said that Matthews and a group of his regular investors had entered into a scheme with others to

20   "get" Mr. Sugarman; see also Exhibit D at pg. 19 of 23; likewise Exhibit D at pg. 10 of 23

21   discusses the motion made by lawyers for Aurelius, the same lawyers who now represent the

22   Castalian Defendants, moved to quash subpoenas to the Castalian Defendants, the Muddy Waters

23   Defendants and the Matthews Defendants relating solely to the reasons for their trading activity

24

25   [2] To the extent that this Amended Complaint refers in any place to redacted materials offered in support of the basis
     for Plaintiffs' allegations made upon information and belief, such redacted materials are available to the Defendants
26   or are possessed by them in un-redacted form and Defendants are directed to their copies of such un-redacted
     materials and the documents cited therein for the full bases for Plaintiffs' allegations made on information and
27   belief.  Defendants are fully informed about and are on notice of the specific bases for the sources of Plaintiffs'
     knowledge and information and all documentary evidence supporting such bases due to their access to or possession
28   of these documents.  As to all specific redacted documents cited to in this Amended Complaint, Plaintiffs waives all
     of their confidentiality and protective order protections.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

in Banc prior to the publication of the Blog because, lawyers for Aurelius argued, such production would uncover communications between those Defendants and others regarding Aurelius and the Blog prior to its publication and would unmask the Smear Enterprise;  the Brief in support of Mr. Sugarman's Motion to Compel Production of Documents from the Mathews Defendants filed by Mr. Sugarman's counsel on the Court's public website on December 6, 2018 (attached hereto as Exhibit H) at pgs. 10-14 of 31.   See Footnote 2.

118.    All defendants read the FBI affidavit prior to approving the Blog post.  The FBI said Galanis' claims were fraudulent assertions.  Defendants knew that the references were to Sugarman because the Blog Post references other aspects of the same court filing and referenced Sugarman.

119.    During the period prior to the publication of the Initial Blog Post, Defendants Block, Gibson, David Q. Matthews, Castalian, Muddy Waters, and QKM, on behalf of themselves and the other Defendants were in regular communication with each other with respect to the false statements in the Initial Blog Post and their short position trading strategies based on the publication of the false information in the Initial Blog Post.  Additionally, the lawyers for the Smear Enterprise was also in communication with lawyers for Galanis to collect documents and records for use by the Smear Enterprise.  This allegation is based upon deposition transcripts, communications with market participants, and documents reviewed.  See also, e.g., Exhibits D-H, as well as the transcript of oral argument held in the United States District Court, District of Minnesota, in the Securities Litigation on the motion to compel production from the Castalian Defendants, on October 22, 2018 (relevant portions attached hereto as Exhibit I) at pgs. 26-27 wherein counsel for the Castalian Defendants admits to Gibson and Castalian having had "voluminous communications with other market participants, regulators, and attorneys" regarding the trading and blog posts; and the Ex Parte motion to quash subpoenas to the Muddy Waters Defendants, Castalian Defendants and the Matthews Defendants where in counsel for "Aurelius", who not coincidentally are current counsel for the Castalian Defendants in this matter, argues that granting discovery from those Defendants for communications surrounding and before the publication of the blog posts will expose the identity of the Smear Enterprise,

which indicates that each of the Defendants were in direct communication with each other and the Smear Enterprise in regard to the blog posts, pre-publication and post-publication, and the trading in relation thereto (see Exhibit D at pg. 10 of 23; And In re Subpoenas to Produce Documents, Information, or Objects to Muddy Waters, et al., ECF Dkt. Nos. 46 at pg. 8 of 19, and 64 at pg. 6 of 13).  See Footnote 2.

120.   Galanis has admitted that he knew that the Initial Blog Post was false and misleading at the time of its publication.  Upon information and belief, Galanis furnished information contained within the Initial Blog Post and otherwise participated in the drafting or creation of the Initial Blog Post as part of his plan to retaliate against Mr. Sugarman for his past participation in the various government and law enforcement proceedings and investigations, and to attempt to intimidate, threaten or corruptly persuade Mr. Sugarman from providing further testimony against Galanis with respect to the then still active Tribal Bond Fraud investigation, and any sentencing proceedings arising from his guilty verdict in the Gerova Fraud or as to any potential guilty verdict or finding in relation to the Tribal Bond Fraud.  Galanis participated in the Smear Enterprise to facilitate its scheme knowing that he was facilitating the publication of false and materially misleading allegations against Mr. Sugarman and the COR Plaintiffs and to facilitate the retaliation.  The Defendants have concealed Galanis' participation in the Smear Enterprise, including in the Defendants first motion to dismiss which included intentionally misleading statements relating to Defendants' relationship with Galanis which Galanis had already admitted to under oath and Defendants continue to conceal it today.  This is an unfair business practice designed to harm Mr. Sugarman, COR Plaintiffs, and their businesses and deprive them of their property interests and money and Mr. Sugarman's lawful employment and livelihood.  In fact, the Defendants have affirmatively lied about Galanis' identity and concealed his participation in the Smear Enterprise when describing the source of the Smear Enterprise's information in its publications to further their scheme to defraud and retaliate.

121.   The Defendants knew of Galanis' personal involvement in the Smear Enterprise, that he had been convicted of fraud, that the Introduction to COR Capital document was fraudulent, the Galanis in fact drafted the Introduction to COR Capital Documents (and has

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    admitted to it), that he knew the claims in the Initial Blog Post to be false, unfair and misleading,

2    and nonetheless the Smear Enterprise continued to repeat the claims, use false, fraudulent, and/or

3    misleading documents from Galanis to seek to portray as true claims they knew to be false, and

4    conceal the fact the Galanis was part of the Smear Enterprise and a source of the information

5    provided.  See, e.g., Exhibit J, the non-confidential portions of the deposition of Jason Galanis in

6    the Securities Ligation, at pgs. 74-76 where Galanis admits that he is the author of the

7    "Introduction to COR Capital" document and that it was never discussed with Mr. Sugarman.

8         122.   The Smear Enterprise did not accurately disclose the knowledge of its co-

9    conspirator Galanis that documents it used were misleading due to the fact that they were

10   manipulated, forged, counterfeit, and/or created for the express purpose of being used to defraud

11   third parties by Galanis. The Smear Enterprise intentionally used statements in its blog that were

12   false and/or omit information necessary to disclose to not make them materially misleading.

13        123.   The Smear Enterprise used and relied on a document called "Introduction to COR

14   Capital" that they knew to be false.  The document was plagued with dozens of errors that were

15   exposed by even the most basic diligence, including, but not limited to, assertions that:  COR

16   Capital and/or Mr. Sugarman did business with or financed Michelle Morton and/or companies

17   associated with her; that COR Capital was "New York based", that COR Capital was a "control"

18   investor in Banc of California, that COR Capital had a portfolio investment in the "mutual fund

19   business", that COR Clearing and/or Mr. Sugarman invested in an entity called "Cor Fund

20   Advisors", that COR Capital and/or Mr. Sugarman invested in or controlled "a Bermuda-based

21   property and casualty insurer, New Olympic Re Ltd", that Mr. Sugarman owned an entity called

22   "Wealth-Assurance AG", that Mr. Sugarman was the "CEO of COR Clearing", that members of

23   Banc's Board of Directors and Banc's Senior Advisor were potentially involved in Galanis'

24   scheme, and that Officers and Directors of COR Securities and COR Clearing (many of whom

25   were referenced with inaccurate titles and out of date information) were potentially involved in

26   Galanis' scheme.  See, e.g., Exhibit J, the non-confidential portions of the deposition of Jason

27   Galanis in the Securities Ligation, at pgs. 74-76 where Galanis admits that he is an author of the

28   "Introduction to COR Capital" document and that it was never discussed with Mr. Sugarman.

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Attached hereto as Exhibit R is a copy of that document with an added overlay to show at least fifty comments that highlight overt errors or misstatements in that document and Exhibit S which is a key setting forth the corresponding errors or misstatements.

124.   The Initial Blog Post's central claims were false and misleading as to Sugarman, COR Plaintiffs, and Sugarman Entities, and were known by Galanis and the Defendants to be false and/or were known by each Defendant to be published with reckless disregard for their truth or falsity at the time that the Initial Blog Post was published.  Publication of these statements was made by using the electronic wire system and constitute wire fraud.  The publication of these statements was made in furtherance of Galanis' plot to retaliate against and attempt to intimidate Mr. Sugarman as set forth above.

125.   Prior to the publication of the Initial Blog Post, the Defendants established massive short positions on Banc of California stock that would earn them millions of dollars in illicit profits if the stock dropped.[3]

126.   Shortly after the publication of the Initial Blog Post, Gibson and Castalian used the Aurelius on-line entities' Twitter Account to continue to mislead the public by sending deceptive public tweets on behalf of the Smear Enterprise.  For example, they sent a tweet on October 18, 2016 with a link of the blog from that twitter account to the attention of Defendant Muddy Waters Research, and sought to falsely, deceptively, and fraudulently deceive readers into believing that Muddy Waters: was previously unaware that the Smear Enterprise was planning to publish the blog; had no role in drafting or editing the blog; had not previously seen the blog and was not aware of its contents; was not a part of the Smear Enterprise; did not short Banc of California stock prior to and in anticipation of the blog; was just learning of the information in the blog for the first time; and was not already beginning to cover its short position immediately following the issuance of the blog.  In fact, the tweet by Gibson and Castalian from the Aurelius on-line presence's twitter account to "@MuddyWatersre" (the

_____

[3] Between Block and Muddy Waters, Gibson and Castalian, and the Matthews Defendants, they traded ninety percent of the short trades in the period leading up to the publication of the Initial Blog Post.  The remaining ten percent of trades have been reviewed and validated by Mr. Sugarman who was able to determine that the remaining traders did not have prepublication access to the Initial Blog Post unlike the Defendants.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   Twitter account for defendant Muddy Waters Research) was intentionally deceptive and

2   misleading and therefore constituted an unfair business practice.  See, e.g. Exhibit D-F (showing

3   Block and Muddy Waters had advance copies of the Initial Blog Post).

4   THE SECOND BLOG POST

5        127.   On October 20, 2016, two days after the publication of the Initial Blog Post, the

6   Defendants posted a further blog post through the Smear Enterprise on Seeking Alpha (the

7   "Second Blog Post" - https://seekingalpha.com/instablog/38682326-aurelius/4926308-banc-

8   response) which announced that Defendants would soon post thousands of documents relating to

9   Plaintiffs on a new website, www.bancexposed.com.  It also reiterated the false position that

10   through Sugarman and others, Galanis had control over Banc.  The Second Blog Post also

11   questioned the independence of Banc's internal investigation over these purported ties.  The

12   Second Blog Post continued to target Mr. Sugarman personally and attack him, including by

13   harassing his wife and her family by adding numerous allegations relating to Mr. Sugarman's

14   wife and her family's private business and activities from over a decade prior to the post and

15   well before any affiliation with the Banc.

16        128.   The Second Blog Post, upon information and belief, was a joint work created by

17   the Defendants -- who participated in its creation and writing and who jointly authorized its

18   publication and distribution.  The purpose of the Second Blog Post was both to cover up the

19   illegal, unfair, and deceptive activity in association with the publication of the false and

20   misleading allegations in the Initial Blog Post and to attack Sugarman personally and retaliate

21   against him.

22        129.   Upon information and belief, Galanis was, in fact, a main source, directly and/or

23   indirectly, for the documents that Aurelius was proposing to publish and later did publish on

24   their newly launched website as part of the plan to retaliate against Mr. Sugarman.  This

25   allegation is based upon a review of the non-confidential portions of the deposition of Jason

26   Galanis in the Securities Ligation attached hereto as Exhibit J at pgs. 41, 91 and 313.

27        130.   Upon information and belief, Defendant Block received the Second Blog Post

28   prior to its publication, and read, edited, drafted and approved the publication of each of the false

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   statements in the Second Blog Post set forth in the foregoing, and that Defendant Galanis was the

2   source of the documents which the Second Blog Post was proposing to publish.  As set forth

3   above, Block and Muddy Waters directed the postings through the Aurelius on-line presence's

4   account and is directly responsible for content posted through that account.  Block also caused

5   Defendants Muddy Waters Capital, LLC, MLAF LP, Muddy Waters Research LLC, and MWCP

6   LLC to become aware of and approve the publication of false statements in the Second Blog Post

7   and the fact that Defendant Galanis was to be the unattributed source of the documents that it

8   proposed to publish prior to its publication.  This allegation is based upon a review and analysis

9   of public filings, motions, court arguments, communications between attorneys and other sources

10   which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain

11   in the Securities Litigation which reflect the foregoing and indicate that there are documents

12   which independently support such but which are currently subject to a protective order in the

13   Securities Litigation, including, but not limited to, previously identified Exhibits D-F.

14   131.   Upon information and belief, Defendant Gibson received the Second Blog Post

15   prior to its publication, and read, edited, drafted and approved the publication of each of the false

16   statements in the Second Blog Post set forth in the foregoing, and that Defendant Galanis was the

17   source of the documents which the Second Blog Post was proposing to publish.  For the reasons

18   set forth above, Gibson and Castalian controlled the Aurelius on-line presence's account and is

19   directly responsible for the publication of content through that account.  Gibson also caused

20   Defendants Castalian Partners and Value Fund to become aware of and approve the publication

21   of false statements in the Second Blog Post and the fact that Defendant Galanis was to be the

22   unattributed source of the documents that it proposed to publish prior to its publication.  This

23   allegation is based upon a review and analysis of public filings, motions, court arguments,

24   communications between attorneys and other sources which were not marked either Attorneys'

25   Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect

26   the foregoing and indicate that there are documents which independently support such but which

27   are currently subject to a protective order in the Securities Litigation, including, but not limited

28   to, previously identified Exhibits D and G.

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

132.    Upon information and belief, Defendants Matthews and QKM received the Second Blog Post prior to its publication, and read, edited, drafted and approved the publication of each of the false statements in the Second Blog Post set forth in the foregoing, and that Defendant Galanis was the source of the documents which the Second Blog Post was proposing to publish.  Defendant Matthews also caused Defendants QKM, Gary Robert Matthews, Kalyn Matthews Denno, Adam J. Denno, Keith Allen Dilling, and Rosemary Norris Hall to become aware of and approve the publication of false statements in the Second Blog Post and the fact that Defendant Galanis was to be the unattributed source of the documents that it proposed to publish prior to its publication.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including, but not limited to, previously identified Exhibits D and H.

133.    During the period prior to the publication of the Second Blog Post, Defendants Block, Gibson, David Q. Matthews, Gary Robert Matthews, Kalyn Matthews Denno, Adam J Denno, Keith Allen Dilling, and Rosemary Norris Hall were in regular email, text, telephone and other contact with each other to discuss the drafting and finalizing of the false statements in the Second Blog Post and the proposal to publish documents provided by Defendant Galanis as an unattributed source.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including, but not limited to, previously identified Exhibits D-H.

THE WEBSITE

134.    On October 24, 2016, some six days after the publication of the Initial Blog Post, and a mere four days after publication of the Second Blog Post, Defendants caused thousands of

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

pages of documents purporting to be related to Sugarman and COR Plaintiffs to be published on a new website entitled Bancexposed.com (the "Aurelius Website").  On information and belief, several of the documents were obtained from Galanis personally and/or through his lawyer and/or other Galanis associates outside of prison at Galanis' direction or Galanis' agents directed the Smear Defendants to where the documents could be located and described how they fit into Galanis' fraudulent narrative, and included documents that were forged, fraudulent, misleading, manipulated by Galanis and his associates, and documents that Galanis and/or his associates created to deceive third parties and to create a false appearance of affiliation with Plaintiffs, to further their fraud to which Galanis had pled guilty, and to falsely implicate Mr. Sugarman in their activities as part of their scheme to retaliate against him for his testimony and cooperation. One document was a regulatory submission which was created by Galanis by sourcing Mr. Sugarman's resume through intermediaries for undisclosed purposes without disclosing his role, and fraudulently affixing a forged signature to the document.   The Aurelius Website also included legitimate documents sourced from legitimate sources in order to increase the effectiveness of Defendants' fraud by causing readers without first-hand knowledge of the documents or from whom they were sourced to be intentionally mislead or caused to draw conclusions Defendants knew to be false.  This allegation is based upon a review of the non-confidential portions of the deposition of Jason Galanis in the Securities Ligation which state that he believes this to be the case and are attached here as Exhibit J.

135.    Defendants deceptively concealed the fact that Galanis was the Smear Enterprise's undisclosed source for the article that claimed that Banc was "un-investible" because it had an undisclosed relationship with Galanis.  Galanis knew that the Smear Enterprise's allegation was false and unfair.

136.    The Smear Enterprise has sought, upon information and belief, to cover its tracks by taking down the website bancexposed.com to hide much of their coordination with Galanis and the paper trail of misleading documents.

137.    Upon information and belief, the documents provided by Galanis to the Smear Enterprise were consistent with the documents he used in connection with his prior Tribal Bond

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   Fraud and other fraudulent activities.  Those documents were used by the Defendants on their

2   website and were known by the Defendants to be false or were published on the website with

3   reckless disregard for their truth or falsity at the time that the Second Blog Post was published.

4   This allegation is based upon a review of the non-confidential portions of the deposition of Jason

5   Galanis in the Securities Ligation attached hereto as Exhibit J at pgs. 41, 91 and 313, and Mr.

6   Sugarman's review of the documents which were posted to the Aurelius Website.

7       138.   Among the false and depictive documents posted on the Aurelius Website were:

8       a.   The fraudulent document created by Galanis and his associates titled

9           "Introduction to COR Capital" – this document was demonstrably false in at least

10          the following ways:  the statement that COR Capital and/or Mr. Sugarman did

11          business with or financed Michelle Morton and/or companies associated with her

12          was false; the statement that COR Capital was "New York based" was false; the

13          statement that COR Capital was a "control" investor in Banc of California was

14          false; the statement that COR Capital had a portfolio investment in the "mutual

15          fund business" was false; the statement that COR Clearing and/or Mr. Sugarman

16          invested in an entity called "Cor Fund Advisors" was false; the statement that

17          COR Capital and/or Mr. Sugarman invested in or controlled "a Bermuda-based

18          property and casualty insurer, New Olympic Re Ltd" was false; the statement that

19          Mr. Sugarman owned an entity called "Wealth-Assurance AG" was false; the

20          statement that Mr. Sugarman was the "CEO of COR Clearing" was false;

21          statements as to Officers and Directors of COR Securities and COR Clearing

22          were misleading and/or false.  See Exhibit J at pgs. 74-76 for the Galanis'

23          admission that he created this document.  At the time it was attached to the

24          Aurelius Website and referenced in the Blog Posts, it had already been used by

25          law enforcement as evidence use of false documents to commit fraud.  See, e.g.,

26          Exhibit R and Exhibit S.

27      b.   A document which purported to identify itself as a "Curriculum Vitae" for Steven

28          A. Sugarman bearing the name and purported signature of "Steve Sugarman"

43

**FIRST AMENDED COMPLAINT**

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   which was a forgery.

2       c.  A document which purported to be a "Declaration regarding freedom of

3           execution, bankruptcy or composition proceedings" bearing the name and

4           purported signature of "Steve Sugarman" which was another forgery.

5       d.  Additionally, there were number of documents included on the website which had

6           been used at Galanis' trial as evidence of his false and fraudulent statements

7           regarding Mr. Sugarman which were mischaracterized as demonstrating a link

8           between the two when no such link existed as was proven from Galanis' fraud

9           conviction.

10       e.  Several business records, correspondences, and agreements purportedly in the

11           names of COR Plaintiffs that were no accurate or authorized.

12       139.    Smear Defendants also had information provided by Galanis published on

13   Seeking Alpha to smear other financial institutions that Sugarman had relationships with such as

14   Bank of the Internet (see e.g., https://seekingalpha.com/article/4015081-barry-minkow-jason-

15   galanis-just-when-i-thought-i-bofi-figured-out).  Shortly after the Second Blog Post, Aurelius

16   posted an article based on information sourced directly from Galanis also suggesting that Bank

17   of Internet may also have inappropriate Galanis ties.  Interestingly, Galanis did not seek to

18   provide damaging information to other banks who were not related to Sugarman and who

19   Sugarman did not do business with.  For instance, Galanis did not disclose his loans from the

20   founder of a local bank in Southern California who did not serve as a witness against him.

21   THE THIRD BLOG POST

22       140.    The Smear Enterprise published a blog titled, "BANC: Whistleblower

23   Revelations, Bad Loans, And Undisclosed Related Party Transactions" and several other social

24   media posts on January 26, 2017 through the Aurelius on-line presence controlled by Gibson and

25   the Castalian Defendants (the "Third Blog Post" - https://seekingalpha.com/instablog/38682326-

26   aurelius/4953507-banc-whistleblower-revelations-bad-loans-and-undisclosed-related-party-

27   transactions).  Among other things, in the Third Blog Post they claimed that: "Aurelius" was

28   contacted by "a whistleblower with a deep knowledge of Jason Galanis' business dealings with

**FIRST AMENDED COMPLAINT**

the Sugarmans" who explained:  how "Jason Galanis' ownership in regulated companies

alongside . . . Steven Sugarman . . .  was concealed from the SEC, FINRA, and investors"; and

that Banc under Sugarman had "engaged in mortgage fraud by hiding bad loans in 'mortgage

pools'";  Not only were these statements false, and known by the Defendants to be false, but

most egregiously Defendants hid the material fact that one of the sources of these false

statements was Galanis – whose identity they concealed and tried to pass off as that of an

independent whistleblower.  This publication was part of the scheme by Galanis to retaliate.

    141.    In fact, claims including those outlined above have been investigated by

numerous parties each of whom has confirmed no wrong-doing by Sugarman.

    142.    Galanis knew that the reference to a "whistleblower" was in fact a reference to

him – a fact concealed by Defendants to commit harm against Mr. Sugarman and COR Plaintiffs

and to commit wire fraud against others.  This coordinated concealment also constituted an

unfair business practice and was a required part of the retaliation and intimidation scheme which

could not have been accomplished had Galanis' involvement been public knowledge. This

allegation is based upon a review of the non-confidential portions of the deposition of Jason

Galanis in the Securities Ligation attached hereto as Exhibit J at pgs. 40-41, 91 and 313 wherein

Galanis testified that he provided documents and information to the "entity that identified

themselves as Aurelius" while he was in prison through his lawyer to Aurelius' Los Angeles-

based lawyer, and that Galanis believed he was the "whistleblower" referred to in the Third Blog

Post.  While Plaintiffs do not believe that Galanis' testimony was complete, the admission that

he made therein as to one part of his involvement with the Enterprise was significant.

    143.    Gibson and Castalian would later go on to amend the Third Blog Post on January

26, 2017 (https://seekingalpha.com/author/aurelius/comments) to allege that the "whistleblower"

was not an insider and had no fiduciary duties to Banc of California – thereby acknowledging

that they were aware that Galanis (who was the referenced whistleblower as he admits) did not

control Mr. Sugarman, COR Plaintiffs, or Sugarman Entities, proving they knew their central

allegations were false.  Nonetheless, Defendants continued to make claims that Galanis

controlled Mr. Sugarman, COR Plaintiffs and Sugarman Entities even after the date they

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

admitted their "whistleblower" Galanis was not an insider or fiduciary to any of those entities.

144.    Defendants then published multiple false allegations including that Galanis had ownership of COR Securities, Galanis was business partners with Sugarman or Sugarman entities (including via ownership or control), and that Galanis received proceeds from Sugarman for his illicit activities.  All of these claims were false and known by Defendants to be false.  Again this is all supported by Defendants' continued hiding of the fact that their purported "source" for these allegations was their co-conspirator and convicted felon, Galanis, who made these claims from prison after having pled guilty for fraudulently making similar claims about being affiliated with Sugarman as part of his fraud and was now seeking to retaliate and intimidate.

145.    The false allegations in the Third Blog Post were, upon information and belief, in conformity with the ongoing coordinated scheme, were again spread by Defendants.  Matthews, QKM and the other Matthews Defendants used the Rota Fortunae on-line presence, as outlined above, in an attempt to give the coordinated scheme the appearance of objectivity.  Thus on January 26, 2017, they cause the Rota Fortunae presence's on-line account (https://twitter.com/rfortunae) to retweet the Aurelius Blog Post of that same day.  Rota Fortunae account additionally published on January 26, 2017, upon information and belief, in support of the coordinated scheme, a tweet alleging that "[a]pparently mortgage fraud at $BANC is good news???" (https://twitter.com/RFortunae/status/824673198704889856).  Likewise, the next day, January 27, 2017, Rota Fortunae account published a false and misleading tweet implying Mr. Sugarman knew about this alleged "mortgage fraud" and that caused "Sugarman [to] unload 121k shares the day he resigns... five days before earnings" (https://twitter.com/RFortunae/status/825007071624040454).  On January 27, 2017, the Rota Fortunae account also falsely tweeted that the book which Mr. Sugarman co-authored had a "forward by Jason Galanis" (https://twitter.com/RFortunae/status/825188884053123072).  All of the above tweets from Rota Fortunae were false and were known to be false, and all were, published under the control of Matthews, QKM and the other Matthews Defendants and were published in further support of the ongoing coordinated scheme between the Defendants through

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   the Smear Enterprise to retaliate against and attempt to intimidate Mr. Sugarman and to damage

2   Mr. Sugarman and Plaintiffs.

3        146.   Defendants also made the false claims in the Third Blog Post that Sugarman and

4   Banc of California falsely valued hundreds of millions of dollars of mortgage loans.  These

5   claims were also false.  Indeed, under Sugarman's leadership Banc sold the mortgage loan

6   portfolio weeks before Aurelius and Galanis made these claims, realizing a profit for Banc.

7   Instead of holding the mortgages, the Banc already had cash sitting in its account when the Blog

8   posted.

9        147.   Notwithstanding the fact the Smear Enterprise's Third Blog Post published was

10  false, Banc of California's stock was nonetheless knocked lower during the trading day

11  following the publication, and Sugarman's reputation was once again tarnished.

12       148.   Upon information and belief, Defendant Block received the Third Blog Post prior

13  to its publication, and read, edited, drafted and approved the publication of each of the false

14  statements in the Third Blog Post set forth in the foregoing.  Block also caused Defendants

15  Muddy Waters Capital, LLC, MLAF LP, Muddy Waters Research LLC, and MWCP LLC to

16  become aware of and approve the publication of false statements in the Third Blog Post prior to

17  its publication so that Block could use those Defendants, as to which he was in control as

18  managing member or managing partner, to establish significant short positions in Banc of

19  California stock from which they could profit due to the publication of that false information.

20  Additionally, as set forth above, Block and Muddy Waters directed the Aurelius on-line presence

21  and is responsible for content published through it.  This allegation is based upon a review and

22  analysis of public filings, motions, court arguments, communications between attorneys and

23  other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the

24  public domain in the Securities Litigation which reflect the foregoing and indicate that there are

25  documents which independently support such but which are currently subject to a protective

26  order in the Securities Litigation, including, but not limited to, previously identified Exhibits D-

27  F.

28       149.   Upon information and belief, Defendant Gibson received the Third Blog Post

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1  prior to its publication, and read, edited, drafted and approved the publication of each of the false

2  statements in the Third Blog Post set forth in the foregoing.  As set forth above, Gibson and

3  Castilian controlled the blog for the Aurelius on-line presence and so was directly responsible for

4  what was published through it.  Gibson also caused Defendants Castalian Partners and Value

5  Fund to become aware of and approve the publication of the false statements in the Third Blog

6  Post prior to its publication so that Gibson could use those Defendants, as to which he was in

7  control as the manager and/or executive officer, to establish significant short positions in Banc of

8  California stock from which they could profit due to the publication of that false information.

9  This allegation is based upon a review and analysis of public filings, motions, court arguments,

10  communications between attorneys and other sources which were not marked either Attorneys'

11  Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect

12  the foregoing and indicate that there are documents which independently support such but which

13  are currently subject to a protective order in the Securities Litigation, including, but not limited

14  to, previously identified Exhibits D and G.

15      150.    Upon information and belief, Defendant Matthews received the Third Blog Post

16  prior to its publication, and read, edited, drafted and approved the publication of each of the false

17  statements in the Third Blog Post set forth in the foregoing.  Defendant Matthews also caused

18  Defendants QKM, Gary Robert Matthews, Kalyn Matthews Denno, Adam J. Denno, Keith Allen

19  Dilling, and Rosemary Norris Hall  to become aware of and approve the publication of the false

20  statements in the Third Blog Post prior to its publication so that Defendant Matthews could use

21  Defendant QKM, as to which he was in control as the managing manager, and Defendants Gary

22  Robert Matthews, Kalyn Matthews Denno, Adam J Denno, Keith Allen Dilling, and Rosemary

23  Norris Hall to establish significant short positions in Banc of California stock from which they

24  could profit due to the publication of that false information.  This allegation is based upon a

25  review and analysis of public filings, motions, court arguments, communications between

26  attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential

27  and are in the public domain in the Securities Litigation which reflect that foregoing and indicate

28  that there are documents which independently support such but which are currently subject to a

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   protective order in the Securities Litigation, including, but not limited to, previously identified

2   Exhibits D and H.

3        151.   During the period prior to the publication of the Third Blog Post, Defendants

4   Block, Gibson, David Q. Matthews, Gary Robert Matthews, Kalyn Matthews Denno, Adam J

5   Denno, Keith Allen Dilling, and Rosemary Norris Hall were in regular email, text, telephone and

6   other contact with each other to discuss the drafting and finalizing of the false statements in the

7   Third Blog Post and the coordination of their short position trading strategies based on the

8   publication of the false information in the Third Blog Post.  This allegation is based upon a

9   review and analysis of public filings, motions, court arguments, communications between

10   attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential

11   and are in the public domain in the Securities Litigation which reflect the foregoing and indicate

12   that there are documents which independently support such but which are currently subject to a

13   protective order in the Securities Litigation, including, but not limited to, previously identified

14   Exhibits D-H.

15   THE TWITTER ATTACKS

16        152.   Defendants' social media and other communications activity including

17   encouraging social media activities about the Smear Enterprise's blog posts by others (including

18   by Castalian Partners, James Gibson, Matthews Parties and others) was part of Defendants'

19   coordinated scheme to amplify the false statements published by the Smear Enterprise, to

20   retaliate against and attempt to intimidate Mr. Sugarman, and to further the work of the Smear

21   Enterprise, including to harm Plaintiffs

22        153.   This activity included but was not limited to, Gibson and Castalian causing the

23   Aurelius Account, with the agreement and in collaboration with the other defendants, to make

24   the following false Tweets[4] in furtherance of the Smear Enterprise:

25        a.   On the morning of October 18, 2016, shortly following the posting of the Blog on

26

27   [4] Plaintiffs will include links to the various tweets where available but, for example, the Aurelius account appears to have deleted (or limited access) to most of its tweets prior to September 2017 and removed others, and the Muddy Waters Research account (https://twitter.com/muddywatersre) appears to have deleted most of its tweets prior to

28   August 2017.  For tweets which are no longer available, they are quoted and/or characterized based upon having previously been viewed or with links to retweets of such articles by other Twitter accounts.

FIRST AMENDED COMPLAINT

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Seeking Alpha and tweeting about it by Gibson and Castalian on Twitter, Gibson and Castalian caused Aurelius twitter account sent a tweet to "@MuddyWatersre" (the on-line presence on twitter for Muddy Waters) about "$Banc" which suggested that "Aurelius" was bringing its newly published article to Muddy's attention.  However, on information and belief, Muddy had coordinated with co-conspirators who were part of the Smear Enterprise on the Blog post in advance, and Muddy and other Defendants had been trading in advance of the Blog being published.  On information and belief, Muddy was already beginning to cover its short position by the time "Aurelius" sent the tweet according to public court filings and other documents including following a review of documents provided by FINRA relating to trading in Banc of California and conversations with counsel for Smear Defendants and see Exhibit K.  The tweet was intended to be, and was, misleading.  It falsely suggested that Muddy and the Defendants were not part of a joint conspiracy, had not coordinated on drafting the Blog, and were independent of one another.  In fact, on information and belief, Muddy had been coordinating with other co-conspirators who were part of the Smear Enterprise prior to the publication of the blog , including through written emails and communications over several weeks prior to October 18, and such communications reveal the names of Smear Defendants, additional John Does (as admitted in Exhibit M, documents produced in the Securities Litigation by Muddy Waters under protective order, oral arguments and written and verbal communications with Muddy Waters counsel relating to discovery subpoena, and other sources).  The Aurelius tweet was intended to deceive readers into a false impression and in fact the purpose of the tweet was to deceive and defraud readers and not for the benefit of MuddyWatersRe.

b.   On October 18, 2016 tweeting that Galanis was financed by the Banc of California through off-balance sheet transactions which was fraudulent information provided by Galanis' agent Maccuzzo who was paid by Galanis from

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

proceeds from his prior illegal activities and which Smear Defendants knew to be false.

c. On October 26, 2016 tweeting "$BANC CEO Steven Sugarman now deletes his Linkedin profile. Company has gone completely dark. @AlderLaneggs Time for passport holds???"

(https://twitter.com/AureliusValue/status/791308964524728320)

d. On November 10, 2016 tweeting "$BANC made threats and false statements, refused to answer questions, went dark, and now can't even timely file financials" (https://twitter.com/AureliusValue/status/796695656178085888)

e. On November 17, 2016 tweeting "Sugarmans aren't involved in Galanis' Valor? @BancofCal a new video for unnamed members of new "Joint Audit Committee" to review (https://twitter.com/AureliusValue/status/799268663761088516) which was fraudulent information provided by Galanis' agent Maccuzzo who was paid by Galanis from proceeds from his prior illegal activities and which Smear Defendants knew to be false.

f. On January 26, 2017 tweeting the Third Blog Post

g. On January 26, 2017 a tweet which accused Mr. Sugarman of helping conceal Galanis' ownership in regulated entities

h. On January 27, 2017 tweeting a photo of the cover of a book written by Mr. Sugarman together with the words "Get your collectors edition while you still can!!!" ( https://twitter.com/AureliusValue/status/825101735899312128)

i. On April 19, 2017 a tweet suggesting Sugarman committed fraud when reviewing his severance package paying him in line with a Resignation for Good Reason

j. On January 8, 2018, a tweet accusing Sugarman is accused of doing business through COR Clearing with a small broker-dealer that had settled an action with the SEC and had ties to individuals Aurelius deemed unsavory (and Sugarman does not know)

k. On January 31, 2018, tweeting "$BANC was caught in the same lie and

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Sugarman was ousted"

(https://twitter.com/AureliusValue/status/958782099087077378) as further

retaliation for Sugarman's past and potential testimony against Galanis including

for sentencing purposes pursuant to Crime Victim's Act.

l.   On August 20, 2018 a tweet suggesting Sugarman looks like fraudster Barry

Minkow, as further retaliation for Sugarman's past and potential testimony

against Galanis including for sentencing purposes pursuant to Crime Victim's

Act.

m.   On October 24, 2018 a tweet falsely accusing Mr. Sugarman of being in business

with Galanis through COR Securities Holdings, Inc.

(https://twitter.com/AureliusValue/status/1055261461130416129) based on false

and fraudulent information paid for and provided by Galanis' agent Maccuzzo to

other Smear Defendants which all knew to be false as further retaliation for

Sugarman's testimony against Galanis and potential future testimony including

for purposes of sentencing.

154.   This activity also included but was not limited to, the Matthews, QKM, and the

other Matthews Defendants causing the Rota Fortunae Account to make, with the agreement and

in collaboration with the other defendants, the following false Tweets:

a.   On October 18, 2016 retweeting the Initial Blog Post from the Aurelius account

multiple times on October 18, 2016

(https://twitter.com/AureliusValue/status/788419730730213376);

b.    On October 18, 2016 tweeting that "BANC stock still way to [sic] high.  Galanis

involvement deserves significant discount to book value."

(https://twitter.com/AureliusValue/status/788419730730213376)

c.   On October 21, 2016 tweeting "are you going to respond to "independent"

investigation or Sugarman's ties to westmore Ponzi scheme?

(https://twitter.com/RFortunae/status/789445028842090497), information from

Galanis based on personal information and knowledge of Sugarman relating to

Galanis relationships to execute his frauds.

d. On October 21, 2016 tweeting "How much buyback is $banc going to blow supporting the stock today??? Great use of shareholder capital" (https://twitter.com/RFortunae/status/789503688196763648)

e. On October 21, 2016 tweeting "SEC transcript directly refuting $BANC. FBI "conversation" with COR = we don't own Wealth-Assurance. SEC "investigation" = they do." (https://twitter.com/RFortunae/status/789534648267264000)

f. On October 21, 2016 tweeting "I thought the Sugarman's [sic] weren't involved in Valor. Corporate structure before Tribal Bond Scheme Indictments" (https://twitter.com/RFortunae/status/789537664311582720) which constitutes obstruction of justice as the Defendants retaliated against Mr. Sugarman and attempted to smear his reputation to undercut the DOJ and SEC cases by harming his reputation and smearing him through proxies and layering his involvement and payment for providing research including through transactions with financial institutions in violation of AML laws, as set forth below.

g. On October 24, 2016 tweeting that Banc was buying stock at $13/share to artificially support the stock price using a company stock buyback plan (https://twitter.com/RFortunae/status/790608005687414784)

h. On October 25, 2016 tweeting "To be long in $BANC is to believe it is the Sugarman's ONE legitimate business. Read @Aureliusvalue Bancexposed.com" (https://twitter.com/RFortunae/status/790910779641835520)

i. On October 26, 2016, retweeting Aurelius' tweet "$BANC CEO Steven Sugarman now deletes his Linkedin profile. Company has gone completely dark. @AlderLaneeggs Time for passport holds???" and commenting "Why would CEO of top 100 bank delete LinkedIn page? Many parallels to Gerova. Execs. Bail out shortly after short report before halted." (https://twitter.com/RFortunae/status/791310207716470784)

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

j. On November 10, 2016 retweeting Aurelius' tweet "$BANC made threats and false statements, refused to answer questions, went dark, and now can't even timely file financials"

https://twitter.com/AureliusValue/status/796695656178085888

k. On November 17, 2016 retweeting Aurelius' tweet "On November 17, 2016 tweeting "Sugarmans aren't involved in Galanis' Valor?  @BancofCal a new video for unnamed members of new "Joint Audit Committee" to review"

https://twitter.com/RFortunae/status/799277327951822848

l. On December 16, 2016 tweeting "In [sic] never knew Steven Sugarman [sic] played the fiddle so well"

(https://twitter.com/RFortunae/status/809891128904417280)

m. On January 26, 2017 retweeting Aurelius tweet forwarding the Second Blog Post and commenting "allegations of mortgage fraud by whistleblower.  Uhoh"

(https://twitter.com/RFortunae/status/824662393427005441)

n. On January 26, 2017 tweeting "Apparently mortgage fraud at $BANC is good news???" (https://twitter.com/RFortunae/status/824673198704889856)

o. On January 27, 2017 a tweet falsely characterizing an independent director's relationship with Mr. Sugarman

(https://twitter.com/RFortunae/status/825204933788057600)

p. On January 27, 2017 tweeting "How many people want to hold $BANC into the weekend?  Company "expects" to report earnings Monday.  No time given, no call scheduled" (https://twitter.com/RFortunae/status/825204933788057600)

q. On January 27, 2017 tweeting "I imagine $BANC earnings will be top notch. Why else would Sugarman unload 121K shares the day he resigns . . . five days before earnings" (https://twitter.com/RFortunae/status/825007071624040454)

r. On January 27, 2017, retweeting Aurelius' tweet of the photo of the cover of a book written by Mr. Sugarman together with the words "Get your collectors edition while you still can!!!" and commenting "Copies with forward by Jason

54

Galanis going for 14.80 on amazon.  Something tells me they'll be cheaper on Monday." (https://twitter.com/RFortunae/status/825188884053123072)

    s.   On January 27, 2017 tweeting a photo of Mr. Sugarman with the comment "Steven Sugarman doing math on his loan book 1+1=10" (https://twitter.com/RFortunae/status/825203422618075136)

    t.   On February 1, 2017 and February 2, 2017, tweeting multiple links to its new article on Seeking Alpha called "Banc of California: an Earnings Mirage – Price Target $8 Per Share" (https://twitter.com/RFortunae/status/826871520152657921; https://twitter.com/RFortunae/status/826871678177247235; https://twitter.com/RFortunae/status/827233519592157185; https://twitter.com/RFortunae/status/827233678728241156)

    u.   Aurelius Tweeting on October 18, 2016 and Rota Fortunae retweeting (https://twitter.com/AureliusValue/status/788421388323270657) that "[w]hile touting "community reinvestment" $BANC senior-most officers [Mr. Sugarman] financed Jason Galanis", Aurelius Tweeting and Rota Fortunae retweeting that "Senior-Most Officers and Directors [again by implication including Mr. Sugarman] have extensive and indisputable ties to Jason Galanis."

155.    All of the above tweets through the Aurelius on-line presence, though published by Gibson and Castalian, and through the Rota Fortunae on-line presence, though published by Matthews, QKM and the other Matthews Defendants, were false and misleading and were intended to continue the retaliatory and attempted intimidating purposes of the Smear Enterprise and the drafting, publication and timing or such posts were agreed to by the each of the Defendants as part of the Smear Enterprise.

156.    Likewise, the Smear Enterprise used other fronts to amplify and spread their attacks against Mr. Sugarman.  Thus, Rosenbluth who operated a Twitter account under the name @zrosenbluth45 (https://twitter.com/zrosenbluth45) commented upon, "liked" and retweeted the false Aurelius Tweets to give them an air of impartiality use to try to build credibility and following for the Aurelius Tweets.  Thus, as a partial example, Rosenbluth

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

commented on, liked or retweeted on the following occasions:  On November 8, 2016 –

"Something to keep an eye on...but if I'm not mistaken, $BANC has until tomorrow after the

close to file 10-Q" tagging Aurelius and liked by Aurelius; on November 10, 2016 – "and they

have until 5:30pm tonight to file NT 10-Q"

(https://twitter.com/zrosenbluth45/status/796684325395853312)  in response to (and "liked" by)

Aurelius' November 8, 2016 tweet that the Banc "Made threats and false statements, refused to

answer questions, went dark, and now can't even file timely financials."

(https://twitter.com/AureliusValue/status/796695656178085888); on December 5, 2016 that

Banc's" 8-K states [Wells Fargo] granted a waiver of default rights following lack of 10-Q filed

60 days after quarter end" and "However...the 8-K fails to explicitly state that Wells Fargo gave

$BANC a strict deadline of Jan. 26, 2017" tagging Aurelius; and on January 23, 2017 that his

prior Tweet of December 5 was "something to keep in mind this week re $BANC 10-Q filing..."

again tagging Aurelius.  Upon information and belief, such tweets by Rosenbluth were made at

the direction of and with the approval of Gibson and Castalian, and the other Defendants, as part

of the scheme to retaliate against Mr. Sugarman and profit as a result.  Similarly, the Smear

Enterprise employed other such fronts to do similar work for them, and those fronts are identified

as John Does 1-20.[5]

OTHER WAYS IN WHICH THE SMEAR ENTERPRISE HAS ATTACKED PLAINTIFFS

<u>Spreading False Information to Regulators</u>

157.    Defendants, with the encouragement of Galanis' intermediary, filed regulatory

whistleblower complaints with the SEC, posted tweets directed to "#SECEnforcement", and

engaged in communications with federal government officials using Galanis' documents and

information and in furtherance of Galanis' retaliation and obstruction of justice scheme.

158.    Galanis has also, from prison, using interstate wires, including email, contacted

the DOJ and SEC to make false and misleading whistleblower-type complaints against Mr.

Sugarman to pressure Mr. Sugarman and retaliate against Mr. Sugarman and attempt to further

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

---

[5] Rosenbluth's LinkedIn page lists him as employed by Castalian (https://www.linkedin.com/in/zander-rosenbluth-47075b49/).  He is also a paid contributor on SeekingAlpha (https://seekingalpha.com/author/zander-rosenbluth)

56

his goals of obstructing justices.  In fact, at least two attorney's from the SEC visited Mr. Galanis in prison to follow up on his fantastical claims relating to Mr. Sugarman causing the U.S. Government to incur costs relating to Galanis' knowingly false and fraudulent reports.

159.    As recently as 2018, Galanis has continued, pursuant to the agreement of  the members of the Smear Enterprise, to continue to attack and retaliate against Mr. Sugarman for his providing truthful information to law enforcement in connection with Galanis' commission of federal crimes by making false to the SEC and Department of Justice and to other government investigators and regulators trying to suggest that Mr. Sugarman made false statements when he provided an interview to the DOJ, FBI and SEC relating to Galanis.  Also members of the Smear Enterprise made false whistleblower reports about Sugarman.  See, e.g., Exhibit J, the non-confidential portions of the deposition of Jason Galanis in the Securities Ligation, at pgs. 97-98 where Galanis admits that has made such statements to the SEC and the DOJ.  These statements were false.  The SEC has closed its investigation relating to Banc of California including related to Mr. Sugarman with no action, and Mr. Sugarman has been dismissed with prejudice with no payments of any kind from him (see Exhibit B).

Spreading False Information to the Media

160.    Gibson and the other Castalian Defendants, on behalf of the Smear Enterprise shared the information underlying and constituting the Attacks with journalists, regulators, and others – seeking to induce independent third parties into distributing Smear Enterprise's false and misleading claims, to deceive Sugarman Relationships into taking adverse actions with respect to Sugarman, or to take other action detrimental to Mr. Sugarman and COR Plaintiffs.

161.    Defendant Gibson communicated via internet and telephone with the LA Times restating many of the false and misleading claims in the Blog posts, and discussing his trading and securities positions in Banc, in the period immediately subsequent to their publication in October 2016 and January 2017 to Los Angeles Times reporter James Rufus Koren, and others including, upon information and belief, at least one of the real names of the members of the Smear Enterprise.  The basis for this allegation is Mr. Sugarman's conversations with the Los Angeles Times reporter in October 2018, previously identified Exhibit I at pgs. 26-27, wherein

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

57

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

counsel for the Castalian Defendants admits to Gibson and other Castalian Defendants having had "voluminous communications with other market participants, regulators, and attorneys" regarding the trading and blog posts, and a letter, dated February 19, 2019, from counsel for Aurelius in the Securities Litigation, the same counsel representing the Castalian Defendants in this case, which represents that Aurelius is a whistleblower, references an SEC investigation concerning Mr. Sugarman (the one which was later closed by the SEC see Exhibit B) and advises Aurelius will oppose Mr. Sugarman's requests for discovery in the Securities Litigation from the Muddy Waters Defendants, the Castalian Defendants and the Matthews Defendants because such discovery would identify the Smear Enterprise, attached hereto as Exhibit M.

<u>Abuse of Litigation Process</u>

162.    Galanis, in further acts of retaliation, in collaboration and with the consent of the members of the Smear Enterprise, and to help accomplish its ends,  provided the knowingly false information contained in the Initial, Second, and Third Blog Posts as well as the Rota Fortunae article and numerous tweets (for which he was the undisclosed source), and has provided that same information together with additional false and retaliatory information to the plaintiffs and their counsel in the Securities Litigation in order to retaliate against and harass Mr. Sugarman by provoking the plaintiffs and their counsel in that litigation into serving hundreds of meritless subpoenas on Galanis identified targets who, in reality, had nothing to do with the things Galanis said that they would have knowledge of, all in an attempt to interfere with Mr. Sugarman's lawful employment, lawful future employment prospects, livelihood, and general reputation. Among other places, Galanis falsely informed the plaintiffs and their counsel in the Securities Litigation that Mr. Sugarman's country club would have responsive information to disclose if subpoenaed.  That was clearly false as supported by the plaintiff's dismissing Mr. Sugarman from that action with the concession that no evidence existed to support linking him to the claims that they asserted (see Exhibit A).

<u>Spreading False Information to the Financial Community</u>

163.    Defendants also conspired to spread the false allegations in the Initial, Second and Third Blog Posts and Rota Fortunae article to third party Wall Street investment banks, Banc

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1  investors, short sellers, corporate governance consultants, advisory firms, and others to

2  investigate Banc of California and to put direct and indirect pressure on Sugarman Relationships

3  to take adverse action against Plaintiffs, including, but not limited to, the following persons who

4  each received such communications from the Defendants subsequent to the publication of the

5  Initial, Second and Third Blog Posts:  Tim Chrisman, Chairman of the Board of Banc of

6  California and Senior Advisor to Fig Partners; Craig W. Thomas, founder of Shareholder

7  Advocates for Value Enhancement, a corporate governance firm; Pete Smith, a trader; various

8  individuals at Wellington Management, an independent investment management firm; various

9  individuals at KBW; various individuals at PL Capital, an investment firm that specializes in

10  publicly traded U.S. banks; other investors in Banc of California and market participants.  Such

11  communications were done via email, direct message, and internet distribution, and were done

12  by Defendants Gibson, Block and Matthews on behalf of, and with the approval of, the other

13  Castalian Defendants, the Muddy Waters Defendants, and the Matthews Defendants.  The basis

14  for these allegations is communications that Mr. Sugarman had with the individuals who have

15  been contacted, and previously identified Exhibit I at pgs. 26-27 wherein counsel for the

16  Castalian Defendants admits to Gibson and Castalian having had "voluminous communications

17  with other market participants, regulators, and attorneys" regarding the trading and blog posts.

18      Other Joint Acts

19      164.   On information and belief, Muddy Waters, Carson Block, Gibson, Castalian and

20  the other Defendants coordinated, operated and directed the social media account (including the

21  legal disclaimers published with respect to the blog and social media account) used by the Smear

22  Enterprise.  In fact, the Smear Enterprise's disclaimer appended to the Initial Blog Post was

23  updated in 2018 – approximately two years after the publication of the blog – to reflect the more

24  robust disclaimers used by Muddy Waters in 2018 following the receipt of subpoenas from Mr.

25  Sugarman by the Defendants. The Smear Enterprise has admitted that it is aware of and closely

26  following legal processes relating to Muddy Waters, Castalian, Matthews Parties and other

27  Defendants in order to attempt to continue to conceal the identities of the Defendants and their

28  coordination, collaboration, and involvement in the Smear Enterprise.  Defendants have

**FIRST AMENDED COMPLAINT**

coordinated on their legal strategies to evade discovery, to conceal each other's identities, to conceal their relationships with one another, and to hide detection of their wrongdoing. On information and belief, based on court representations made by one or more Smear Defendants, the Smear Defendants are in possession of voluminous communications and documents relating to Mr. Sugarman, COR Plaintiffs, and Sugarman Entities which would disclose the identities of other Smear Defendants (John Does 1-20) and that include communications with market participants, regulators, lawyers, and others.  In fact, several Defendants have conspired to raise legal claims on behalf of other Defendants who are part of the Smear Enterprise in furtherance of their joint conspiracy.  Additionally, there has been undisclosed overlapping representation by shared attorneys, such as Locke Lord.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and identify that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including, but not limited to, previously identified Exhibits D-I.

165.    On information and belief, the Smear Enterprise arranged for Mr. Sugarman and his family to be surveilled at home and work, including surveillance of his young children.  This allegation is based upon Mr. Sugarman's conversations with members of his own security detail who documented such surveillance.

166.    Following the publication of the false attacks on Sugarman, the price of the stock dropped.  On information and belief, this stock price drop enabled the Smear Enterprise to amplify its false allegations by bootstrapping an aura of credibility onto its otherwise false claims and permitting them to further amplify their attacks on Sugarman and the COR Plaintiffs.

167.    The Defendants used the stock price drop (that they manufactured through their false and misleading publications, together with other deceptive and unfair business practices, such as concealing their relationship with each other and Galanis, and manipulative trading tactics) to support the credibility of their claims in several ways:  (i) to provide interviews to journalists, (ii) to increase Aurelius and Rota Fortunae's followers on social media to enhance

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   their ability to conduct future attacks on Mr. Sugarman and others, and, (iii) to pursue follow up

2   retaliation and attacks on Mr. Sugarman using additional false information derived directly from

3   Galanis and his associates while Galanis was imprisoned.

4   MR. SUGARMAN AND THE COR PLAINTIFFS ARE DAMAGED BY THE ATTACKS

5          168.    Defendants executed a sophisticated plan to lie, to mislead, to distort public

6   information, and to package fraudulent and manipulated documents concerning Mr. Sugarman,

7   COR Plaintiffs, and Sugarman Entities.  They did so expressly in order to retaliate against

8   Plaintiffs, damage Plaintiffs' business prospects, harm Mr. Sugarman by causing loss to his

9   business and property, his lawful employment and livelihood and future lawful employment

10   prospects, and profit thereby.

11          169.    Defendants, through the Smear Enterprise, sought to and did defraud and continue

12   to defraud members of the public, a discrete group of individuals or entities that include service

13   providers, vendors, clients, partners, employees, counter-parties, regulators, and others who do or

14   did business with Mr. Sugarman (defined above as the "Sugarman Relationships"), COR

15   Plaintiffs and/or the Sugarman Entities as well as others who were defrauded by the Smear

16   Enterprise as alleged herein.  Plaintiffs were damaged when the Sugarman Relationships, in

17   reliance on the Smear Enterprise's knowingly false and retaliatory allegations against Mr.

18   Sugarman, COR Plaintiffs and Sugarman Entities, severed ties with Mr. Sugarman and his

19   affiliated companies, harming their relationship with Mr. Sugarman, terminated business

20   agreements or opportunities, changed employment or business relationships (e.g., moving

21   clearing firms), or otherwise as a direct and proximate result of Defendants' conduct.  Mr.

22   Sugarman's lawful employment and livelihood were adversely affected.  The Sugarman

23   Relationships took actions and incurred costs they otherwise would not have taken based and/or

24   as a result of Defendants' conduct.  The fallout with the Sugarman Relationships from the

25   publication of the false, retaliatory, and misleading information included the following:

26             a.   First Republic Bank, one of the banks holding Mr. Sugarman and COR Plaintiffs'

27                 bank accounts closed the accounts as a direct and proximate result of the

28                 Defendants' actions.  This caused damage to Plaintiffs both reputationally and

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

professionally and to the operation of Plaintiffs' businesses;

b.  The sales price in connection with a major asset of Plaintiffs was reduced by approximately $40M in the wake of the Defendants' actions and as a result, both direct and proximate, Plaintiffs were damaged in an amount of not less than $40M due to the unfair business practices and deceptive and fraudulent behavior of the Defendants;

c.  Letters of intent for ongoing business combinations, acquisitions, and other deals, including one with Atlas Banc, were cancelled based on the continuing attacks and the resulting diligence questions relating to the Blog posts resulting in damage to Mr. Sugarman's livelihood;

d.  Access to credit for Sugarman owned companies became significantly constrained when other commercial banks and lending institutions, including Associated Bank, First Tennessee Bank, and others, terminated access to Warehouse Lines of credit because of the due diligence concerns directly related to the Defendants' on-going actions;

e.  Access to investment capital for new ventures was significantly constrained when large banks and other investors, including Citibank, Chase and others, declined to make capital available as a direct and proximate result of the Defendants' actions;

f.  Enhanced due diligence required by counter-parties for Sugarman related investments at great additional cost to Plaintiffs, all as a direct and proximate result of the Defendants' actions; and,

g.  The loss of lawful employment and livelihood opportunities in the form of executive job opportunities for Mr. Sugarman, including with Sterling Bank and Trust, Broadway Federal Bank, and others, as a direct and proximate result of the Defendants' actions.

170.  The decisions and actions made by the Sugarman Relationships, based upon their reliance upon the retaliatory misstatements of the Defendants, in turn, harmed COR Securities and COR Clearing, by causing them to (i) incur significant expenses to respond to inquiries

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

based on the allegations in the Initial Blog Post, (ii) lose clients, (iii) lose strategic relationships, (iv) lose potential acquisition partners, (v) and suffer other damages as outlined below.  None of the harmed parties, including the Sugarman Relationships defrauded by the Smear Enterprise, are claiming any harm or damages as a result of the purchase or sale of any securities in connection with the false statements (and most did not even own any securities).  As a direct and proximate result of the Smear Enterprise's publication of knowingly false and misleading information regarding Mr. Sugarman and the Sugarman Entities, the Sugarman Relationships were defrauded into taking actions detrimental to Mr. Sugarman (in the form of reputational damage, damage to his lawful employment and livelihood and future prospects for same) and the COR Plaintiffs, and as a direct and proximate result thereof, Mr. Sugarman and the COR Plaintiffs suffered substantial damages.

171.    Indeed, Mr. Sugarman and COR Plaintiffs experienced significant, foreseeable damages, including to their businesses and property, as a direct consequence of the retaliation, wire fraud and other racketeering activities committed by the Smear Enterprise.  For example, the value of COR Securities, which was being marketed for sale at the time, was dramatically impaired by at least $40 million dollars directly as a result of the Smear Enterprise's racketeering activities, and Mr. Sugarman and COR Plaintiffs suffered significant other damage to their property and business.

172.    In the years after October 18, 2016, several law firms investigated claims published in the Smear Enterprise's Initial Blog Post and concluded that they were false.  COR Plaintiffs, COR Securities, COR Clearing, Banc of California, Mr. Sugarman, and Mr. Sugarman's entities were never controlled by Galanis (as the Defendants knew at the time of the publication of the Initial Blog Post); in fact, Mr. Sugarman had no communication with Galanis for nearly two years prior to the publication of the Initial Blog Post.

173.    By the time the truth came out, it was too late.  Mr. Sugarman's reputation and that of his companies were harmed, Mr. Sugarman's lawful employment and livelihood was impaired, and the Defendants had exited their positions for a massive multi-million dollar profit.

174.    The Smear Enterprises' fraud and retaliation was therefore the direct and

**FIRST AMENDED COMPLAINT**

proximate cause of the harm to Mr. Sugarman and COR Plaintiff's business and property including losses suffered to the value of COR Securities, COR Capital, COR Advisors, and well as expenses Plaintiffs were forced to incur, legal costs they were subjected to, the termination of lawful employment, damage to livelihood, business prospects, and other damages as set forth herein or to be proven at trial.

175.   On information and belief, Defendants and/or Galanis have continued to harm Plaintiffs by means of wire fraud and retaliatory acts through repeating its Scheme on multiple occasions including during periods leading up to and including October 20-24, 2016, and January 30, 2017 periods, and making ongoing false statements to increase the economic losses suffered by the Plaintiffs.  This increased the damages suffered based on each new act of wire fraud and retaliation committed by the Smear Enterprise.

176.   As recently as October 24, 2018, the Smear Enterprise sought to damage a business transaction between the then Sugarman affiliated COR Clearing and Axos Bank by suggesting via tweet published by Gibson and Castalian through the Aurelius on-line's presences account, with the approval and consent of the other Defendants and in continued furtherance of their scheme, that the acquisition of COR Clearing had heightened regulatory risks among other things.

177.   Similarly, on October 24, 2018, the Smear Enterprise sought to damage a Mr. Sugarman's affiliated COR Clearing by suggesting via tweet published by Gibson and Castalian through the Aurelius on-line's presences account, with the consent and approval of the other Defendants, which falsely claimed via tweet that COR Clearing was "Sugarman's business that was started in partnership with the now-incarcerated Jason Galanis".  Thus, Defendants through the Smear Enterprise again tried to smear Mr. Sugarman and his businesses by falsely attempting to tie them to Galanis when Defendants knew through their association and relationship with Galanis as well as public documents that Galanis was not involved in the creation of COR Clearing and that Galanis never owned a share, controlled or was part of COR Clearing.

178.   In January 2019, Galanis also sought to damage Mr. Sugarman by providing false information and making false and fraudulent statements in a deposition he provided form prison

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

64

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

in a securities litigation.  He also admitted that he had been negotiating to execute a signed declaration against Mr. Sugarman which would have had the further effect of retaliating against Mr. Sugarman with false and fraudulent information, but that he had not signed it was and "considering" whether or not to do so.  It was clear that Galanis was stating that he was using the threat of signing a false declaration in a securities matter as blackmail against Sugarman to obstruct justice and threaten Mr. Sugarman to the extent that Mr. Sugarman was considering providing additional cooperation to the Government to the ongoing case against Galanis or to testify against him relating to his sentencing.  Mr. Galanis' threat to sign a false declaration, but not to have done so, was clearly a further attempt to intimidate Mr. Sugarman to cease his cooperation with the Government in the case against Galanis and with respect to his sentencing.

179.     In January 2020, Galanis pled Guilty (again) to the Indian Tribal Bond Fraud and agreed to the May 2020 sentencing.  This was the matter which Galanis has continually threatened Mr. Sugarman with respect to and retaliated for Mr. Sugarman's cooperation with respect to. Galanis continued his open-ended threat to make false statements to harm Sugarman in the civil action through the settlement of the action in September 2019 which vindicated Sugarman with a full dismissal with prejudice and no financial payments.

180.     The filing of the initial complaint in this lawsuit was made, in part to cause the ongoing threat to cease and to cause the retaliation Mr. Sugarman continued to face for his cooperation in a federal criminal case to cease.

DEFENDANTS USE THE ATTACKS TO PROFIT

181.     Defendants sought to profit repeatedly as part of the Smear Enterprise scheme against Sugarman.  Defendants each sought to, and did, conceal the existence of their common enterprise, their involvement in the common enterprise, and Galanis' involvement from prison in the enterprise through false statements, concealment and deception.  These unfair business practices were designed to delay Mr. Sugarman's and COR Plaintiffs' ability to effectively counter the false allegations and enabled Defendants' to protect their reputations and primary businesses from suffering if the allegations were ultimately shown to be false and the common enterprise was exposed.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Defendants' Trading Profits

182.    Upon information and belief, in the few days immediately prior to the publication of the Initial Blog Post, there was a substantially higher than normal volume of short sale activity in Banc of California stock that included the purchase of an abnormal volume of put option positions on the Banc of California's stock.  This activity was the result of Defendants building a massive short position in anticipation of the issuance of the Initial Blog Post on October 18, 2016 pursuant to the Scheme.  In fact, leading up to October 18, 2016, Banc of California's stock was among the most heavily shorted stocks. The volume of short sales in Banc of California stock spiked in the days prior to the Blog's publication, doubling from 7.0% in mid-September to 13.2% in the days just before the Blog was published.  See previously identified Exhibit G at pgs. 2-3, 10-12 of 23; Exhibit H at pgs. 14-15 of 31.

183.    This type of extraordinarily timed trading is consistent with the trading patterns identified in other improper trading schemes – especially those tied to manipulative trading related to blogs posted on the Seeking Alpha website and related Twitter posts.  On information and belief, it is also consistent with the same modus operandi the same Defendants have used in other similar schemes to manipulate other public company stocks for illicit profits.

184.    Pursuant to the pre-arranged conspiracy among and between the Defendants, Defendants knew the claims in the Initial Blog Post were false and would cause Mr. Sugarman grave reputational harm, and damage to his lawful employment, lawful employment prospects, and livelihood, as to which money damages may be an insufficient remedy.

185.    Publicly available data shows that in early October, put options traders were entering one or two hundred put options in Banc stock per day. This pattern drastically changed in the week immediately prior to the publication of the Initial Blog Post as, upon information and belief, the Defendants began to take large positions in anticipation of attacking and retaliating against Mr. Sugarman.  During that week, the volume of put options trades increased to nearly 2,000 per day. On October 17, 2016, the day before the Blog, the put-call trading volume ratio in Banc stock spiked, with trading volumes in put options reaching 300 times the volume of call options.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

186.    On information and belief, the Defendants were directly responsible for the increase in short sales and put option purchase activity during October 2016 prior to the Smear Enterprise's Initial Blog Post.  See, e.g., previously identified Exhibit G at pgs. 6-9 of 23 which, though redacted to comply with the Protective Order in the Securities Litigation, identify FINRA trading records regarding this increase in short sales and put option activity, and which further identify both the Castalian and Muddy Waters Defendants as being party to the buildup in short sales and put option activities, and Exhibit H at pgs. 10-15 of 31 which, though redacted to comply with the Protective Order in the Securities Litigation, also identify this same increase through FINRA trading records and identify the Matthews Defendants, as well as the Castalian and Muddy Waters Defendants, as being parties to it; also see Exhibit K, a letter from FINRA confirming its production of the underlying trading records in the Securities Litigation, while those records are currently under the protective order in that case, the Defendants are in possession of the records of their trades as reflected in the FINRA records.

187.    Galanis admitted that the Initial Blog included information he knew to be false. He also admitted that the Third Blog referenced him as the source of its information smearing Sugarman.  Therefore Galanis was willing to continue to participate in Smear Enterprise knowing that the Blog Posts were falsely mischaracterizing his activities and relationships with Sugarman and Banc of California for the purpose of retaliating against Mr. Sugarman.

188.    KBW's, through institutional sales trader Kealy and others,  assisted in the coordination of the Defendant's trading in Banc of California stock to facilitate the Scheme and conceal the coordination, identities, collaboration, and racketeering activities of the Defendants. In fact, Kealy has admitted in text messages that he was "short it [Banc of California stock in] a bunch of systemns [sic]" in advance of the Initial Blog Post.  This meant that he had solicited and/or executed trades for a number of his accounts to take or increase short positions in Banc of California stock in anticipation of Aurelius' Blog post.  Further, upon information and belief, Kealy coordinated with traders at other Wall Street brokerage firms including those that executed trades for Muddy Waters and other Defendants. For instance, KBW coordinated trading through Bjorkedal at FIG Partners – an executing broker for Muddy Waters' trades in Banc of California.

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

This coordination by KBW helped Defendants coordinate their trading in Banc as part of their scheme while concealing the conspiracy by using intermediaries to communicate, coordinate, and conspire to further the Smear Enterprise.  On information and belief, KBW profited from its facilitation of the Defendants' unfair practices and illegal enterprise by front running the publication of the Smear Enterprise's Blog by shorting Banc of California stock for its own account, by generating revenues as an executing broker, and in other ways.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including, but not limited to Exhibit H at pgs. 14, 16, 17 of 31 identifying the Kealy, Bjorkedal and KBW trading connections.

189.   On information and belief, Muddy Waters contributed to the blog, was aware when it would be published prior to its publication, and has a history of publishing allegations to support short trades through faux entities that pretend to be independent research entities while concealing Muddy Waters' relationship to them as well as the fact that Muddy Waters was actively trading the stock of the company that was the subject of the research at the time of the publication.  These practices are currently subject to separate litigation relating to fraudulent and other unfair practices by Muddy Waters.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the In Re Banc of California Securities which reflect that the foregoing and that there are documents which independently support such but which are subject to a protective order in the Securities Litigation, including, but not limited to, previously identified Exhibit D at pg. 19 of 23, Exhibit E at pg. 6 of 6,  and Exhibit F at pgs. 1 and 2 of 5.

Defendants Cover Their Shorts

190.   Based on information and belief, Defendants covered their short positions in Banc stock shortly after the Initial Blog Post was published and reaped millions of dollars of profit in

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

the process.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including but not limited to, Exhibit F at pgs. 1 and 2 of 5; Exhibit G at pgs. 10-11 of 23; and Exhibit H) at pgs. 10-14 of 31.

191.    In order to conceal their unfair and anti-competitive trading behavior, Defendants coordinated their trades and the trading of other market participants through Wall Street trading desks and brokers including KBW and FIG Partners.  This concealed the interactions between Defendants, limited direct communications, and obfuscated the coordination of trading to hide the market manipulation of multiple traders timing their trades with one another.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including but not limited to, Exhibit H at pgs. 14, 16, 17 of 31.

192.    Upon information and belief, KBW and FIG Partners are purportedly competitors and do not coordinate trading recommendations for clients with one another, do not front run their client accounts or provide confidential client information to their competitors, or make recommendations to clients contrary to their research analysts opinions.  However, on information and belief, KBW's, through its broker Kealy and others, and FIG through its broker Bjorkedal and others assisted the Defendants' in the coordination of the trading portion of their scheme to distort the good name and reputation of Mr. Sugarman and then to profit therefrom by manipulating Banc of California stock for profit.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

public domain in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including but not limited to, Exhibit H at pgs. 14, 16, 17 of 31.

193.     Upon information and belief, on October 18, 2016 Kealy of KBW and Bjorkedal of FIG Partners texted with each other and had phone calls with each other.  These communications demonstrate the following: they were coordinating their trading and that of their clients as part of a common scheme; they were aware in advance of the imminent publication of the Blog attacking Mr. Sugarman, COR Plaintiffs and Sugarman Entities; they coordinated the timing of their purchase orders to cover their shorts including by holding off on covering initially at the other parties' direction; and there was a scheme common to numerous clients (which were referred to as "systemns" [sic]) to participate in the scheme.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including but not limited to, Exhibit H at pgs. 14, 16, 17 of 31.

194.     On information and belief, Defendants together with Kealy, Bjorkedal, KBW and Fig Partners each initiated short options positions in Banc of California stock on multiple occasions (for themselves or their clients) prior to the publication dates of other Smear Enterprise blog posts making false claims concerning Mr. Sugarman, COR Plaintiffs and/or the Sugarman Entities.  This allegation is based upon a review and analysis of public filings, motions, court arguments, communications between attorneys and other sources which were not marked either Attorneys' Eyes Only or Confidential and are in the public domain in the Securities Litigation which reflect the foregoing and indicate that there are documents which independently support such but which are currently subject to a protective order in the Securities Litigation, including but not limited to, Exhibit H at pgs. 14, 16, 17 of 31.

195.     Matthews, QKM and the other Matthews Defendants used the Rota Fortunae on-

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   line presence's account to amplify the Smear Enterprise's claims, authored an article on

2   seekingalpha.com entitled "Banc: An Earnings Mirage – Price Target to $8 Per Share" that re-

3   cycled many of Smear Enterprises' prior false claims and sought to support the Smear

4   Enterprise's scheme to defraud independent regulators, auditors, and directors of COR Plaintiffs

5   and Banc to initiate expensive and burdensome investigations based on allegations the

6   Defendants knew to be false.

7       Innocent Third-Parties are Defrauded by Defendants Through Non-Securities

8   Transactions

9       196.    In the days immediately prior to the publication of the Initial Blog Post, the

10   Muddy Waters, Castalian and Matthews Defendants collectively purchased thousands of put

11   options and entered into more than 175,000 short sale contracts on Banc stock, as to which they

12   stood to gain $5 million if Banc's stock price decreased.  See previously identified Exhibit G at

13   pg. 2 of 23.

14       197.    In order to cover their positions and take advantage of that profit from the

15   publication of the false and fraudulent information in the Initial and Third Blog Posts, the Muddy

16   Waters, Castalian and Matthews Defendants were required to exit from their short options

17   positions (e.g., put options) by selling them to unwary purchasers before the price of the puts fell

18   after the close of the market and the realization that the statements in the Initial and Third Blog

19   Posts were false and unfounded.  See previously identified Exhibit G at pgs. 2-3, 10-12 of 23;

20   Exhibit H at pgs. 14-15 of 31.

21       198.    Indeed, after the publication of the Initial Blog Post, the value of Bancput options

22   temporarily increased significantly and after the publication of the Third Blog Post the value of

23   Banc's put options also increase significantly for a short period of time.  See previously

24   identified Exhibit F at pg. 2 of 5; Exhibit G at pgs. 2-3; Exhibit H at pgs. 14-15 of 31.

25       199.    The value of Banc's put options fell quickly after their initial increase after the

26   posting of the first Blog. By the close of business on October 19, 2016 the put option lost almost

27   half of the amount there value increased after the publication of the Initial Blog Post.  Exhibit G

28   at pgs. 12 of 23.  A similar rebound occurred after the publication of the Third Blog Post.

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

200.    Taking advantage of the fall in value after the publication of the Initial and Third Blog Posts, the Muddy Waters, Castalian and Matthews Defendants were able to exit from their short positions and put options by selling them to unwary purchasers before the Banc put option contract value fell and thus profited at the expense of those unwary purchasers of these options contracts who had read and believed the false statements in the Initial Blog Post and purchased put option contracts from the Muddy Waters, Castalian and Matthews Defendants.  Indeed, by the end of October 18, 2016, the Muddy Waters, Castalian and Matthews Defendants had materially exited the preponderance of their positions and realized profit from the publication of the false and fraudulent information.  See previously identified Exhibit F at pg. 2 of 5; Exhibit G at pgs. 15 of 23; Exhibit H at pgs. 10-11 of 31.[6]

201.    One such unwary purchaser was Simplex Investments, a Chicago-based proprietary trading firm ("Simplex").  Upon information and belief, Simplex, after reading and relying upon the false and misleading statements in the Initial Blog Post, on October 18, 2016 purchased 2,520 put options in Banc of California stock, and thereafter lost all the money it invested in those put options when the put options expired worthless a few days later.  Upon information and belief, Simplex's purchase of those put options in Banc of California can be directly tied to Defendants Muddy Waters Capital, LLC, MLAF LP, Carson Block, Castalian Partners Value Fund, LP, James Gibson, Gary Robert Matthews, David Q. Matthews, Kalyn Matthews Denno, Adam J Denno, Keith Allen Dilling, and Rosemary Norris Hall selling the put options they had previously purchased prior to the publication of the blog to cover their own short positions to achieve their windfall profits.  The Simplex purchases of put options resulted in losses to Simplex, and the Defendants sale of put options at the same time resulted in gains to Defendants.  Both trades were in the options of Banc and Defendants put option sales were the only natural liquidity being provided to the purchases in the market at the time.  Thus, as result of the false and misleading statements published by Defendants in the Initial Blog Post,

---

[6] To the extent that option trading is reference with relation to Plaintiffs' wire fraud claims such trading is of options which are exempt from registration as securities under the SEC regulations and to the extent that such options are required to be registered as securities then such options are not subjects of Plaintiffs' wire fraud claim.  The profits by Defendants made on all such trades, whether in options or securities, should be considered under Plaintiffs' other causes of action.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    Defendants Muddy Waters Capital, LLC, MLAF LP, Carson Block, Castalian Partners Value

2    Fund, LP, James Gibson, Gary Robert Matthews, David Q. Matthews, Kalyn Matthews Denno,

3    Adam J Denno, Keith Allen Dilling, and Rosemary Norris Hall each personally received money

4    from Simplex through wire fraud.  The basis for statements made upon information and belief in

5    this sub-paragraph are discussions with Simplex.  Also, Mr. Sugarman was aware of Simplex's

6    trading activities from other market participants and through his business activities and

7    ownership of COR Clearing.  For purposes solely of notice to Defendants of additional

8    documents and records relating to the specificity of the allegations being made by Plaintiffs, we

9    direct Defendants to see Exhibit K, a letter from FINRA confirming its production of the

10   underlying trading records in the Securities Litigation, while those records are currently under

11   the protective order in that case, the Defendants are in possession of the records of their trades as

12   reflected in the FINRA records.

13          202.    Likewise, upon information and belief, Simplex, after reading and relying upon

14   the false and misleading statements in the Third Blog Post, on January purchased 24 put options

15   in Banc of California stock, and lost all the money it invested in those put options when the put

16   options expired worthless a few days later.  Simplex's purchase of those put options in Banc of

17   California can be directly tied to Defendants Muddy Waters Capital, LLC, MLAF LP, Carson

18   Block, Castalian Partners Value Fund, LP, James Gibson, Gary Robert Matthews, David Q.

19   Matthews, Kalyn Matthews Denno, Adam J Denno, Keith Allen Dilling, and Rosemary Norris

20   Hall selling the put options they had previously purchased prior to the publication of the blog to

21   cover their own short positions to achieve their windfall profits.  The Simplex purchases of put

22   options resulted in losses to Simplex, and the Defendants sale of put options resulted in gains to

23   Defendants.  Both trades were in the options of Banc and Defendants put option sales were the

24   only liquidity being provided to the purchases in the market at the time.  Thus, as result of the

25   false and misleading statements published by Defendants in the Initial Blog Post, Defendants

26   Muddy Waters Capital, LLC, MLAF LP, Carson Block, Castalian Partners Value Fund, LP,

27   James Gibson, Gary Robert Matthews, David Q. Matthews, Kalyn Matthews Denno, Adam J

28   Denno, Keith Allen Dilling, and Rosemary Norris Hall each personally received money from

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    Simplex through wire fraud.  The basis for statements made upon information and belief in this

2    sub-paragraph are discussions with Simplex.  Also, Mr. Sugarman was aware of Simplex's

3    trading activities from other market participants and through his business activities and

4    ownership of COR Clearing.  For purposes solely of notice to Defendants of additional

5    documents and records relating to the specificity of the allegations being made by Plaintiffs, we

6    direct Defendants to see Exhibit K, a letter from FINRA confirming its production of the

7    underlying trading records in the Securities Litigation, while those records are currently under

8    the protective order in that case, the Defendants are in possession of the records of their trades as

9    reflected in the FINRA records.

10         203.    Another such unwary purchaser was Jane Street Capital, a global proprietary

11   trading firm with offices in London and New York ("Jane Street").  Upon information and belief,

12   Jane Street, after reading and relying upon the false and misleading statements in the Initial Blog

13   Post, on October 18, 2016 purchased 1,655 put options in Banc of California stock, and

14   thereafter lost all the money it invested in those put options when the put options expired

15   worthless a few days later.  Upon information and belief, Jane Street's purchase of those put

16   options in Banc of California can be directly tied to Defendants Muddy Waters Capital, LLC,

17   MLAF LP, Carson Block, Castalian Partners Value Fund, LP, James Gibson, Gary Robert

18   Matthews, David Q. Matthews, Kalyn Matthews Denno, Adam J Denno, Keith Allen Dilling,

19   and Rosemary Norris Hall selling the put options they had previously purchased prior to the

20   publication of the blog to cover their own short positions to achieve their windfall profits.  The

21   Jane Street purchases of put options resulted in losses to Jane Street, and the Defendants sale of

22   put options resulted in gains to Defendants.  Both trades were in the options of Banc and

23   Defendants put option sales were the only liquidity being provided to the purchases in the market

24   at the time.  Thus, as result of the false and misleading statements published by Defendants in the

25   Initial Blog Post, Defendants Muddy Waters Capital, LLC, MLAF LP, Carson Block, Castalian

26   Partners Value Fund, LP, James Gibson, Gary Robert Matthews, David Q. Matthews, Kalyn

27   Matthews Denno, Adam J Denno, Keith Allen Dilling, and Rosemary Norris Hall each

28   personally received money from Jane Street through wire fraud.  The basis for statements made

74

**FIRST AMENDED COMPLAINT**

upon information and belief in this sub-paragraph is based upon Mr. Sugarman's awareness of Jane Street's trading activities from other market participants and through his business activities and ownership of COR Clearing.  For purposes solely of notice to Defendants of additional documents and records relating to the specificity of the allegations being made by Plaintiffs, we direct Defendants to Exhibit K, a letter from FINRA confirming its production of the underlying trading records in the Securities Litigation, while those records are currently under the protective order in that case, the Defendants are in possession of the records of their trades as reflected in the FINRA records.

204.    On information and belief, Andrew Left purchased put options in Banc of California after the Initial Blog Post was published due to information in the Blog which he believed was published in good faith and unaware that the market trading was already causing the stock price to be artificially low.  On information and belief, Mr. Left purchased 400 put options representing approximately $400,000 of Banc stock without the knowledge that Defendants knew their allegations were false and misleading. On information and belief, Mr. Left lost all the money he invested in those put options when those put options expired worthless a few days later.  Upon information and belief, Mr. Left's purchase of those put options in Banc of California can be directly tied to Defendants Muddy Waters Capital, LLC, MLAF LP, Carson Block, Castalian Partners Value Fund, LP, James Gibson, Gary Robert Matthews, David Q. Matthews, Kalyn Matthews Denno, Adam J Denno, Keith Allen Dilling, and Rosemary Norris Hall selling the put options they had previously purchased prior to the publication of the blog to cover their own short positions to achieve their windfall profits.  Mr. Left's purchases of put options resulted in losses to Jane Street, and the Defendants sale of put options resulted in gains to Defendants.  Both trades were in the options of Banc and Defendants put option sales were the only liquidity being provided to the purchases in the market at the time.  Thus, as result of the false and misleading statements published by Defendants in the Initial Blog Post, Defendants Muddy Waters Capital, LLC, MLAF LP, Carson Block, Castalian Partners Value Fund, LP, James Gibson, Gary Robert Matthews, David Q. Matthews, Kalyn Matthews Denno, Adam J Denno, Keith Allen Dilling, and Rosemary Norris Hall each personally received money from Mr.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Left, who is considered one of the world's premiere experts in identifying and uncovering fraud at public companies, through wire fraud.  Mr. Sugarman was aware of Mr. Left's trading activities from other market participants and through his business activities and ownership of COR Clearing.  For purposes solely of notice to Defendants of additional documents and records relating to the specificity of the allegations being made by Plaintiffs, we direct Defendants to Exhibit K, a letter from FINRA confirming its production of the underlying trading records in the Securities Litigation, while those records are currently under the protective order in that case, the Defendants are in possession of the records of their trades as reflected in the FINRA records.

## ROTA FORTUNAE WAS USED TO DEFRAUD SEEKING ALPHA

205.    Seeking Alpha has a program for paying certain of its contributors.  Authors are paid based on a formula that factors in the number of views a particular article has; the general type of content the article is expressing; and, a reader score (hereinafter the "Seeking Alpha Payments" – attached hereto as Exhibit T is the printout from the Seeking Alpha Website detailing the formula for such payments).

206.    Seeking Alpha posts are subject to its terms of use which paid contributors  are required, *inter alia*: to follow prior to submitting articles for posting on the website, specifically, a paid contributor must agree:

a.    "not write about a stock with the intention to boost or reduce the stock's price and sell (or buy) the stock into the resulting strength or weakness";

b.    to disclose within three days of the publication of a submission any intent by the poster to sell or buy a stock that they are writing about;

c.    to follow Seeking Alpha's "conflict of interest" rules, including, "disclos[ing] any material relationships with companies whose stocks [the poster] write about in a User Submission or parties that stand to gain in any way from the viewpoint [the poster is] outlining";

d.    to not "[p]ost or transmit any Content that [the poster] either know[s] or should know is false, deceptive or misleading, or misrepresent or deceive others as to the source, accuracy, integrity or completeness of any comment [the poster] post[s]";

**FIRST AMENDED COMPLAINT**

e.   to not "[p]ost or transmit any Content that is unlawful, harmful or injurious to others, contains software viruses, or other harmful computer code, files or programs, threatening, abusive, offensive, harassing, derisive, defamatory, vulgar, obscene, libelous, hatefully, racially, ethnically or otherwise tortious or objectionable"; and,

f.   to not by use of an alias misrepresent their affiliation with or connection to any person or entity (hereinafter the "Terms of Use" a copy of a printout of the terms of use are attached hereto s Exhibit U).

207.   Matthews, QKM and the other Matthews Defendants were able to use their various posts through the Rota Fortunae on-line presence's account to be offered the opportunity to submit articles as a paid contributor and violate these Terms of Use in order to get published.

208.   On February 1, 2017, Matthews, QKM and the Matthews Defendants through the Rota Fortunae on-line presence's account submitted their first article for inclusion as a paid contributor.  The article which Matthews, QKM and the other Matthews Defendants submitted was titled "Banc of California: an Earnings Mirage – Price Target $8 Per Share".  They were paid for this exclusive article by Seeking Alpha.  The article, displaying on the website as exclusive, smearing Sugarman and Banc of California, can be seen at (https://seekingalpha.com/article/4041602-banc-of-california-earnings-mirage-price-target-8-per-share).   Seeking Alpha only pays for articles which it identifies as "exclusive".  The article, which was about Banc and Mr. Sugarman was untrue in that it smeared him with the same false, repackaged narrative from Galanis and supported with false and fraudulent documents from Galanis.

209.   Matthews submitted drafts of the article from Texas to New York through the Seeking Alpha website by use of interstate wires to Seeking Alpha in New York.

210.   Matthews knowingly made false and fraudulent representations to Seeking Alpha as part of its submission to Seeking Alpha to get its article published as a paid submission.  The knowingly false statements included false representations relating to Matthew's compliance with Seeking Alpha's Terms of Use and the rules involving submissions and qualification of paid

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   content.  Matthews was required, in order to get the article posted on Seeking Alpha as a paid

2   contributor, to submit the article and agree to the Terms of Use – both over interstate wires.

3        211.    Upon information and belief, Seeking Alpha received and relied upon Matthews,

4   QKM and the other Matthews Defendants', through the Rota Fortunae on-line presence's

5   account, agreement to the Terms of Service in deciding to post the article on Seeking Alpha as a

6   paid contributor article.  The basis for this information and belief is that Seeking Alpha published

7   the article and identified it as exclusive content.  It was also submitted by Matthews, QKM and

8   the Matthews Defendants through the Rota Fortunae on-line presence's account as a part of and

9   in furtherance of the goals of the Smear Enterprise, and its drafting, content and submission were

10  approved by the other members of the Enterprise prior to it being submitted.

11       212.    The submission knowingly violated the Terms of Use in several ways:  (1) it was

12  written specifically with the intention of reducing Banc's stock price as part of the scheme to

13  attack Mr. Sugarman; (2) it failed to disclose within three days of publication that Rota Fortunae

14  was intending to sell Banc's stock; (3) it failed to disclose the material relationships with the

15  other members of the Smear Enterprise, particularly Galanis, who was the source of the false

16  documents and information; (4) it contained content that the Matthews Defendants knew was

17  false  either knew was false, deceptive or misleading, and it misrepresented and deceived others

18  as to the source, accuracy, integrity or completeness of the content of the article, particularly that

19  it was based on information and documents provided by convicted fraudster Galanis; (5) it was

20  intended to and did as a part of the Smear Enterprise's scheme contain unlawful, harmful or

21  injurious material to Mr. Sugarman, and was intended to be threatening, abusive, offensive,

22  harassing; and (6) the Rota Fortunae alias was meant to misrepresent the Matthews Defendants

23  affiliation with or connection to the other members of the Smear Enterprise.

24       213.    Upon information and belief, Seeking Alpha was deceived by Matthews, QKM

25  and the other Matthews Defendants agreeing through Rota Fortunae on-line presence's accounts

26  to the Terms of Use.  And in clear reliance thereon, Seeking Alpha posted the article as from a

27  paid contributor and Seeking Alpha paid money to the Matthews Defendants and the Matthews

28  Defendants obtained money from Seeking Alpha in the form of Seeking Alpha Payments as a

1   result of their wire fraud.  On information and belief, other members of the Smear Enterprise

2   were able to commit the same wire fraud against Seeking Alpha and also fraudulently obtain

3   money from Seeking Alpha as a result.

4   ON-GOING SCHEME AGAINST PLAINTIFFS – TO COVER THEIR TRACKS

5       214.    As set forth above, Defendants, individually and collectively, have sought to

6   conceal their affiliations with one another (including Galanis) and their illegal acts by using,

7   among other things, proxies, pseudonyms, anonymity, deception, concealment, and other unfair

8   business practices.

9       215.    Defendants knew concealment of their relationship with Galanis, as well as their

10  use of pseudonyms, anonymity, and undisclosed or inadequately disclosed trading activity

11  prevented market participants and others from properly assessing the credibility of their claims –

12  which they knew to be false – and the authenticity of several of their documents – which they

13  knew to be forged or fraudulently manipulated.

14          a.      As set forth above, certain Defendants, upon information and belief,

15  joined in the enterprise with their co-conspirators due to personal animus against Mr. Sugarman

16  and non-monetary goals such as retaliation.  For instance, on information and belief, Galanis

17  sought to retaliate for Sugarman's interview with the government and his cooperation with

18  federal law enforcement and government investigations.  This allegation is based upon a review

19  of the non-confidential portions of the deposition of Jason Galanis in the Securities Ligation

20  attached hereto as Exhibit J at pgs. 236-238.

21      216.    On January 23, 2017, Banc of California announced that its internal investigation

22  had not found any evidence of any violations of law by Sugarman and that Galanis had not had

23  any "direct or indirect control or undue influence" over Banc of California or Sugarman.

24      217.    Mr. Sugarman's decision to separate from the bank did not bring an end to the

25  attacks on him by the Defendants who continued to publish and circulate scurrilous rumors,

26  innuendo, and untruths about him in order to damage his reputation further.

27      218.    On February 9, 2017, Banc of California reported that its investigation was

28  completed and that the investigation indeed found that there were no violations of law and that

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Galanis had no "indirect or direct control or undue influence" over Banc of California.  Banc of California further reported that the "inquiry did not find that any loan, related party transaction, or any other circumstance had impaired the independence of any director."  Mr. Sugarman was a director during the period relevant to the inquiry.

219.     In 2019, Banc of California announced that Bergeson LP conducted another independent investigation on behalf of an Ad Hoc Committee of the Board of Directors of Banc of California that was comprised of Directors that were not on the Board during Sugarman's tenure at the Bank and found no illegal acts by Sugarman and that Aurelius' claims that Sugarman or Banc of California were controlled by Galanis were false.

220.     On information and belief, as recently as 2019, Defendants continue retaliate against Mr. Sugarman and to smear him and make false allegations that he was partners with Galanis, that Galanis controlled Mr. Sugarman, the COR Plaintiffs, and Sugarman Entities, and that Mr. Sugarman committed illegal acts.

221.     Defendants' scheme is thus ongoing.

222.     The Defendants, in pursuing this scheme, conspired to violate federal and state securities and other laws and did violate such laws.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### UNFAIR COMPETITION
### (CA Civil Code § 17200 – Against All Defendants)

223.     The above paragraphs are realleged as if fully set forth herein.

224.     By the acts described above, the Defendants have engaged in unlawful, unfair or fraudulent business acts and/or practices in violation of California Civil Code §17200, et seq.

225.     Defendants have maliciously and malevolently disparaged Sugarman and COR Plaintiffs in the Initial Blog Post, the Second Blog Post, the publication of the website, and in the Third Blog Post all by making false and untrue statements alleging that Sugarman had engaged in unlawful behavior in the management of Banc of California, securities violations, crime and other improper conduct.

226.     Defendants' unfair business practices were related to Defendants' attacks on Mr.

**FIRST AMENDED COMPLAINT**
docs-100162714.1

Sugarman's reputation and on the COR Plaintiffs' reputations and were also tangentially related to the scheme whereby Defendants sought to use those attacks to profit with regard to Banc's stock.

227.    Defendants Gibson, Castalian, Muddy, Block, Galanis, Mathews Parties, and Does are and were competitors with Sugarman and COR Capital who make investments on behalf of private investors and investment funds.

228.    Defendants Castalian, Muddy, and Does are competitors with Sugarman and COR Advisors who manage private investments in the financial services industry.

229.    As a result of Defendants' false and misleading disparagements in furtherance of their anti-competitive scheme including the relationships among the Defendants and Galanis' partnership thereto, Defendants have maliciously and malevolently interfered with Sugarman's business relationships – including but not limited to his relationship with COR Entities including COR Securities, COR Clearing, and Banc of California – and have impugned and damaged his standing in the investment, private equity, legal, civic, and banking community and his reputation in general.

230.    As a result of Defendants' false and misleading disparagements in furtherance of their anti-competitive scheme, the concealment of Defendants identities and the participation of Galanis in Defendants' scheme, and Defendants deceptive efforts to conceal the coordination of the Smear Enterprise with each individual Defendant and to conceal coordinated actions to cause them to appear independent of one another, Sugarman and COR Plaintiffs have been damaged. For instance, Mr. Sugarman has been unable to compete with the Defendants in the financial services industry and to pursue other profitable partnerships with banks and other financial services organizations.  COR Plaintiffs have seen significant declines in annual profitability, revenues, and business prospects.  Defendants have also damaged Plaintiffs relationships and reputation in the broader investment, financial services, banking and civic community as a whole, including with non-profit and civic organizations and other similar organizations. Defendants caused this result by maliciously and malevolently attacking and damaging Sugarman's reputation through unfair and deceptive practices.

**FIRST AMENDED COMPLAINT**

docs-100162714.1

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

231.    As a result of Defendants' disparagements and attacks in furtherance of their anti-competitive scheme, Sugarman has been damaged in fact as contemplated by California Civil Code § 17200, et seq., in an amount to be proved at trial but believed to be in excess of $65 million.

232.    As a result of the Defendants' disparagements and attacks in furtherance of their anti-competitive scheme, Sugarman has suffered irreparable harm the nature of which would entitle him to an award of equitable relief as contemplated by California Civil Code § 17200, et seq.

233.    Based upon the malicious nature of Defendants' disparagements in furtherance of their anti-competitive scheme, Sugarman is entitled to an award of punitive damages pursuant to California Civil Code §3294.

234.    Sugarman is also entitled to an award of his attorney's fees pursuant to California Code of Civil Procedure 1021.5.

**SECOND CAUSE OF ACTION:**
**CONSPIRACY TO ENGAGE IN UNFAIR COMPETITION**
**(Against All Defendants)**

235.    The above paragraphs are realleged as if fully set forth herein.

236.    Defendants formed the conspiracy as alleged above by no later than October 2016 when they came together as the Smear Enterprise and jointly published the Initial Blog Post as the first public action of the conspiracy.

237.    Defendants all jointly operated the conspiracy together as alleged above by creating and publishing false and misleading information about Mr. Sugarman and by jointly conspiring to and acting to harm Mr. Sugarman's reputation and his employment and Director roles with Banc of California, COR Securities, and future employers, all acts of unfair competition.

238.    Defendant engaged in acts of unfair competition in the State of California and intended to impact California.

239.    Defendants either all individually committed wrongful acts of unfair competition as against Mr. Sugarman or ratified the acts taken by their co-conspirators against Mr. Sugarman.

**FIRST AMENDED COMPLAINT**

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

240.     Every Defendant herein acted as agent for every other defendant and all actions taken by any one defendant are attributable to and for the benefit of the conspiracy as a whole.

241.     As a result, Mr. Sugarman suffered damages in an amount to be proven at trial but believed to be not less than $65 million.

242.     Based upon the malicious nature of Defendants' actions in connection with their conspiracy in furtherance of their anti-competitive scheme, Mr. Sugarman is entitled to an award of punitive damages pursuant to California Civil Code §3294.

243.     Sugarman is also entitled to an award of his attorney's fees pursuant to California Code of Civil Procedure 1021.5.

### THIRD CAUSE OF ACTION:
### DEFAMATION
### (Against All Defendants)

244.     The above paragraphs are realleged as fully set forth herein.

245.     On October 24, 2018, the Defendants caused the Smear Enterprise to publish to third parties via Twitter a statement that COR Clearing was "Sugarman's business that was started in partnership with the now-incarcerated Jason Galanis".  As previously alleged, Defendant Gibson and Castalian were, were upon information and belief, the publishers and primary authors of this tweet, and all of the other tweets sent out through the Aurelius on-line presence's account, and such tweets were made by Gibson and Castalian on behalf of, in coordination with and with the approval of the other members of the Smear Enterprise.

246.     The foregoing statement is false and Defendants had no privilege to justify its publication.

247.     The foregoing statement is *per se* defamatory in that it implies that Sugarman is both involved in business dealings with a criminal and is somehow complicit in those criminal activities himself.

248.     Defendants knew that the statement was false and published it anyway or published it with reckless disregard of its truth or falsity.

249.     As a result of Defendants' publication of the defamatory statement through the Aurelius Twitter feed, Sugarman has been damaged in business and in his personal reputation in

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   an amount to be proven at trial.

2   **FOURTH CAUSE OF ACTION:**
    **VIOLATIONS OF THE RACKETEER INFLUENCED**
3   **CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962(c)**
    **(Against All Defendants)**
4

5   250.   The above paragraphs at paragraphs 1 through _____ are all realleged as if fully set

6   forth herein.

7   251.   The Defendants have, as alleged herein, each individually engaged in the conduct

8   of an enterprise through a pattern of two or more acts of racketeering activity.

9   252.   At all times relevant, Defendants, and each of them, were "persons" within the

10  meaning of 18 U.S.C. Sec. 1961(3).

11  Enterprise

12  253.   At all times relevant, the Defendants, and each of them, associated in fact with

13  each other and with others known and unknown so as to constitute an association in fact

14  enterprise in the form of the Smear Enterprise within the meaning of 18 U.S.C. Sec. 1961(4).  At

15  all times relevant, the enterprise was engaged in and its activities affected interstate commerce.

16  254.   This association-in-fact enterprise had a structure and organization that was

17  distinct from and existed apart from its predicate acts and from its participants/defendants.  The

18  association-in-fact enterprise had relationships among those associated with the enterprise and

19  sufficient longevity, over several years, to permit those associated with the enterprise to pursue

20  the enterprise's purpose.

21  255.   Each defendant is distinct and separate from the association-in-fact enterprise of

22  which each is a component part and participant.  The Smear Enterprise was operated as a

23  separate entity apart from the individual defendants including the Defendants with its own brand

24  identity on Seeking Alpha and Twitter and was designed to strategically conceal the participation

25  of each individual defendant, including but not limited to Galanis, from those it intended to

26  defraud or harm.

27  256.   Each defendant participated, directly or indirectly, in the management and affairs

28  of the association-in-fact enterprise through a pattern of racketeering activities.  The role of each

84

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   Defendant was similar – it was to help destroy Mr. Sugarman's business as retaliation for his

2   providing truthful information to the government in its investigation of Defendant Galanis, and

3   to attempt to threaten, intimidate or corruptly persuade Mr. Sugarman from providing further

4   testimony regarding Galanis, and to do so by defrauding others (including the Sugarman

5   Relationships) into taking actions that harmed Mr. Sugarman, COR Plaintiffs and Sugarman

6   Entities, including among other things by conducting investigations, due diligence, termination

7   of business relationships, and refusing to enter into commercial transactions.  The Smear

8   Enterprise sought to defraud the Sugarman Relationships by creating false and misleading

9   articles, blog posts, and tweets from multiple seemingly independent sources that all falsely

10  alleged criminal activity or wrongdoing on the part of Mr. Sugarman so that, in part, the

11  Defendants believed the allegations were credible.  In addition to harming Mr. Sugarman and

12  COR Plaintiffs, Defendants also sought to increase the perceived credibility of the claims about

13  Plaintiffs, obtain payment from Seeking Alpha on false pretenses, and artificially depress the

14  market price of the stock to profit from their short sales in order to increase the perceived

15  credibility of the claims about Plaintiffs and attempt to force Mr. Sugarman from the Banc of

16  California.  Galanis and the other Defendants participated in the management and operations of

17  the Smear Enterprise by providing documents, information, suggestions, and coordinating with

18  co-conspirators.  Upon information and belief, the website created in furtherance of the scheme

19  was primarily created through documents and information that were provided by Galanis,

20  directly and indirectly, financed by his use of the profits from his other frauds, to the other

21  Defendants as well as public source documents collected by other Defendants and their proxies.

22  The other Defendants were aware of how Galanis was financing this document collection and hid

23  the source when they made their posts, tweets and other communications.  All defendants played

24  a part in the racketeering activity.

25          257.    Defendants associated with each other for the common purposes of engaging in

26  unfair business practices against Plaintiffs, and similar attacks against Plaintiff since July 2018 –

27  including specifically in October 2018 –  to retaliate against Mr. Sugarman for his cooperation

28  with the government in their case against Galanis, and to attempt to intimidate him from

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   providing further testimony and specifically targeting Mr. Sugarman to destroy and impair any

2   future business prospects he may have in order to deter him from seeking vindication and

3   exposing the Defendants' schemes.

4       258.    Each Defendant participated in, contributed to, facilitated the publication of

5   and/or disseminated and validated the false and misleading materials, Blog posts, Tweets, and

6   emails, or such activities were undertaken by certain defendants for the benefit of the entire

7   enterprise as agents for the other members of the conspiracy.

8       259.    The actions taken by the Defendants through the association-in-fact enterprise

9   were racketeering predicate acts, as well as aiding and abetting the commission of these

10  predicate acts, including but not limited to violations of 18 U.S.C. Section 1512, 18 U.S.C.

11  Section 1513,  18 U.S.C. 1956, wire and mail fraud as more fully alleged above but including,

12  and not limited to, the recruiting of others, the publication of the Initial Blog Post, the Second

13  Blog Post, and the Third Blog Post, the creation of the website, and the publication of various

14  Tweets, comments, articles and other social media comments,  direct messaging, telephone calls

15  and communications including with Sugarman Relationships, journalists, market participants,

16  lawyers, and others, and using the proceeds of Galanis' other frauds to pay for the gathering and

17  dissemination of the false documents and information and the hiding of that fact.

18      260.    A further common purpose of the enterprise was to engage in continuous

19  concealment of the enterprise's activities and each defendant, upon information and belief,

20  participated in the conduct of this aspect of the enterprise, as alleged above.  Such actions are

21  wire and mail fraud and constitute racketeering predicate acts, as well as aiding and abetting the

22  commission of these predicate acts.  The acts taken by the enterprise to attempt to intimidate,

23  threaten and corruptly persuade Mr. Sugarman not to offer further testimony were also predicate

24  acts taken in violation of 18 U.S.C. 1512 and 1513, defined predicate acts at 18 U.S.C. Section

25  1961.  The use of the proceeds of funds from Galanis' prior frauds to help finance the acts of the

26  enterprise and the other members of the enterprise hiding the source such funds were also

27  predicate acts taken in violation of 18 U.S.C. 1956, a defined predicate act at 18 U.S.C. Section

28  1961.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    The Racketeering Violations

2        261.   From on or about October 2016 and continuing through present, the Defendants

3    each of whom are persons associated with the enterprise, did knowingly and unlawfully conduct

4    or participate in the affairs of the enterprise through a pattern of racketeering activity.

5        262.   Plaintiffs allege that the Defendants engaged in the illegal activities with the

6    intent to commit fraud, engage in anti-competitive activities, and to retaliate against Mr.

7    Sugarman who was a witness during the government investigation of Galanis within the meaning

8    of 18 U.S.C. Section 1513 by attacking Mr. Sugarman to affect his lawful employment and

9    livelihood and within the meaning of 18 USC Section 1512 by engaging in attempted witness

10   intimidation.  The Defendants also worked with others to execute their scheme by concealing the

11   material facts surrounding it, including by engaging in money laundering in violation of 18 USC

12   Section 1956.

13       263.   Plaintiffs allege that these activities constitute conduct committed by and through

14   wire and mail fraud, acts indictable as "racketeering activity".

15       264.   Plaintiffs allege that these activities set forth above also constitute a separate act

16   of racketeering activity under 18 U.S.C. Section 1513 by means of retaliation as a means to

17   obstruct justice, intimidate Mr. Sugarman as a witness, and to retaliate against him for providing

18   truthful information to law enforcement officers regarding Galanis' commission of various

19   frauds constituting federal offences.  The retaliation, accomplished through damaging Mr.

20   Sugarman's lawful employment and livelihood, was intended to punish Mr. Sugarman for his

21   participation and cooperation with law enforcement by damaging Mr. Sugarman and dissuade

22   him from any other further participation in the government's investigations of, prosecutions of,

23   or continued incarceration of Galanis.  This activity is a RICO predicate act and was committed

24   over more than two different occasions and by different means all to accomplish the same goal,

25   as set forth above, commencing in not later than October 2016 and continuing through at least

26   2019 when Galanis last communicated with the SEC and Department of Justice and appears to

27   be ongoing to this day.

28       265.   Defendants' policies, practices, and acts described above constitute wire fraud

**FIRST AMENDED COMPLAINT**

under 18 U.S.C. § 1343, in that they constitute or are in furtherance of a scheme or artifice to defraud or obtain money by means of false or fraudulent pretenses, furthered or executed through Defendants' transmission of writings, signals, or data by means of wire and constitute violations of 18 U.S.C. Section 1513.

266.   Defendants intended, by their participation in the commission of the predicate act herein, to influence the conduct of Mr. Sugarman or others and to prevent or interfere with Mr. Sugarman's participation in an official proceeding with respect to Galanis: testimony in connection with trial with respect to the Tribal Bond Fraud claims and sentencing with respect to both the Tribal Bond Fraud. Mr. Sugarman was to be a witness at both official proceedings in violation of 18 U.S.C 1512.

267.   Defendants knowingly attempted to use intimidation, threaten, or corruptly persuade Mr. Sugarman and others, all with the intent to influence, delay or prevent the testimony of Mr. Sugarman in an official proceeding connected to Galanis' criminal trials in violation of 18 U.S.C. 1512.

268.   This interference constituted a RICO predicate act pursuant to statute. It is an offence to engage in a financial transaction to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity and such money laundering claims are RICO predicate acts under the RICO statute. Here, Galanis, by using the intermediary of his attorney, acted to conceal or disguise the nature, source, ownership, or who controlled the proceeds of the funds he obtained from his illegal activity.

269.   Galanis, in execution of the foregoing, misrepresented both the source of the funds (claiming that they were liquidation of his personal funds when in fact they were funds obtained from his fraudulent activity in the Tribal Bonds and Gerova Frauds) and the purpose of the funds (which he claimed was to be used to fund his criminal defense). This was false and knowingly false. In fact, the funds were transferred through the means of an intermediary to be used to fund the ability for Galanis to surreptitiously communicate with the RICO enterprise as set forth above.

270.   The recipients of the funds, the other members of the RICO enterprise, knew that

**FIRST AMENDED COMPLAINT**

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

the source of the funds was being fraudulently concealed and that the purpose was both to hide

the money and to fund the activities of the RICO enterprise and provide support for it.  They also

acted to fraudulently to conceal the source of those funds in their posts, tweets and other

communications in furtherance of the enterprise's conspiracy.

271.    The RICO enterprise members assisted in concealing the nature, ownership, and

source of the funds in order to hide the funds from the victims of the fraud and to permit the

RICO enterprise to continue in its activities.

272.    As such, the defendants, and all of them, committed money laundering in

violation of 18 USC Section 1956 and thus have committed a RICO predicate act.

Pattern of Racketeering Activities

273.    The course of conduct engaged in by the Defendants is a pattern of racketeering

activity because of the continuity and relatedness of such activities and because Plaintiffs allege

that the Defendants engaged in multiple illegal activities, more than two within ten years of each

other, qualifying as RICO predicates over multiple occasions that appear to still be continuing or

poses a threat of continued activity and thus the scheme is "open-ended".  It is likewise open-

ended because it is still ongoing as to the retaliation predicate acts under 18 U.S.C. 1513 based

upon the prior conduct of the Smear Enterprise such retaliation will continue into the future.

Likewise, the attempts at witness tampering are likely to continue, given the pattern of Galanis

and the other members of the Smear Enterprise will likely continue until at least May 12, 2020

when Galanis is scheduled to be sentenced for the Tribal Bond Fraud, as to which Mr. Sugarman

is a potential witness.

274.     The enterprise is similarly "closed-ended" in other respects as alleged above and

so is both "open-ended" and "closed-ended" simultaneously.

275.    Plaintiffs can show the relatedness prong because the predicate acts have the

similar purposes, results, participants, or methods of commission or are related to the affairs of

the enterprise.  All predicate acts had the same purpose of retaliating against Mr. Sugarman,

misrepresenting the relationships between Galanis and Mr. Sugarman and the COR Plaintiffs,

and Galanis and Banc of California, to defraud and to destroy, harm, or impair Mr. Sugarman's

**FIRST AMENDED COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   business and business prospects, the businesses of COR Capital, COR Advisors, COR Securities,

2   COR Clearing, Banc of California, and Mr. Sugarman's financial and employment prospects and

3   to retaliate against him in violation of 18 U.S.C. Section 1513, the intimidate, threaten or

4   corruptly persuade him from providing further testimony in violation of 18 U.S.C. Section 1512,

5   and to hide and conceal the use of the proceeds from Galanis' prior frauds to finance these

6   attacks in violation of 18 U.S.C. 1956.

7        276.    Plaintiffs have set forth claims for wire fraud – the publication of the Initial, the

8   Second, the Third Blog Posts, the electronic publication of the website, and the publication of

9   various tweets and the acts take in covering up the scheme, the coordination of false regulatory

10  filings and provision of false information and reports to journalists in order to harass and retaliate

11  against Mr. Sugarman, the harassment through hiring individuals to track him and his family

12  members, as well as other misconduct, as alleged above and herein.

13       277.    These acts of publication of the Initial, the Second, the Third Blog Posts, the

14  electronic publication of the website, and the publication of various tweets and the acts take in

15  covering up the scheme, the coordination of false regulatory filings and provision of false

16  information and reports to journalists in order to harass and retaliate against Mr. Sugarman, and

17  to threaten him away from further testimony, as well as the harassment through hiring

18  individuals to track him and his family members, as well as other misconduct, as alleged above

19  and herein, and the financing of part of it with the hidden proceeds of Galanis' prior fraud are all

20  also predicate acts that are multiple and repeated consistent violations of the prohibition against

21  witness retaliation set forth in 18 U.S.C. Section 1513, witness tampering set forth in 18 U.S.C.

22  Section 1512 and the concealment of the use of the proceeds of a fraud to finance these actions

23  and codified as a RICO predicate act.

24       278.    These acts were taken in furtherance of a scheme to defraud and to retaliate

25  against Mr. Sugarman for providing truthful information to law enforcement relating to Galanis'

26  commission of federal offenses; to threaten, intimidate and corruptly persuade Mr. Sugarman

27  from giving further testimony against Galanis; and to hide the use the ill-gotten proceeds of

28  Galanis' prior frauds to partially fund these acts.

279.    These acts were taken with the specific intent to defraud and to retaliate, to threaten and to hide the use Galanis' ill-gotten funds.

280.    These acts were undertaken by use of the interstate wires in furtherance of the scheme.

281.    These acts constitute ongoing and continuing activity so as to satisfy the requirement, in the alternative, that the RICO activity be deemed simultaneously open-ended and closed-ended.

The Predicate Acts constituting Wire Fraud

282.    Defendants' use of the United States mail, wires, telephone, or internet, for purposes of effectuating the scheme to defraud as set forth above, include, without limitation, the following: the use of the federal wires system, email, and internet to post and publish the Blog Posts (as set forth above), the Tweets ( as set forth above), the publication of the website (as set forth above), the whistleblower complaints (transmitted by email and/or phone), use of the internet to exchange and coordinate manipulative trading activities, false publications (such as the transmission of the articles to Seeking Alpha in fraudulent violation of the Seeking Alpha Terms of Use), and other racketeering activities; use of text messages and direct messages between and among the Defendants, traders, market participants, and journalists; and emails through, between, and among the Defendants concerning coordinated trading activities and concerning the drafts of the blog posts and the other published materials.

283.    Further predicate acts include interstate phone calls with journalists for interviews such as phone calls with the Los Angeles Times, and the use of the following documents in furtherance of its racketeering activities: (i) the use of unauthorized and deceptive use of forgeries including documents created by Galanis that falsely purported to reflect Mr. Sugarman's signature, (ii) documents reflecting the unauthorized and deceptive use of Mr. Sugarman's government issued identification that Galanis obtained without Mr. Sugarman's knowledge or consent, (iii) documents created using Plaintiff's confidential business documents which Galanis obtained through deception and fraud via electronic communications, and (iv) the use of fraudulent business documents created by Galanis that purported to represent business

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

FIRST AMENDED COMPLAINT

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

documents of COR Plaintiffs but in fact were fraudulent and unauthorized documents created and used by Galanis to commit fraud.

284.    As a result of the use of the federal wires system, email, and internet to post and publish the Blog Posts and Tweets (as set forth above), the Defendants used the false and misleading statements therein to personally profit by obtaining money from misled third parties who read the false and misleading statements therein and were deceived, including as set forth at greater length above:  Simplex; Jane Street; Andrew Left; and, others who traded in options excluded from securities registrations.

285.    As an additional and alternative ground, members of the Smear Enterprise engaged in further acts of wire fraud by using their false statements to deceive Seeking Alpha into paying them to monetize their writings and opinions.

286.    The false statements posted as part of the Smear Enterprise's scheme on Seeking Alpha through the Rota Fortunae account were in violation of Seeking Alpha's Terms of Use in that they were false and injurious, they failed to disclose, and even hid, participation of Galanis, they were intentionally posted to lower the value of Banc's shares for the Smear Enterprises' own secret profit, plot with Galanis to retaliate against Plaintiffs and the other reasons set forth a length above.  Seeking Alpha unknowingly relied upon the false representations concerning their adherence to the requirements of the Terms of Use and paid the Smear Enterprise based upon them.  Thus, as a result of its wire fraud, the Smear Enterprise has been able to obtain money from Seeking Alpha.

287.    The Defendants profited from the fraud by receiving payments from Seeking Alpha due to their concealment of their violation of the Terms of Use.

288.    Defendants used the Aurelius and Rota Fortunae on-line presence's accounts over the wires to deceive Seeking Alpha and thereby to obtain money from it.

Damages and Standing

289.    Defendants have violated 18 U.S.C. § 1962(c) in that they are associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, and have conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs

1    through a pattern of racketeering activity.  Each violation directly and proximately resulted in

2    Plaintiffs' losses to his business and direct economic injury including to his business and

3    property, his lawful employment and livelihood, and his future lawful employment prospects and

4    livelihood.

5        290.    As a direct and proximate consequence of each of the predicate acts of

6    racketeering activity outlined above and related to Plaintiffs, Plaintiffs suffered damages,

7    including but not limited to the following: (1) the value of COR Securities and COR Clearing

8    (both of which Mr. Sugarman controlled), which was being marketed for sale at the time, was

9    irreparably harmed by over forty million dollars, (2) Mr. Sugarman's loss of lawful employment

10   and livelihood; (3) financial and associated losses; (4) loss of business opportunities, (5) loss of

11   banking relationships, (6) loss of investor relationships, (7) devaluation of business entities such

12   as COR Plaintiffs, (8) on-going damage to employability and level of compensation, (9) inability

13   to attract and retain employees, amongst other contractual damages (10) loss of access to credit,

14   (11) costs incurred by Plaintiffs related to investigations, due diligences inquiries, and other

15   processes caused by the false statements in the Aurelius Blog, and (12) other costs and expenses

16   that Mr. Sugarman and COR Plaintiffs incurred due to the Smear Enterprise.

17       291.    Plaintiffs have been damaged in an amount to be proven at trial but believed to be

18   not less than $65 million, Plaintiffs are not seeking damages under this cause of action for

19   defamation, loss of reputation or ridicule and embarrassment.

20       292.    Plaintiffs, under this statute, are also entitled to an award of treble damages and

21   costs of suit, including reasonable attorneys' fees.

22                  **FIFTH CAUSE OF ACTION:**
                    **VIOLATIONS OF THE RACKETEER INFLUENCED**
23                  **CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962(d)**
                    <u>**(Against All Defendants)**</u>
24

25       293.    The above paragraphs 1 to ____ are all realleged as if fully set forth herein.

26       294.    Plaintiffs allege that commencing in 2016, and during and continuing at all times

27   throughout at least 2019, the Defendants conspired to violate 18 U.S.C. Sec. 1962(c) in violation

28   of 18 U.S.C. Sec. 1962(d) in that each defendant agreed that each as a conspirator would conduct

**FIRST AMENDED COMPLAINT**

1 or participate in the affairs of the Enterprise through a pattern of racketeering activities,

2 including acts as more fully described above in the Fourth Cause of Action and committed two

3 or more predicate acts.

4      295.    Plaintiffs allege that the conspiratorial objective of that mutual agreement was

5 intended to retaliate against Mr. Sugarman and to obtain Plaintiffs' interests in business and/or

6 property, and that such conspiratorial conduct violates 18 U.S.C. Sec. 1962(d).

7      296.    Defendants, and all of them and each of them, agreed to participate in the

8 endeavor to retaliate against Mr. Sugarman for providing truthful information to a law

9 enforcement officer or government regulator which, if completed (as it was), would constitute a

10 violation of 18 U.S.C. Section 1513.

11      297.    Defendants, and all of them and each of them, agreed to participate in the

12 endeavor to intimidate, threaten, or corruptly persuade Mr. Sugarman from providing further

13 testimony or information as a witness in violation of 18 U.S.C. Section 1512.

14      298.    Defendants, and all of them and each of them, agreed to participate in the

15 endeavor to assist in fraudulently concealing the nature, ownership, and source of the funds used

16 in the Smear Enterprise and by Galanis in order to hide the funds from the victims of the fraud

17 and to permit the Smear Enterprise to continue in its activities which, if completed (as it was),

18 would constitute a violation of 18 U.S.C. Section 1956.

19      299.    Each of the Defendants was aware of the essential nature and scope of the

20 enterprise alleged above in the Fourth Cause of Action and intended to, and did, participate in it

21 and in two or more predicate acts in connection with it.

22      300.    As a result, Mr. Sugarman suffered damages in an amount to be proven at trial but

23 believed to be not less than $65 million; Plaintiffs are not seeking damages under this cause of

24 action for defamation, loss of reputation or ridicule and embarrassment.

25      301.    Plaintiffs, under this statute, are also entitled to an award of treble damages and

26 costs of suit, including reasonable attorneys' fees.

27      **WHEREFORE,** based on the foregoing, Plaintiffs demand the following:

28

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

A.       On the First Cause of Action, that Defendants be adjudged to have unlawfully and unfairly competed against Plaintiffs under the laws of the State of Cal, Bus. & Prof. Code Sec. 17200, et seq. and that Plaintiffs be awarded damages in an amount sufficient to compensate them for the damages caused by Defendants' unfair competition in the form of a judgment of not less than $65 million, plus an award of reasonable legal fees and expenses;

B.       On the Second Cause of Action, that Defendants be adjudged to have unlawfully and unfairly competed against Plaintiffs under the laws of the State of Cal, Bus. & Prof. Code Sec. 17200, et seq. and that Plaintiffs be awarded damages in an amount sufficient to compensate them for the damages caused by Defendants' conspiracy to commit unfair competition in the form of a judgment of not less than $65 million, plus an award of reasonable legal fees and expenses;

C.       On the Third Cause of Action, that Defendants be adjudged to have defamed Plaintiffs and that Plaintiffs be awarded damages in an amount sufficient to compensate them for the damages caused by Defendants' defamation in an amount to be proven at trial but believed to be not less than $25 million;

D.       On the Fourth Cause of Action, that Defendants be adjudged to have violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and that Plaintiffs be awarded damages in an amount sufficient to compensate them for the damages caused by these violations in the form of a judgment of not less than $65 million, plus an award of treble damages, reasonable legal fees and expenses;

E.       On the Fifth Cause of Action, that Defendants be adjudged to have violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), and that Plaintiffs be awarded damages in an amount sufficient to compensate them for the damages caused by these violations in the form of a judgment of not less than $65 million, plus an award of treble damages, reasonable legal fees and expenses;

F.       That Plaintiffs be granted punitive damages due to Defendants' willful and deliberate conduct and to deter such conduct in the future;

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**FIRST AMENDED COMPLAINT**
docs-100162714.1

1    G.    That Plaintiffs be awarded prejudgment and post-judgment interest on all

2  monetary awards; and

3    H.    Such additional relief in Plaintiffs' favor and against Defendants which the Court

4  deems appropriate.

5  ///

6  ///

7  ///

8  ///

9  ///

10 **<u>JURY TRIAL DEMAND</u>**

11    Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

12 Dated:   New York, New York
          March 6, 2020

13                          ANDERSON KILL L.L.P.

14                          By:  /s/(Jeremy E. Deutsch)

15                               And Christian V. Cangiano)

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL.: (213) 943-1444 FAX: (212) 278-1733

**FIRST AMENDED COMPLAINT**
docs-100162714.1