1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

Fred B. Burnside (SBN: 211089)
Bruce E.H. Johnson (SBN: 159927)
Ambika Doran (pro hac vice)
MaryAnn Almeida (pro hac vice)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone:   206.622.3150
Email:       fredburnside@dwt.com
             brucejohnson@dwt.com
             ambikadoran@dwt.com

Sanjay M. Nangia (SBN: 264986)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:   415.276.6500
Email:       sanjaynangia@dwt.com

*Counsel for Defendants Muddy Waters Capital,
LLC, Muddy Waters Research LLC, MLAF LP,
MWCP LLC, and Carson Block*

Daniel Solitro (SBN: 243908)
LOCKE LORD LLP
*dsolitro@lockelord.com*
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone:   213.485.1500

*Counsel for Defendants James Gibson,
Castalian Partners, LLC, and Castalian
Partners Value Fund, LP*

Marc R. Lewis (SBN: 233306)
Evangeline A.Z. Burbidge (SBN: 266966)
Bradley E. Estes (SBN: 298766)
LEWIS & LLEWELLYN LLP
601 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone:   415.762.0908
Email:       mlewis@lewisllewellyn.com
             eburbidge@lewisllewellyn.com
             bestes@lewisllewellyn.com

*Counsel for Defendants David Q. Mathews,
Gary R. Mathews, Kalyn M. Denno, Adam
J. Denno, Keith Allen Dilling, Rosemary
Norris Hall, and QKM, LLC*

## IN THE UNITED STATES DISTRICT COURT
## THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

STEVEN A. SUGARMAN, COR CAPITAL, LLC, COR ADVISORS, LLC,

                    Plaintiffs,

          v.

MUDDY WATERS CAPITAL, LLC, JASON GALANIS, CASTALIAN PARTNERS, LLC. CARSON BLOCK, JAMES GIBSON, DAVID Q. MATTHEWS, GARY ROBERT MATTHEWS, KALYN MATTHEWS DENNO, ADAM J. DENNO, KEITH ALLEN DILLING, ROSEMARY NORRIS HALL, RYAN KEALY, NIKOLAI BJORKEDAL, CASTALIAN PARTNERS VALUE FUND, LP, QKM, LLC, MUDDY WATERS RESEARCH LLC, MLAF LP, MWCP LLC, JOHN DOES 1-30,

                    Defendants.

Case No. 3:19-cv-04248-MMC

**DEFENDANTS MUDDY WATERS CAPITAL, LLC, MUDDY WATERS RESEARCH LLC, MLAF LP, MWCP LLC, JAMES GIBSON, CASTALIAN PARTNERS, LLC, CASTALIAN PARTNERS VALUE FUND, LP, DAVID Q. MATHEWS, GARY ROBERT MATHEWS, KALYN MATHEWS DENNO, ADAM J. DENNO, KEITH ALLEN DILLING, ROSEMARY NORRIS HALL, QKM, LLC, AND CARSON BLOCK'S MOTION TO STRIKE AND DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: July 17, 2020
Time: 9 a.m.
Department: Courtroom 7 – 19th Floor

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 17, 2020, in the courtroom of the Honorable Maxine M. Chesney of the above-entitled United States District Court, located at San Francisco Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Muddy Waters Capital, LLC, Muddy Waters Research LLC, MLAF LP, MWCP LLC, Carson Block ("Muddy Waters"); Castalian Partners, LLC, James Gibson, and Castalian Partners Value Fund, LP ("Castalian"); and QKM, LLC ("QKM"), David Q. Mathews, Gary R. Mathews, Kalyn M. Denno, Adam J. Denno, Keith Allen Dilling, and Rosemary Norris Hall (collectively, "Mathews Defendants"), will move this Court to dismiss the First Amended Complaint with prejudice.

The Court should strike claims in the First, Second, and Third Causes of Action under California's anti-SLAPP statute, C.C.P. § 425.16, and dismiss the Racketeer Influenced and Corrupt Organizations Act ("RICO") claims in the Fourth and Fifth Causes of Action under Rule 12(b)(6) for the following reasons:

1.       The anti-SLAPP statute applies to Plaintiffs' state-law claims because the claims are based on reports about potential misconduct by a publicly traded company and its officers—including Plaintiff Steven Sugarman—an issue of public interest, and because the reports rely on documents from official proceedings.

2.       Plaintiffs have failed to meet their burden under the anti-SLAPP statute to show a probability of prevailing on the merits of their state-law claims:

a.       Plaintiffs' defamation claim fails because the single tweet on which it is based is not capable of defamatory meaning, is privileged as a fair and true report of official proceedings, is an opinion whose factual basis is disclosed, and because Plaintiffs have failed to allege that Moving Defendants acted with actual malice.

b.       Plaintiffs' claim under the Unfair Competition Law ("UCL"), Business and Professions Code § 17200, fails for the same reasons as their defamation claim, because it is barred

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP, and LEWIS & LLEWELLYN LLP

by the statute of limitations, and because Plaintiffs have otherwise failed to allege facts to support the elements of a UCL claim.

3.    The Court should dismiss the Fourth and Fifth Causes of Action for RICO violations because a RICO claim cannot be based on protected First Amendment activity and because, in any event, Plaintiffs fail to allege facts to support the elements of a RICO claim.

Because Plaintiffs have already been afforded an opportunity to amend their Complaint, the Court should dismiss the lawsuit with prejudice.

This Motion is based on the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Ambika Doran; the November 7, 2019, Declaration of Ambika Doran (Dkt. 76-1); the January 16, 2020, Declaration of David Standa (Dkt. 97); the pleadings, files, and records in this action; and such other arguments as the Court may receive at the hearing on this Motion.

DATED: June 3, 2020

Respectfully submitted,

/s/ Ambika K. Doran
Fred B. Burnside (SBN: 211089)
Bruce E.H. Johnson (SBN: 159927)
Ambika K. Doran (pro hac vice)
MaryAnn Almeida (pro hac vice)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206.622.3150
Email:    fredburnside@dwt.com
          brucejohnson@dwt.com
          ambikadoran@dwt.com
          maryannalmeida@dwt.com

Sanjay M. Nangia (SBN: 264986)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: 415.276.6500
Email:    sanjaynangia@dwt.com

*Counsel for Defendants Muddy Waters Capital, LLC, Muddy Waters Research LLC, MLAF LP, MWCP LLC, and Carson Block*

/s/ David Standa
Daniel Solitro (SBN: 243908)
David Standa (pro hac vice)
LOCKE LORD LLP
*dsolitro@lockelord.com*
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone:    213.485.1500

*Counsel for Defendants James Gibson, Castalian Partners, LLC, and Castalian Partners Value Fund, LP*

/s/ Bradley E. Estes
Marc R. Lewis (SBN: 233306)
Evangeline A.Z. Burbidge (SBN: 266966)
Bradley E. Estes (SBN: 298766)
LEWIS & LLEWELLYN LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:    415.762.0908
Email:    mlewis@lewisllewellyn.com
          eburbidge@lewisllewellyn.com
          bestes@lewisllewellyn.com

*Counsel for Defendants David Q. Mathews, Gary R. Mathews, Kalyn M. Denno, Adam J. Denno, Keith Allen Dilling, Rosemary Norris Hall, and QKM, LLC*

2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

    A.    An Anonymous Blogger Posts a Lengthy Report that Relies on Publicly Available Information to Connect Plaintiffs with a Convicted Criminal................ 2

    B.    The Post Leads to Numerous Lawsuits from Investors, and a Nearly $20 Million Class Action Settlement. ....................................................................... 6

    C.    Plaintiffs Allege Defendants Conspired to Destroy Sugarman's Reputation, and the Court Dismisses the Claims......................................................... 7

III.   STANDARD OF REVIEW ................................................................................ 10

    A.    Rule 12(b)(6) ......................................................................................... 10

    B.    California's Anti-SLAPP Statute ...................................................................... 11

IV.   ARGUMENT .................................................................................................... 11

    A.    The Anti-SLAPP Statute Bars Plaintiffs' State-Law Claims. .......................... 11

        1.    The anti-SLAPP statute applies to Plaintiffs' state-law claims.................. 11

        2.    Plaintiffs cannot satisfy their burden under the anti-SLAPP statute. ........ 13

            a.    Plaintiffs have not sufficiently alleged a defamation claim. ......... 13

            b.    Plaintiffs' UCL claims fail. ........................................................... 15

    B.    The Court Should Dismiss Plaintiffs' RICO Claims Under Rule 12(b)(6)........... 18

        1.    The First Amendment Bars Plaintiffs' RICO claims. ............................. 18

        2.    Plaintiffs Have Failed to Plausibly Allege a Predicate Act That Caused Them Harm.................................................................................... 21

            a.    Plaintiffs' allegations regarding the purportedly fraudulent communications do not satisfy Rule 9(b)..................................... 22

            b.    Plaintiffs have not plausibly alleged that anyone was deceived. .. 23

            c.    Plaintiffs have not plausibly alleged that any Moving Defendant received money or property from a deceived person... 25

IV.   CONCLUSION ................................................................................................. 25

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP. and LEWIS & LLEWELLYN LLP

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Alan Neuman Prods., Inc. v. Albright,*
 862 F.2d 1388 (9th Cir. 1988)................................................................. 21

5

6

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
 2013 WL 3460707 (N.D. Cal. July 9, 2013) ........................................... 18

7

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................................................................. 10

8

9

*Associated Bodywork & Massage Prof'ls v. Am. Massage Therapy Ass'n,*
 897 F. Supp. 1116 (N.D. Ill. 1995) .......................................................... 20

10

11

*Aurelius v. BofI Fed. Bank,*
 2016 WL 8925145 (C.D. Cal. 2016)........................................................ 16

12

13

*In re Banc of Cal. Sec. Litig.,*
 326 F.R.D. 640 (C.D. Cal. May 31, 2018) ................................................ 6

14

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ................................................................................. 10

15

16

*Bose Corp. v. Consumers Union,*
 466 U.S. 485 (1984) ............................................................................ 18, 19

17

*Chung Goh v. Prima Fin. Grp., Inc.,*
 2017 WL 7887860 (C.D. Cal. July 26, 2017) ......................................... 10

18

19

*Creative Mobile Techs. LLC v. Flywheel Software, Inc.,*
 2016 WL 7102721 (N.D. Cal. Dec. 6, 2016) .......................................... 18

20

21

*Ctr. for Immigration Studies v. Cohen,*
 2019 WL 4394838 (D.D.C. 2019)........................................................... 18

22

23

*Currier v. Chow,*
 270 F. App'x 471 (9th Cir. 2007)............................................................ 11

24

*Doe v. Trump Corp.,*
 385 F. Supp. 3d 265 (S.D.N.Y. 2019) ..................................................... 24

25

26

*Eade v. InvestorsHub.com, Inc.,*
 2011 WL 13323344 (C.D. Cal. July 12, 2011) ....................................... 12

27

*Feld v. Conway,*
 16 F. Supp. 3d 1 (D. Mass. 2014) ........................................................... 14

28

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP. and LEWIS & LLEWELLYN LLP

*Foretich v. Advance Magazine Publishers, Inc.*,
    765 F. Supp. 1099 (D.D.C. Sept. 13, 1991) ........................................................ 18

*Global Telemedia Int'l, Inc. v. Doe 1*,
    132 F. Supp. 2d 1261 (C.D. Cal. 2001) ............................................................ 12

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ........................................................................................ 15

*Hunt v. City of Los Angeles*,
    638 F.3d 703 (9th Cir. 2011) ........................................................................... 16

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) .......................................................................................... 18

*Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
    988 F. Supp. 1341 (D. Colo. 1997) ................................................................. 16

*Jian Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ............................................................... 16

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................... 17

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ....................................................... 16, 17

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) ........................................................................... 21

*Magic Laundry Servs., Inc. v. Workers United Serv. Emps. Int'l Union*,
    2013 WL 1409530 (C.D. Cal. Apr. 8, 2013) ................................................... 20

*Makaeff v. Trump Univ.*,
    715 F.3d 254 (9th Cir. 2013) ........................................................................... 12

*Manzari v. Associated Newspapers Ltd.*,
    830 F.3d 881 (9th Cir. 2016) ........................................................................... 14

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt.*,
    2018 WL 847014 (S.D.N.Y. Jan. 12, 2018) .................................................... 16

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
    2018 WL 4735717 (S.D.N.Y. 2018) ................................................................ 14

*Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*,
    326 F. Supp. 3d 26 (S.D.N.Y. 2018) ............................................................... 14

*Monterey Plaza Hotel Ltd. P'ship v. Local 483 of the Hotel Emps. Union*,
    215 F.3d 923 (9th Cir. 2000) ..................................................................... 20, 22

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

*Moore v. Navarro*,
2004 WL 783104 (N.D. Cal. Mar. 31, 2004) .................................................... 10, 20

*Mostowfi v. i2 Telecom Int'l, Inc.*,
269 F. App'x 621 (9th Cir. Mar. 4, 2008) ................................................................ 21

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .................................................................................................. 18

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994) .................................................................................................. 19

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1090 (C.D. Cal. 2004) .............................................................. 15, 16

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995) .................................................................................... 14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018) ............................................................................... 10, 11

*Price v. Stossel*,
620 F.3d 992 (9th Cir. 2010) .................................................................................... 13

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
2019 WL 281370 (N.D. Cal. Jan. 22, 2019) ............................................................ 15

*Resolute Forest Prods., Inc. v. Green Peace Int'l*,
302 F. Supp. 3d 1005 (N.D. Cal. 2017) ................................................................... 21

*Ritchie v. Sempra Energy*,
2013 WL 12171757 (S.D. Cal. Oct. 15, 2013) ........................................................ 21

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .................................................................................... 10

*Santana v. Cook Cnty. Bd. of Review*,
679 F.3d 614 (7th Cir. 2012) .................................................................................... 20

*Savage v. Council on Am.-Islamic Relations, Inc.*,
2008 U.S. Dist. Lexis 60545 (N.D. Cal. July 25, 2008) .......................................... 21

*Smith v. Santa Rosa Democrat*,
2011 WL 5006463 (N.D. Cal. Oct. 20, 2011) ......................................................... 12

*Stutzman v. Armstrong*,
2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ........................................................ 16

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .............................................................................. 22, 25

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

*Taylor v. Yee*,
    780 F.3d 928 (9th Cir. 2015)..................................................................10

*Troy Grp., Inc. v. Tilson*,
    364 F. Supp. 2d 1149 (C.D. Cal. 2005).....................................................12

*United States v. Lew*,
    875 F.2d 219 (9th Cir. 1989).....................................................................22

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001) ..................................................................................16

*United States v. Walters*,
    997 F.2d 1219 (7th Cir. 1993)...................................................................22

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990)...................................................................18

*Vackar v. Package Mach. Co.*,
    841 F. Supp. 310 (N.D. Cal. 1993) .....................................................18, 19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)...................................................................21

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012)...................................................................10

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ......................................................15

*X-Tra Art Inc. v. Consumer Union*,
    48 F.3d 1230, 1995 WL 100613 (9th Cir. 1995)......................................16

**State Cases**

*Ampex Corp. v. Cargle*,
    128 Cal. App. 4th 1569 (2005)..................................................................12

*Bernardo v. Planned Parenthood Fed'n of Am.*,
    115 Cal. App. 4th 322 (2004)....................................................................16

*Blatty v. N. Y. Times Co.*,
    42 Cal.3d 1033 (1986)...............................................................................15

*Braun v. Chronicle Publ'g Co.*,
    52 Cal. App. 4th 1036 (1997)....................................................................11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999)...............................................................................18

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

v

*ComputerXpress, Inc. v. Jackson*,
    93 Cal. App. 4th 993 (2001) ........................................................................ 12

*Entravision Commc'ns Corp. v. Salina*,
    487 S.W.3d 276 (Tex. App. 2016) ............................................................... 13

*Forsher v. Bugliosi*,
    26 Cal. 3d 792 (1980) ................................................................................ 13

*Globe Int'l, Inc. v. Superior Court*,
    9 Cal. App. 4th 393 (1992) ................................................................. 19, 21

*Hale v. Sharp Healthcare*,
    183 Cal. App. 4th 1373 (2010) ................................................................... 17

*Healthsmart Pac. v. Kabateck*,
    7 Cal. App. 5th 416 (2016) ......................................................................... 14

*Hebrew Acad. of S.F. v. Goldman*,
    42 Cal. 4th 883 (2007) ................................................................................ 15

*J-M Mfg. v. Phillips & Cohen*,
    247 Cal.App.4th 87 (2016) ......................................................................... 14

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................................ 17

*Levine v. Blue Shield of Cal.*,
    189 Cal. App. 4th 1117 (2010) ................................................................... 16

*Long v. Walt Disney Co.*,
    116 Cal. App. 4th 868 (2004) ..................................................................... 16

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) .................................................................................. 11

*Nygard, Inc. v. Uusi-Kettula*,
    159 Cal. App. 4th 1027 (2008) ................................................................... 12

*Reader's Digest Ass'n v. Superior Court*,
    37 Cal. 3d 244 (1984) ................................................................................ 14

*Rubin v. Green*,
    4 Cal. 4th 1187 (1993) ................................................................................ 15

*Shulman v. Rosenberg*,
    2017 WL 5172642 (Md. App. Nov. 8, 2017) .............................................. 13

*Sipple v. Found. For Nat. Progress*,
    71 Cal. App. 4th 226 (1999) ....................................................................... 14

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP. and LEWIS & LLEWELLYN LLP

Defendants' Motion to Strike and Dismiss the First Amended Complaint
Case No. 3:19-cv-04248-MMC

*Taylor v. Kuwatch*,
   2004 WL 1463046 (Cal. Ct. App. June 30, 2004) .................................................. 15, 16

*ZL Techs., Inc. v. Does 1-7*,
   13 Cal. App. 5th 603 (2017) ................................................................................ 13

**Docketed Cases**

*In re Banc*,
   No. 8:17-cv-00118-DMG-DFM (C.D. Cal. March 16, 2020) ............................... 6

*In re Banc of Cal. Sec. Litig.*,
   No. 8:19-mc-00004-AG-DFM (C.D. Cal. Feb. 12, 2019) ..................................... 7

*In re Banc of Cal. Sec. Litig.*,
   No. 8:19-mc-00005-AG-DFM (C.D. Cal. Feb. 13, 2019) ..................................... 7

*In re Banc*,
   No. 8:17-cv-00118-DMG-DFM (C.D. Cal. Nov. 13, 2017) .................................. 8

*Cardona v. Banc of Cal. Inc.*,
   No. 2:17-cv-00621-CJC-DFM (C.D. Cal. Jan. 26, 2017) ..................................... 7

*COR Sec. Holdings Inc. v. Banc of Cal., N.A.*,
   No. 8:17-cv-01403-DOC-KES (C.D. Cal. Aug. 15, 2017) ................................... 7

*Garcia v. Banc of Cal. Inc.*,
   No. 8:17-cv-00118-AG-DFM (C.D. Cal. Jan. 23, 2017) ..................................... 6

*Gordon v. Bennett*,
   No. 8:19-cv-00621-AG-DFM (C.D. Cal. Apr. 2, 2019) ...................................... 7

*Gordon v. Sznewajs*,
   No. 8:17-cv-01678-CJC-DFM (C.D. Cal. Sept. 26, 2017) .................................. 7

*Johnston v. Sznewajs*,
   No. 8:19-cv-01152-AG-DFM (June 10, 2019) ................................................... 7

*Malak v. Banc of Cal., Inc.*,
   No. 8:17-cv-00138-AG-DFM (C.D. Cal. Jan. 26, 2017) ..................................... 6

*Salas v. Banc of Cal.*,
   No. BC672208 (L.A. Super. Ct. Aug. 11, 2017) ............................................... 7

*Seabold v. Banc of Cal.*,
   No. BC674694 (L.A. Super. Ct. Sept. 5, 2017) ................................................. 7

*SEC v. Archer*,
   No. 1:16-cv-03505-WHP-OTW (S.D.N.Y. July 27, 2018) .................................. 4

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

*SEC v. Sugarman*,
  No. 1:19-cv-05998-WHP (S.D.N.Y. Dec. 20, 2019) ................................................. 4

*SEC v. Sugarman*,
  No. 1:19-cv-05998-WHP (S.D.N.Y. June 26, 2019) .............................................. 4, 5

*In re Subpoenas to Produce Docs. Info., or Objects to Muddy Waters*,
  No. 2:18-mc-000147-AG-DFM (C.D. Cal. Oct. 31, 2018) ....................................... 7

*Sugarman v. Bennett*,
  No. 19STCV36697 (L.A. Super. Ct. Oct. 15, 2019) ................................................. 7

*Witmer v. Sugarman*,
  No. 2:19-cv-05488-AG-DFM (June 24, 2019) ......................................................... 7

*Witmer v. Sugarman*,
  No. 8:18-cv-00246-CJC-DFM (C.D. Cal. Feb. 12, 2018) ........................................ 7

**Federal Statutes**

18 U.S.C. § 1341 ................................................................................................................ 22

18 U.S.C. § 1343 ................................................................................................................ 22

**State Statutes**

C.C.P. § 47 ......................................................................................................................... 14

C.C.P. § 340 ....................................................................................................................... 15

C.C.P. § 425.16 ........................................................................................................ 11, 12, 13

C.C.P. § 3425.3 ................................................................................................................... 15

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) .............................................................................................. *passim*

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

Defendants' Motion to Strike and Dismiss the First Amended Complaint
Case No. 3:19-cv-04248-MMC

# I.    INTRODUCTION

This Court has already rejected Plaintiffs' RICO claim, which Plaintiffs based on Moving Defendants'[1] alleged publication of a report warning about ties between Plaintiff Steven Sugarman, then chair of Banc of California, and felon Jason Galanis. The First Amended Complaint does not cure the Complaint's defects, and the Court should dismiss with prejudice.

Published in October 2016, the report opined that there was a "significant undiscounted risk that notorious criminals [had] gained control over" Banc. The report disclosed that the author had shorted Banc's stock and detailed the basis for the opinion—that, according to public records, there were ties between Sugarman, two of his companies, other senior Banc officials, and Galanis. An SEC investigation into Banc's ties with Galanis ensued, as did several shareholder lawsuits against Banc and Sugarman, resulting in a nearly $20 million settlement.

In retaliation, Sugarman and his companies sued various Banc officers and brought this lawsuit, claiming the report and publications were the products of a "conspiracy" between Galanis, who is incarcerated, and Moving Defendants, who are short-sellers and investors. Plaintiffs' fanciful theory—the crux of which still relies on unsupported allegations made "upon information and belief"—targets protected speech. The Court should grant Moving Defendants' Motion to Strike and Dismiss with prejudice for the following reasons:

*First*, Plaintiffs' state-law claims—for defamation and violation of the UCL—fail under California's anti-SLAPP statute. That statute applies to claims that target statements about a matter of public concern—here, the misconduct of a publicly traded company. The anti-SLAPP statute requires Plaintiffs to prove a probability of prevailing on the merits. They cannot do so. The single tweet Plaintiffs claim is defamatory—that one of Sugarman's companies was started "in partnership with the now-incarcerated Jason Galanis"—is not capable of a defamatory meaning because it does not accuse Sugarman of any wrongdoing. Even if it were, the tweet is not actionable because it is a conclusion that fully describes its basis, i.e., a deposition transcript; the statement

---

[1] Moving Defendants are defined as Carson Block and the companies he founded and manages, Muddy Waters Capital, LLC, Muddy Waters Research LLC, MLAF LP, and MWCP LLC; James Gibson, one company he managers, Castalian Partners, and one company in which he is an officer, Castalian Value Fund; and David Q. Mathews, who manages defendant QKM, LLC, which is an investment advisor who formerly advised for defendant investors Gary Robert Mathews, Kalyn Mathews Denno, Adam J. Denno, Keith Allen Dilling, and Rosemary Norris Hall.

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

is protected by the privilege that applies to reports of judicial proceedings, such as deposition transcripts; and Plaintiffs cannot allege that the statements were published with knowledge or reckless disregard that they were false, as required where, as here, the plaintiff is a public figure, i.e., the former chair of a publicly traded company accused of wrongdoing. Plaintiffs' UCL claims fail for these reasons, because they are almost entirely barred by the statute of limitations, and because the FAC fails to allege the basic elements of a UCL claim.

*Second,* Plaintiffs have again failed to state a RICO claim. Courts reject civil RICO claims premised on speech protected by the First Amendment. Plaintiffs allege no more than Moving Defendants published publicly available information that harmed Plaintiffs. That Moving Defendants may have ultimately profited from the publication—just as a newspaper or magazine profits from its own publications—does not strip the speech of its First Amendment protection. In any event, Plaintiffs do not plausibly allege a RICO violation. Plaintiffs offer *no facts* to support their (incorrect) belief that Moving Defendants worked with Galanis to publish the reports. Indeed, the transcript on which Plaintiffs rely proves the opposite—no conspiracy could have occurred because Galanis did not know the Moving Defendants existed. And Plaintiffs again lump together all Defendants, without distinguishing the role each played in the alleged enterprise, as Rule 9(b) requires. Finally, Plaintiffs do not plausibly allege any Moving Defendant obtained money or property from any person allegedly deceived, as required for a predicate act of fraud under RICO.

The Court should strike Plaintiffs' state-law claims under California's anti-SLAPP statute, dismiss Plaintiffs' RICO claims under Rule 12(b)(6), and award Moving Defendants their fees.

## II.     FACTUAL BACKGROUND

### A.     An Anonymous Blogger Posts a Lengthy Report that Relies on Publicly Available Information to Connect Plaintiffs with a Convicted Criminal.

Plaintiff Steven Sugarman is a former Chairman of the Board, President, and CEO of the Banc of California, a publicly traded company. FAC (Dkt. 104) ¶ 4. He is a prominent business leader in Los Angeles, having led Banc's highly publicized recapitalization in November 2010 and co-authored a book about corporate fraud. *Id*. ¶¶ 8, 145, 153(h), 154(r). Sugarman manages COR Capital, LLC and COR Advisors, LLC, which he owns with his wife. *Id*. ¶¶ 5-7.

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP, and LEWIS & LLEWELLYN LLP

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

Beginning in 2016, the public began to focus on Sugarman's and other Banc officials' connections with Jason Galanis, who had been charged at the time in connection with multiple fraud schemes for which he is now incarcerated. Galanis allegedly used Sugarman's reputation to enhance his own business, including preparing documents that implied Sugarman and associates at Banc were "financial sponsors" of Galanis's business endeavors. FAC ¶¶ 65-66. A September 2016 Bloomberg News report described investors' and advisors' "misgivings" about Sugarman's leadership at Banc, based on sweetheart deals to his family and board members, including his brother Jason Sugarman—a known Galanis associate. FAC ¶ 44; Declaration of Ambika Doran ("Doran Decl."), Ex. A.

On October 18, 2016, pseudonymous blogger "Aurelius" opined in a post on Seeking Alpha (seekingalpha.com) "that BANC's senior-most officers and board members have a broad mosaic of extensive and indisputable ties to Jason Galanis," and that "[w]e believe this introduces a significant un-discounted risk that notorious criminals gained control over the $10 Billion taxpayer guaranteed Banc of California." Decl. of A. Doran, Nov. 7, 2019 ("First Doran Decl.") Ex. A, Dkt. 76-2 at 1, 2; FAC ¶ 112. Aurelius wrote in this post (the "Initial Blog Post") that the author had taken a short position on Banc stock, warned investors "to conduct their own due diligence," and stated that the post's opinions were "based upon information reasonably available to the author and obtained from sources the author believes to be reliable." First Doran Decl., Ex. A at 1. The rest of the Initial Blog Post explained the basis for the author's opinion. The post stated that Galanis and his father "have a long history of secretly gaining control of banks and public companies via front men," and opined that "[t]he mere presence of a bank leadership team associated with Galanis should send diligent investors running for the hills." *Id.* at 2 (emphasis omitted). The report summarized four main conclusions: (1) Galanis "controlled COR, BANC's Founding Shareholder"; (2) an "off-balance sheet lender controlled by BANC's senior-most officers financed Galanis"; (3) "BANC's lead 'independent' director has strong ties to Galanis"; and (4) "[w]e see similarities between BANC and Galanis's Gerova Financial fraud." *Id.* (emphasis omitted). This summary was followed by a detailed explanation of (and citations to) the basis for each conclusion.

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

The post provided the following specific bases for the opinions that Galanis "controlled COR, BANC's Founding Shareholder":

- In 2013, Galanis and Hugh Dunkerley, then a COR Capital executive, formed Valor Group Ltd., an entity used to finance the acquisition of asset managers who purchased fraudulent bonds. Both Galanis and Dunkerley were indicted for their role in the scheme. *Id*. at 4.

- Sugarman's brother, Jason Sugarman [and since charged with fraud by the SEC],[2] is Valor's CEO, chair, and founder, and was a paid Banc consultant at the time of the scheme. *Id*.

- An SEC attorney attested that Valor's primary insurance subsidiary, Wealth-Assurance AG, as well as Burnham Financial (a key player in the bonds scheme), were "[a]mong COR's family of businesses." *Id*.

- Valor's website listed COR as its owner, and a COR website included Banc, Wealth-Assurance AG, and Burnham Financial as entities in which COR was a "principal investor." *Id*. at 4-5.

- An SEC attorney testified that the SEC's investigation showed COR entities "seem to be controlled by [Jason] G[a]lanis." *Id*. at 5.

- According to SEC documents, Galanis and Dunkerley worked from the same building as Banc's corporate headquarters in Irvine, California. *Id*. at 6.

The post concluded that "Galanis' demonstrated control over COR's portfolio companies combined with his physical presence at BANC's headquarters building, introduces the material risk that Galanis also gained control of Banc of California," a risk "amplified by the trail of indisputable ties between BANC's senior-most officers and Jason Galanis." *Id*.

The post provided similar sourcing and explanation for its remaining conclusions, i.e., an "off-balance sheet lender controlled by BANC's senior-most officers financed Galanis," Banc's "lead 'independent' director has strong ties to Jason Galanis," and there are "similarities between BANC and" another fraud Galanis committed. *Id*. at 1-3. Among other things, relying on public records, the Initial Blog Post documents Sugarman's ownership of Camden Capital, which loaned Galanis $1.18 million in 2015; and ties between Banc's lead independent director, Chad Brownstein, and Galanis, including that Brownstein co-founded and served as vice-chair of

---

[2] The SEC has charged Jason Sugarman, who has signed public documents on COR's behalf, with the same fraudulent bond scheme as Galanis. *SEC v. Sugarman*, No. 1:19-cv-05998-WHP, Dkt. 6 (S.D.N.Y. June 26, 2019) (alleging Sugarman "held himself out as a Member and Manager of COR Capital," and "saw and approved Galanis's 'Introduction to COR Capital'" document). The SEC has also said that COR is "Steven Sugarman and Jason Sugarman's entity," and "Steven Sugarman has a relationship to this scheme as well." *SEC v. Archer*, No. 1:16-cv-03505-WHP-OTW, Dkt. 181 (S.D.N.Y. July 27, 2018). For instance, account statements for an entity established by Jason Sugarman and Dunkerley as part of the scheme "were sent to an office in Los Angeles that [Jason] Sugarman and his brother used for their various businesses." *SEC v. Sugarman*, No. 1:19-cv-05998-WHP, Dkt. 42 (S.D.N.Y. Dec. 20, 2019).

4

Prospect Global Resources, Inc., an entity to which Galanis transferred ill-gotten proceeds, and which Galanis owned, controlled, or was associated with. *Id.* at 11-12.

Banc's counsel demanded Seeking Alpha remove the post, but also issued a Form 8-k notification to investors, including a press release stating that its counsel was conducting an "independent investigation" into Galanis's ties to Banc. First Doran Decl., Exs. B & C, Dkts. 76-3 and 76-4.[3]

Two days later, Aurelius wrote again on Seeking Alpha ("Second Blog Post"). *Id.* Ex. D, Dkt. 76-5; FAC ¶ 127. Aurelius explained that "[i]n our opinion, the company's statements to investors concerning the independence of the investigation are materially false." First Doran Decl., Ex. D at 1, Dkt. 76-5. Aurelius reasoned that Banc's counsel at Winston & Strawn LLP, including attorney David Aronoff, "have long acted as defense counsel for both Steven Sugarman and COR," including representing "Sugarman family members" personally. Aurelius concluded Aronoff's involvement "in our opinion, casts doubt on every aspect of the Company's public statements regarding Jason Galanis." *Id.* at 3. Following the Second Blog Post, Aurelius published a large quantity of source material on a website, bancexposed.com. FAC ¶ 134. This included the "Introduction to COR Capital" document Aurelius cited in the Initial Blog Post, documents "which had been used at Galanis' [sic] trial as evidence of his false and fraudulent statements regarding Mr. Sugarman," and other documents in Sugarman's or the COR entities' names. FAC ¶¶ 134, 138. The "Introduction to COR Capital" document is now part of the case against Jason Sugarman, Steven Sugarman's brother. *See SEC v. Sugarman*, 1:19-cv-05998-WHP, Dkt. 6 S.D.N.Y. June 26, 2019).

On January 26, 2017, Aurelius published a third Seeking Alpha post ("Third Blog Post") providing information from "a whistleblower with deep knowledge of Jason Galanis' [sic] business dealings with the Sugarmans." First Doran Decl., Ex. E at 1, Dkt. 76-6. As before, the author detailed a review of "transactions [that], in our opinion, are extremely troubling and act to

---

[3] Banc later admitted that the press release "was inaccurate" in that it "overstated both the degree to which the company had been in contact with regulatory agencies about the subject matter referenced in the blog post, as well as the involvement of directors." *See* Banc of California Filing, available at https://www.sec.gov/Archives/edgar/data/1169770/000119312517018153/d336750dex993.htm (last visited June 3, 2020).

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP, and LEWIS & LLEWELLYN LLP

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

significantly increase the fraud risk profile of the Banc of California," including a deal between Galanis and Sugarman and Banc's transfer of mortgages to an investment advisor with "strong interconnectedness with Steven Sugarman's COR Companies." *Id.* at 3. The post explained that Galanis contributed capital for acquisitions by COR Securities Holdings through shares he held in a company founded and chaired by Brownstein, hyperlinking to the proxy filing Aurelius believed supported this revelation. Aurelius later amended the Third Blog Post to state that the whistleblower was not a Banc insider. FAC ¶ 143. And again, Aurelius added a disclaimer that the post was a "research opinion," "represent[ing] the opinion of the author as of the date of this article." First Doran Decl., Ex. D at 1. Aurelius also disclosed that they held a short position in Banc. *Id.* at 10. After the Third Blog Post, another pseudonymous writer, "Rota Fortunae," tweeted about Sugarman and Banc, including retweeting an Aurelius tweet regarding Sugarman's investment advice book. FAC ¶ 145.

### B. The Post Leads to Numerous Lawsuits from Investors, and a Nearly $20 Million Class Action Settlement.

Lawsuits and investigations followed in the fallout of these revelations. The SEC investigated both Banc and Sugarman. FAC ¶ 74(b). The agency subsequently sent a letter to Sugarman's counsel indicating it had ended its investigation, but disclaimed any exoneration of Sugarman—although Plaintiffs inexplicably allege the opposite. *Id.* & Ex. B.

In January 2017, two individuals brought putative class actions against Banc, Sugarman, and others. *Garcia v. Banc of Cal. Inc.,* No. 8:17-cv-00118-AG-DFM (C.D. Cal. Jan. 23, 2017), Dkt. 1; *Malak v. Banc of Cal., Inc.*, No. 8:17-cv-00138-AG-DFM (C.D. Cal. Jan. 26, 2017), Dkt. 1. Those plaintiffs alleged Sugarman and Banc misled investors by failing to disclose Sugarman's ties to Galanis in Banc's 2015 proxy statement. *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 644 (C.D. Cal. May 31, 2018). The court in that consolidated case denied Sugarman's motion to dismiss and granted the plaintiffs' motion for class certification before the parties settled the matter for $19.75 million. *In re Banc*, No. 8:17-cv-00118-DMG-DFM, Dkt. 613-14 (C.D. Cal. March 16, 2020). The plaintiffs agreed to a statement that they "did not uncover any proof that Galanis exercised or had any control or decision-making authority over Mr. Sugarman or any of Mr.

Sugarman's business entities." FAC ¶ 74(a) & Ex. A ¶ 2. Meanwhile, the court quashed substantial portions of subpoenas to Moving Defendants, including requests to unmask Aurelius' identity, which the court held was protected by the First Amendment. *See In re Banc of Cal. Sec. Litig.*, No. 8:19-mc-00004-AG-DFM (C.D. Cal. Feb. 12, 2019); *In re Banc of Cal. Sec. Litig.*, No. 8:19-mc-00005-AG-DFM (C.D. Cal. Feb. 13, 2019); *In re Subpoenas to Produce Docs. Info., or Objects to Muddy Waters*, No. 2:18-mc-000147-AG-DFM (C.D. Cal. Oct. 31, 2018).

There are also three ongoing shareholder derivative class action lawsuits against multiple Banc executives, including Sugarman and Brownstein,[4] three putative shareholder derivative class actions that have ended,[5] and disputes between COR and Banc officials.[6]

## C.   Plaintiffs Allege Defendants Conspired to Destroy Sugarman's Reputation, and the Court Dismisses the Claims.

Plaintiffs' Complaint alleged Moving Defendants worked with Galanis and each other to publish false, fraudulent, or defamatory statements, asserting claims for defamation, violation of the UCL, conspiracy to violate the UCL, and RICO violations. Compl. (Dkt. 1) ¶¶ 169-229.

Moving Defendants filed a motion to strike Plaintiffs' state-law claims under the anti-SLAPP statute and to dismiss their RICO claims under Rule 12(b)(6). Dkt. 76. The Court dismissed the RICO claims under Rule 12(b)(6), and declined to exercise supplemental jurisdiction over the state-law claims. Dkt. 102. The Court held that the RICO claims failed because "plaintiffs do not allege they were deceived by any of the allegedly false and misleading statements assertedly made by, or otherwise attributable, to the Moving Defendants." *Id.* at 6. The Court also held that the claims (1) were "not pleaded in conformity with Rule 9(b)" because the Complaint did not

---

[4] *See Gordon v. Bennett*, No. 8:19-cv-00621-AG-DFM, Dkt. 57 (C.D. Cal. Apr. 2, 2019) (consolidating *Gordon* with *Johnston v. Sznewajs*, No. 8:19-cv-01152-AG-DFM, *Witmer v. Sugarman*, No. 2:19-cv-05488-AG-DFM). Those cases also concern revelations of Sugarman's ties to Galanis. *Gordon*, No. 8:19-cv-00621-AG-DFM, Dkt. 1 ¶¶ 1-23; *Johnston*, No. 8:19-cv-01152-AG-DFM, Dkt. 1 ¶¶ 1-13; *Witmer*, No. 2:19-cv-05488-AG-DFM, Dkt. 1-1 ¶¶ 1-27.

[5] *Cardona v. Banc of Cal. Inc.*, No. 2:17-cv-00621-CJC-DFM (C.D. Cal. Jan. 26, 2017); *Witmer v. Sugarman*, No. 8:18-cv-00246-CJC-DFM (C.D. Cal. Feb. 12, 2018); *Gordon v. Sznewajs*, No. 8:17-cv-01678-CJC-DFM (C.D. Cal. Sept. 26, 2017).

[6] *COR Sec. Holdings Inc. v. Banc of Cal., N.A.*, No. 8:17-cv-01403-DOC-KES (C.D. Cal. Aug. 15, 2017) (dispute between two COR entities and Banc subsidiary over access to electronic account where Sugarman stored documents); *Salas v. Banc of Cal.*, No. BC672208 (L.A. Super. Ct. Aug. 11, 2017) (suit by former Banc executive against Banc); *Seabold v. Banc of Cal.*, No. BC674694 (L.A. Super. Ct. Sept. 5, 2017) (same); *Sugarman v. Bennett*, No. 19STCV36697 (L.A. Super. Ct. Oct. 15, 2019) (suit against former Banc officials by Sugarman).

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

identify the allegedly false statements with sufficient specificity; (2) failed to "inform each of the Moving Defendants of his, her, or its participation in the making of" the allegedly false statements; and (3) failed to allege "when or where" certain statements were made or "the basis for plaintiffs' asserted 'information and belief'" *id.* at 6-8, 10.

On March 6, 2020, Plaintiffs filed the FAC, asserting claims for defamation, violation of the UCL, and RICO violations. FAC ¶¶ 223-301. The FAC alleges that Galanis is the lynchpin of a purported conspiracy to take down Sugarman and his companies, having "admitted that he was the source" for Aurelius and allegedly paid attorney Thomas Mazzucco "to collect and provide the fraudulent documents used in [Galanis's] fraudulent activities" to Moving Defendants. FAC ¶¶ 41-42, 89. The sole basis for these allegations is a transcript of a deposition of Galanis in the securities lawsuit. *Id.* ¶ 89 & Ex. J. As Moving Defendants explained before, Galanis testified he was unfamiliar with Moving Defendants except for Carson Block and Muddy Waters—whom he knew of only from media coverage. Decl. of D. Standa Ex. C (Dkt. 97-3) at 316:18-318:13. He also testified he had no contact with Aurelius until after the Initial Blog Post and Banc's response. *Id.* at 314:23-315:11.

As to the Muddy Waters Defendants, Plaintiffs claim—based on Sugarman's "discussions" with unnamed "reporters"—that Block provided Bloomberg news information about Sugarman's connections to Galanis. FAC ¶ 109. They also allege "[o]n information and belief"—without disclosing any basis for this belief—that the Muddy Waters Defendants sought to distance themselves from the reports based on concerns about their own reputation. *Id.* ¶ 110. Beyond that, Plaintiffs allege Muddy Waters's involvement based only on sealed FINRA trading records produced in the securities litigation in the Central District of California, *id.* ¶ 115,[7] and the fact Muddy Waters has used anonymous blogs in other instances, FAC ¶ 13. Plaintiffs assert—without identifying any basis for their assertion—that the Muddy Waters Defendants had each blog post in advance and "read, edited, drafted and approved the publication." *Id.* ¶¶ 115, 130, 148, 189.

---

[7] As Plaintiffs admit, these records are governed by a protective order. Yet they have not sought leave of that court to make use of the information, in violation of the order. *See In re Banc*, No. 8:17-cv-00118-DMG-DFM, Dkt. 83 (C.D. Cal. Nov. 13, 2017) (confidential material may not be "use[d] for any purpose other than this litigation").

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP, and LEWIS & LLEWELLYN LLP

Plaintiffs allege the involvement of the Mathews Defendants based almost entirely on undisclosed trading records and the fact that they "establish[ed] significant short positions" before the Initial Blog Post, followed by an exit from that position. *See, e.g.*, FAC ¶¶ 117, 186. Plaintiffs allege that Defendants David Q. Mathews and QKM operate the online presence Rota Fortunae, relying on documents that purportedly "identify [Rota] as Texas-based with connections to investors in Texas and Kan[s]as," while "all of the other [Mathews] Defendants have ties to Texas or Kansas," and "conversations which Mr. Sugarman has had with market participants with relationships in Dallas." *Id.* ¶ 25. Plaintiffs allege—again with no stated basis—that David Q. Mathews and QKM received advance drafts and "read, edited, drafted and approved the publication" of the posts, and that all of the Mathews Defendants were aware of and "approve[d] the publication" of the posts. *See id.* ¶¶ 117, 132, 150.

Finally, Plaintiffs allege the Castalian Defendants "operate and control an on-line presence known as 'Aurelius.'" *Id.* ¶ 19. Plaintiffs' basis for this allegation is that "[a]n executive at another public company who had previously been the target of an attack by the Aurelius on-line presence told Mr. Sugarman that he was personally aware of evidence which showed that Gibson was the author of the content under the Aurelius on-line persona['s] blog and Twitter account." *Id.* Plaintiffs fail to identify the executive or the "evidence." Once more, Plaintiffs rely on sealed FINRA trading records and Sugarman's "discussions with reporters at the Los Angeles Times"—again unidentified—to allege the Castalian Defendants' participation. *Id.* ¶ 116.

Plaintiffs also claim that members from each set of Moving Defendants communicated about the Initial Blog Post and coordinated short positions—with little distinction between their roles. *Id.* ¶ 119. For example, Plaintiffs claim "other members" of the alleged enterprise "knew that the source of the documents and information was Galanis," *id.* ¶ 96, but "conceal[ed] Galanis' [sic] involvement," *id.* ¶ 97, and their own identities, *id.* ¶ 101. As in the initial Complaint, Plaintiffs lump together all Defendants regarding key conduct, based on "public filings, motions, court arguments, communications between attorneys and other sources," which mostly go unspecified. *Id.* ¶ 102. The FAC does not allege Plaintiffs were deceived by Moving Defendants' alleged conduct. Instead, it claims that four other entities—three of whom purchased put options

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

before the Initial Blog Post as well as Seeking Alpha—were deceived. *Id.* ¶¶ 201-13. These allegations are made on information and belief. *Id.*

## III.   STANDARD OF REVIEW

### A.   Rule 12(b)(6)

Moving Defendants ask the Court to strike Plaintiffs' state-law claims under California's anti-SLAPP statute and dismiss their RICO claims under Rule 12(b)(6). Where, as here, no discovery has occurred, the standard for dismissal under the anti-SLAPP statute, once a defendant shows that the statute applies, is the same as under Rule 12(b)(6). *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard.").

Under Rule 12(b)(6), dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." A complaint is subject to dismissal if it lacks a cognizable legal theory or if it does not include sufficient facts to support a plausible claim under a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to raise a right to relief above the speculative level—that is, a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although a plaintiff may make allegations "on information and belief," it must "provide [a] real basis" for the information and belief. *Chung Goh v. Prima Fin. Grp., Inc.*, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017) (dismissing RICO claims).

In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider "[d]ocuments whose contents are alleged in the Complaint, and whose authenticity no party questions, but which are not physically attached to the pleading." *Moore v. Navarro*, 2004 WL 783104, at *2 (N.D. Cal. Mar. 31, 2004) (Chesney, J.); *see also U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). Here, Plaintiffs refer extensively to the Aurelius publications, which themselves incorporate by reference

1   additional documents. The posts and some of these documents are attached to the November 7,

2   2019 Doran Declaration (Dkt. 76-1).

3          Finally, where a court has already afforded a plaintiff the opportunity to amend its

4   complaint to state a claim, dismissal with prejudice is proper. *Currier v. Chow*, 270 F. App'x 471,

5   474 (9th Cir. 2007).

6          **B.      California's Anti-SLAPP Statute**

7          The California Legislature enacted the anti-SLAPP statute to quickly dispose of meritless

8   claims that target free speech rights. *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042

9   (1997). The statute uses a two-step process: "First, the court decides whether the defendant has

10  made a threshold showing that the challenged cause of action is one arising from protected

11  activity," by showing the alleged conduct "underlying the plaintiff's cause fits one of the categories

12  spelled out" in Section 425.16(e). *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). It "must then

13  determine whether the plaintiff has demonstrated a probability of prevailing." *Id.* Again, in federal

14  court, this means the plaintiff must satisfy the pleading standards under Rule 12(b)(6). *Planned*

15  *Parenthood*, 890 F.3d at 834. If the plaintiff does not, the Court must strike the claim and award

16  the movant its attorneys' fees. *Id.*; C.C.P. § 425.16(b)(1).

17                         **IV.      ARGUMENT**

18  **A.      The Anti-SLAPP Statute Bars Plaintiffs' State-Law Claims.**

19         Under the anti-SLAPP statute, any "cause of action against a person arising from any act

20  … in furtherance of the person's right of … free speech … in connection with a public issue shall

21  be subject to a special motion to strike, unless the court determines that the plaintiff has established

22  that there is a probability that the plaintiff will prevail on the claim." C.C.P. § 425.16(b)(1). The

23  Court should strike Plaintiffs' defamation and UCL claims under the anti-SLAPP statute.

24         **1.      The anti-SLAPP statute applies to Plaintiffs' state-law claims.**

25         California's anti-SLAPP statute protects statements "made in connection with an issue

26  under consideration or review by a legislative, executive, or judicial body, or any other official

27  proceeding"; writings "made in … a public forum in connection with an issue of public interest";

28  and "conduct in furtherance of the exercise of … the constitutional right of free speech in

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

connection with a public issue or an issue of public interest." C.C.P. § 425.16(e)(2), (e)(3), (e)(4).

Courts interpret the terms "public issue" and "public interest" broadly, encompassing "*any issue in which the public is interested.*" *Nygard, Inc. v. Uusi-Kettula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original). "[T]he issue need not be 'significant' … it is enough that it is one in which the public takes an interest." *Id.* "Several courts have held that the conduct of a publicly traded corporation, including the legitimacy of corporate actions, falls within at least one of these [public interest] categories." *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1153 (C.D. Cal. 2005). A public company's "successes or failures will affect not only individual investors, but in the case of large companies, potentially market sectors or the markets as a whole." *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1265 (C.D. Cal. 2001). Thus, the anti-SLAPP statute applies to statements about "publicly traded companies and their management," as well as "activities that may affect the value of the stock." *Eade v. InvestorsHub.com, Inc.*, 2011 WL 13323344, at *5 (C.D. Cal. July 12, 2011); *see also, e.g.*, *Makaeff v. Trump Univ.*, 715 F.3d 254, 261-63 (9th Cir. 2013) (statements about fraud, mismanagement, other bad business practices are of public interest); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576-77 (2005) (anti-SLAPP law applied to posts critical of corporate management); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1007-08 (2001) (same).

In view of this authority, subsection (e)(4) encompasses the claims in this lawsuit. At bottom, Plaintiffs challenge Aurelius's opinion that (admitted) ties between a convicted fraudster and the officers and board members of Banc, a publicly traded company, introduced a significant undiscounted risk that "notorious criminals gained control over the $10 Billion taxpayer guaranteed Banc of California." FAC ¶ 114. Subsection (e)(3) also applies, as Seeking Alpha and Twitter are public fora. *See ComputerXpress*, 93 Cal. App. 4th at 1006; *Nygard*, 159 Cal. App. 4th at 1039. Finally, subsection (e)(2) applies because the posts rely heavily on court records. *See Smith v. Santa Rosa Democrat*, 2011 WL 5006463, at *2 (N.D. Cal. Oct. 20, 2011) ("articles regarding judicial proceedings" protected).

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

### 2. Plaintiffs cannot satisfy their burden under the anti-SLAPP statute.

Because Plaintiffs' state-law claims fall within the anti-SLAPP statute, Plaintiffs bear the burden to establish a probability of prevailing on the merits of these claims. C.C.P. § 425.16(b)(1). That means they must plead a claim sufficient to satisfy Rule 12(b)(6). They have not done so.

#### a. Plaintiffs have not sufficiently alleged a defamation claim.

The sole basis for Plaintiffs' defamation claim is a single tweet that COR Clearing was started "in partnership with the now-incarcerated Jason Galanis." FAC ¶ 245; *see* First Doran Decl. Ex. G, Dkt. 76-8. This claim fails.

*First*, the tweet is not capable of a defamatory meaning. Whether a challenged statement is susceptible of a defamatory interpretation is a question of law. *ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017). Far from being "*per se* defamatory," FAC ¶ 247, a defamation claim predicated on a statement that someone is associated with a person convicted of a crime fails. *Shulman v. Rosenberg*, 2017 WL 5172642, at *9-12 (Md. App. Nov. 8, 2017) (statement that plaintiffs had "associate[d] with criminals" who burglarized their home was not actionable; plaintiffs "failed to allege any facts to demonstrate that the meaning imputed to [them] could rise to the level of actionable defamation"); *Entravision Commc'ns Corp. v. Salina*, 487 S.W.3d 276, 285 (Tex. App. 2016) (statement that mayor's father had been arrested with a "very important sum of money" and showing photo of mayor and father was not capable of defamatory meaning; "ordinary person" would not "infer[] that [the mayor] was involved in any criminal wrongdoing with [convicted person] or that he was a corrupt and criminal politician or a criminal drug trafficker by association"). Nor can Plaintiffs credibly claim that the tweet "impl[ies] that Sugarman … is somehow complicit in those criminal activities himself." FAC ¶ 247. Courts strictly limit claims for defamation by implication, to avoid stifling legitimate discussions that may be susceptible to various interpretations. *See Price v. Stossel*, 620 F.3d 992, 1004 (9th Cir. 2010) (no defamatory implication where statement "did not discuss any identifiable crime"); *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803-04 (1980) (rejecting claim that book accused plaintiff of murder where it repeatedly connected plaintiff to related events). This independently undermines any likelihood of Plaintiffs prevailing on their defamation claim.

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP, and LEWIS & LLEWELLYN LLP

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

*Second*, Plaintiffs' defamation claim fails because the posts are "fair and true" reports of official proceedings and records, and therefore privileged under C.C.P. § 47(d). "The fair report privilege 'confers an absolute privilege on any fair and true report in, or a communication to, a public journal of a judicial proceeding, or anything said in the course thereof,'" and courts construe the privilege "broadly." *Healthsmart Pac. v. Kabateck*, 7 Cal. App. 5th 416, 431 (2016) (granting anti-SLAPP motion to strike defamation claim based in privileged reports); *J-M Mfg. v. Phillips & Cohen*, 247 Cal. App. 4th 87, 101 (2016) (same). The tweet cites the trial transcript of Hugh Dunkerley, a former executive of Plaintiff COR Capital as saying he "believe[d] [Galanis] was involved with COR Clearing." *See* U.S. v. Galanis, 19-cv-8512, Dkt. 655, 98 (Oct. 18, 2018). The transcript is a "judicial proceeding," and the statement is therefore privileged. *Sipple v. Found. For Nat. Progress*, 71 Cal. App. 4th 226, 237-38 (1999) (testimony in a judicial proceeding within the meaning of Civil Code section 47(b) & (c)).

*Third*, the tweet is an opinion based on disclosed facts, i.e., the transcript. "[W]hen a speaker outlines the factual basis for his conclusion, his statement … is not actionable in defamation." *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) (citation omitted); *see also Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 38 (S.D.N.Y. 2018) (where tweet cites source, "[i]t would be clear to any reader that [an opinion expressed in a tweet] was based on the contents of that [source]."). Anyone viewing Aurelius's twitter feed could not miss seeing that the transcript is the basis for the statement. A "tweet cannot be read in isolation, but in the context of the entire discussion." *Feld v. Conway*, 16 F. Supp. 3d 1, 4 (D. Mass. 2014). Plaintiffs' defamation claim fails for this reason too.

*Finally*, Plaintiffs fail to allege Moving Defendants acted with "actual malice"—the applicable standard for public figures, such as Plaintiffs. *See Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 254 (1984) (business leaders are public figures for statements about the conduct of business affairs); *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016) ("business people" are public figures for defamation purposes); *see also, e.g., MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 4735717, at *8 (S.D.N.Y. 2018) (publicly traded company was public figure, including for statements about alleged wrongdoing). Actual malice

requires showing the defendant acted "with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (citation and internal quotation marks omitted). The burden to allege "actual malice" is "demanding," and conclusory statements are not enough. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014). A plaintiff must plead facts showing "each defendant acted with actual malice as to each purported defamation." *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 2019 WL 281370, at *8 (N.D. Cal. Jan. 22, 2019). Plaintiffs fail to allege facts to suggest Moving Defendants knew or acted with reckless disregard as to whether the tweet was false, and the citation of sworn testimony suggests otherwise.

### b.   Plaintiffs' UCL claims fail.

Nor have Plaintiffs alleged a claim for violation of the UCL.

*First,* the UCL claims fail for the same reasons as the defamation claim. First Amendment protections "are not peculiar to [defamation] actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement." *Blatty v. N. Y. Times Co.*, 42 Cal.3d 1033, 1042-43 (1986). Accordingly, "[l]awsuits premised on section 17200 are subject to being stricken [where] they are barred by the First Amendment." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1110 (C.D. Cal. 2004); *see also Blatty*, 42 Cal.3d at 1048; *Rubin v. Green*, 4 Cal. 4th 1187, 1202-03 (1993) (UCL claim barred where underlying conduct was protected by litigation privilege). As a result, the Court should strike Plaintiffs' UCL claims for the same reasons as their defamation claim. *Supra* at Section IV.A.2.a.

*Second,* the UCL claims are barred by the statute of limitations. Every allegedly unlawful statement—except the October 24, 2018 tweet—was published more than a year before Plaintiffs filed this lawsuit. California requires claims sounding in defamation to be filed within one year of the date of publication. *See* C.C.P. § 340(c)); *Hebrew Acad. of S.F. v. Goldman*, 42 Cal. 4th 883, 890 (2007). A plaintiff cannot "circumvent the statutory limitation by proceeding on a theory other than defamation," where the core of the allegation is that the statements are defamatory. *Taylor v. Kuwatch*, 2004 WL 1463046, at *5 (Cal. Ct. App. June 30, 2004) (citation omitted). *Taylor* relies on California Civil Code § 3425.3, which states that a plaintiff has only "one cause of action for

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

damages for libel or slander or invasion of privacy or any other tort founded upon any single publication." *See id.* at *1. So long as the "gravamen" of the other claim "is injurious falsehood," the defamation statute of limitations applies. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 988 F. Supp. 1341, 1345 (D. Colo. 1997) (quoting *X-Tra Art Inc. v. Consumer Union*, 48 F.3d 1230, 1995 WL 100613, at *3 (9th Cir. 1995) (table)); *see also Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 873 (2004). Because Plaintiffs' claims all relate to the allegedly defamatory statements in Aurelius's posts and tweets, they are subject to the one-year statute of limitations.

*Third*, UCL lawsuits are "barred by the First Amendment where the speech complained of is not commercial speech." *Stutzman v. Armstrong*, 2013 WL 4853333, at *14 (E.D. Cal. Sept. 10, 2013) (quoting *New.Net*, 356 F. Supp. 2d at 1110). The Aurelius posts are not commercial speech, as commercial speech "does no more than propose a commercial transaction." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)). Even if the Aurelius posts have a commercial component, that aspect is at least "inextricably intertwined" with discussion of Banc's and Sugarman's relationship with Galanis, "a matter of public concern." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 864 (N.D. Cal. 2015). Moreover, an economic motivation is "insufficient by itself" to render speech commercial. *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 345-46 (2004). Accordingly, the Central District has held that similar Aurelius posts are noncommercial speech. *Aurelius v. BofI Fed. Bank*, 2016 WL 8925145, at *3 (C.D. Cal. 2016) (post sourced from publicly available information and detailing Aurelius's opinion about BofI's current state was protected, noncommercial speech); *see also MiMedx Grp., Inc. v. Sparrow Fund Mgmt.*, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018) (citing cases); *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 443 (S.D.N.Y. 2014) (search engine results not commercial speech; they "relate to matters of public concern and do not themselves propose transactions").

*Finally*, Plaintiffs fail to allege facts required to support any theory of liability under the UCL, i.e., "that the defendant committed a business act that is either fraudulent, unlawful, or unfair." *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1136 (2010).

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP, and LEWIS & LLEWELLYN LLP

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

**Claim under "fraud" prong**.  Plaintiffs' UCL claims are predicated on the Aurelius representations that Plaintiffs allege are fraudulent—in other words, under the "fraud" prong of the UCL. *See* Dkt. 84, 10 ("Plaintiffs' primary complaint here is Moving Defendants' fraudulent conduct."). But Plaintiffs nowhere allege that they relied on any of the misrepresentations or omissions they assert and therefore lack standing under the fraud prong. *L.A. Taxi Coop.*, 114 F. Supp. 3d at 866. A fraud claim—under the UCL or otherwise—"cannot be maintained based on a third party's reliance." *Id*. at 867. Nor can any other UCL theory survive if it is "predicated on the same misrepresentation theory." *Id.*; *see also Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (2010) (reliance element "applies equally to the 'unlawful' prong of the UCL, when, as here, the predicate unlawful conduct is misrepresentation"). Finally, any claim for "fraudulent" practices is subject to Rule 9(b)'s heightened pleading standard, which Plaintiffs still fail to meet. *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to all prongs of UCL claims where claims were grounded in fraud); *see also* Section IV.B.2.b.

**Claim under "unfair" prong.**  In addition, Plaintiffs lack any cognizable injury that may form the basis for a claim under the "unfair" prong, which can be brought only by the "narrow [] categor[ies]" of competitors and consumers injured "as a result of" an alleged violation. *Hale*, 183 Cal. App. 4th at 1381-84. The FAC alleges that Moving Defendants are competitors because Plaintiffs "make investments on behalf of private investors and investment funds" and "manage private investments in the financial services industry." FAC ¶¶ 227-28. But Plaintiffs nowhere allege any facts suggesting Plaintiffs could have lost business due to Moving Defendants' alleged actions. To the contrary, the FAC alleges that at least two defendants, Muddy Waters and QKM, specialize in short selling securities, *id.* ¶¶ 10, 20, a niche investment strategy that Plaintiffs do not claim to undertake. The FAC also details the limited clientele of QKM (which consist almost solely of family members), *id.* ¶¶ 20-21, and says nothing whatsoever about the clientele of the Castalian Defendants, *id.* ¶¶ 15-16. Without factual allegations that the parties' clients or prospective clients overlap, Plaintiffs' suggestions of competition—and UCL injury—fall short. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320-21 (2011) (UCL "confine[s] standing to those actually injured by a defendant's business practices"); *Hale*, 183 Cal. App. 4th at 1384.

**Claim under "unlawful" prong.**  Further, even a competitor cannot prove an "unlawful" practice claim unless the defendant's conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws … or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Here, there is no such alleged violation. *Id.* at 186; *Creative Mobile Techs. LLC v. Flywheel Software, Inc.*, 2016 WL 7102721, at *2 (N.D. Cal. Dec. 6, 2016) (plaintiff "could not plead a violation of the 'unlawful' prong of the UCL because it had failed to plead a violation of antitrust law"). Nor have Plaintiffs alleged a viable claim based on violation of any other laws. *E.g.*, *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2013 WL 3460707, at *7-8 (N.D. Cal. July 9, 2013) ("[The plaintiff] admits that its unlawful unfair competition claim is derived from its defamation and trade libel claims. Since those claims do not survive, neither does the unlawful competition claim."). Because Plaintiffs' defamation and RICO claims fail, so does any UCL theory predicated on those claims.

**B.      The Court Should Dismiss Plaintiffs' RICO Claims Under Rule 12(b)(6).**

Although the anti-SLAPP statute does not apply to federal claims, Plaintiffs' amended RICO claims fail under Rule 12(b)(6).

**1.      The First Amendment Bars Plaintiffs' RICO claims.**

First Amendment protection does not depend on the label given to a cause of action. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964); *see also Bose Corp. v. Consumers Union*, 466 U.S. 485, 513-14 (1984) (First Amendment applied to product disparagement claim); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 54-57 (1988) (First Amendment barred emotional distress claim arising from a satirical feature in Hustler magazine). In other words, a plaintiff may not use the artifice of clever pleading to "end-run[] other requirements of defamation law." *Foretich v. Advance Magazine Publishers, Inc.*, 765 F. Supp. 1099, 1104 (D.D.C. Sept. 13, 1991); *see also Vackar v. Package Mach. Co.*, 841 F. Supp. 310, 315 (N.D. Cal. 1993) (courts reject "disingenuous attempts to evade" defamation laws through creative pleading); *Unelko Corp. v. Rooney,* 912 F.2d 1049, 1057-58 (9th Cir. 1990) (product disparagement and interference claims "subject to the same first amendment requirements that govern actions for defamation"); *Ctr. for*

*Immigration Studies v. Cohen*, 2019 WL 4394838, at *5 (D.D.C. 2019) (plaintiff "cannot end-run the requirements for a defamation claim" by pleading a RICO claim).

Plaintiffs' repetitive use of RICO catchphrases does not change the fact that their claims are for reputational injury, arising from the gathering and publication of information about them. Indeed, the FAC's second paragraph accuses Moving Defendants of "destroy[ing] the reputation and business products of Steven Sugarman and his limited liability companies." FAC ¶ 2; *see also id.* ¶ 99 (defendants used documents, citations, and information to create false and intentionally misleading posts and websites); *id.* ¶ 100 (defendants "coordinat[ed] and/or direct[ed] the development, drafting, research and/or sources for the publications"). A "plaintiff[] may not avoid the strictures of defamation law by artfully pleading [his] defamation claims to sound in other areas of tort law." *Vackar*, 841 F. Supp. at 315.

Almost two decades ago, Supreme Court Justices Souter and Kennedy warned about the danger of allowing "harassing RICO suits" that "could deter protected advocacy," and advised "courts applying RICO to bear in mind the First Amendment interests that could be at stake." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264-265 (1994) (Souter, J., concurring). Justice Souter noted that "[c]onduct alleged to amount to … one of the … somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal on that basis." *Id.* at 264.

This was the outcome in *Globe International, Inc. v. Superior Court*, 9 Cal. App. 4th 393 (1992). There, actress Joan Collins sued Globe International after it published photographs "taken with a high technology lens" showing her and a man on private property. *Id.* at 395. Collins alleged that "the photographs were 'illegally' obtained and assert[ed] fraud arising from publication of the photographs and the accompanying text." *Id.* at 399. The court rejected the RICO claim, holding that the conduct alleged "does not fit within the framework Congress designed RICO to address." *Id.* at 400. The court relied on the Supreme Court's decision in *Bose Corp.* and other First Amendment cases, concluding the RICO claim was "nothing more than an attempt to avoid the protections given to speech by simply affixing labels other than invasion of privacy and defamation to the injury which is the gravamen of … the complaint." *Id.*

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

These protections are not unique to journalists. In other contexts, too, courts reject RICO claims premised on constitutionally protected speech. For example, in *Monterey Plaza Hotel Ltd. Partnership v. Local 483 of the Hotel Employees Union*, 215 F.3d 923 (9th Cir. 2000), the Ninth Circuit affirmed dismissal of a RICO claim on the basis that a union's alleged misrepresentations to a hotel's current and potential customers could not, as a matter of law, constitute mail or wire fraud. *Id*. at 926-27. The court explained that the "Union's conduct may have been vexatious or harassing, but it was not acquisitive," and "[t]he purpose of the mail fraud and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, *not to salve wounded feelings*." *Id.* at 927 (emphasis added). This rule applies here, as the gravamen of Plaintiffs' RICO claims is that Moving Defendants' writing harmed their reputation, and there is no plausible, or even non-frivolous, allegation of "acquisitive" conduct, i.e., that the alleged enterprise "sought to obtain" property. *See Magic Laundry Servs., Inc. v. Workers United Serv. Employees Int'l Union*, 2013 WL 1409530, at *8 (C.D. Cal. Apr. 8, 2013) (dismissing RICO claim premised on allegedly false statements aimed at convincing plaintiff's employees to unionize); *Moore*, 2004 WL 783104, at *8 (no RICO claim for emotional distress caused by allegedly defamatory speech).

In *Associated Bodywork & Massage Professionals v. American Massage Therapy Association*, 897 F. Supp. 1116, 1121 (N.D. Ill. 1995), the plaintiff, a professional massage therapy association, tried to plead a RICO violation by arguing that a competitor's distribution of "allegedly libelous literature" constituted mail fraud. This is virtually identical to Plaintiffs' allegation that Moving Defendants committed "wire fraud" by posting articles on a website. FAC ¶¶ 124, 265. The court rejected the argument, noting "[a]llegations of nonviolent state law transgressions will not inject RICO implications into protected speech," and concluding the communications were "entitled to First Amendment protections, despite allegations that those communications contained libelous statements." *Associated Bodywork*, 897 F. Supp. at 1121. "Although Plaintiff may have a common law remedy against Defendant, the alleged indirect injury does not give rise to a RICO remedy." *Id.*; *see also Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 623 (7th Cir. 2012) (RICO claim based on reputational injury properly rejected even if

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

statements were defamatory); *Ritchie v. Sempra Energy*, 2013 WL 12171757, at *4 (S.D. Cal. Oct. 15, 2013) (no RICO predicate act for "smear campaign," including allegedly defamatory Facebook page); *Savage v. Council on American-Islamic Relations, Inc.*, 2008 U.S. Dist. Lexis 60545, at *27 (N.D. Cal. July 25, 2008) (dismissing RICO claim tied to audio clip because conduct was "related to speech" under First Amendment).

Plaintiffs' RICO claims are based on the same theory rejected by these courts. They claim Moving Defendants are guilty of "racketeering" for conducting online research and publishing reports. *See* FAC ¶¶ 124, 265. These "predicate acts" are no different than the "racketeering activities" alleged by Joan Collins against the Globe journalists who photographed her on private property and published the photographs. *Globe*, 9 Cal. App. 4th at 396. The alleged wrongful conduct is protected by the First Amendment, and Plaintiffs are "limited to the relief available in tort and may not seek triple damages through an improper attempt to place a RICO label upon tort claims." *Id.* at 396-97. For this reason alone, the Court should dismiss Plaintiffs' RICO claims.

### 2.   Plaintiffs Have Failed to Plausibly Allege a Predicate Act That Caused Them Harm.

The RICO claims fail for the independent reason that Plaintiffs have failed to allege a predicate act that caused them injury.

A RICO claim requires alleging: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Because Plaintiffs' RICO claims sound in fraud, Rule 9(b)'s heightened pleading requirements apply. Dkt. 102 at 6 (citing *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)). Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." This means "stating the time, place, and specific content of the false representations as well as the identities to the parties to the misrepresentation." *Resolute Forest Prods., Inc. v. Green Peace Int'l*, 302 F. Supp. 3d 1005, 1015 (N.D. Cal. 2017); *see also Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. Mar. 4, 2008) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments "must be accompanied by the

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP, and LEWIS & LLEWELLYN LLP

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

1   who, what, when, where, and how of the misconduct charged."). Accordingly, "Rule 9(b) does not

2   allow a complaint to merely lump multiple defendants together but requires plaintiffs to

3   differentiate their allegations when suing more than one defendant and inform each defendant

4   separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG*

5   *LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and internal quotation marks omitted).

6      Applying this authority here, Plaintiffs have once again failed to state a RICO violation.

7   Plaintiffs claim Moving Defendants engaged in the predicate acts of wire and mail fraud. FAC

8   ¶¶ 259-60, 263. "[T]he mail and wire fraud statutes, §§ 1341 and 1343, prohibit the use of the

9   mails and wire to *obtain* money or property *from the one who is deceived*." *Monterey Plaza Hotel*,

10  215 F.3d at 926 (emphasis in original); *see also United States v. Lew*, 875 F.2d 219, 221 (9th Cir.

11  1989) (reversing mail fraud conviction for lack of evidence that defendant obtained money or

12  property from one who was deceived by defendant's allegedly false statements); *United States v.*

13  *Walters*, 997 F.2d 1219, 1227 (7th Cir. 1993) ("only a scheme to obtain money or other property

14  from the victim by fraud violates § 1341"). Plaintiffs do not sufficiently allege any of the

15  elements—they have not plausibly pleaded that Moving Defendants' acted fraudulently, that

16  anyone was actually deceived, or that Moving Defendants obtained money from anyone deceived.

17         **a.      Plaintiffs' allegations regarding the purportedly fraudulent**

18                  **communications do not satisfy Rule 9(b).**

19      Plaintiffs complain about numerous purportedly fraudulent statements, but have failed to

20  allege those statements in conformity with Rule 9(b).

21      *First*, Plaintiffs still lump together defendants. For example, they allege "Gibson and

22  Castalian" posted each of the blog posts. FAC ¶¶ 116, 131, 140, 143. But the FAC defines

23  "Castalian" to include two entities. *Id.* ¶ 16. Thus, these allegations improperly lump together three

24  Moving Defendants as having posted the blog posts. Plaintiffs similarly lump together other

25  subsets of Moving Defendants regarding other alleged actions. *See, e.g.*, *id.* ¶¶ 115, 130 (lumping

26  together Block and "Muddy Waters," which the FAC defines as including three entities); *id.*

27  ¶¶ 117, 132 (lumping together Mathews and QKM); *id.* ¶ 119, 133, 151 (lumping together

28  "Defendants Block, Gibson, David Q. Matthews [sic], Gary Robert Matthews [sic], Kalyn

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

Matthews [sic] Denno, Adam J Denno, Keith Allen Dilling, and Rosemary Norris Hall"); *id.* ¶ 145 (lumping together "Matthews [sic], QKM, and the other Matthews [sic] Defendants").[8]

Plaintiffs' allegations regarding the "Aurelius Website" (as defined in the FAC) are even more deficient. *See* FAC ¶¶ 134-139. In these allegations, Plaintiffs refer only to actions taken by "Defendants" or "Smear Defendants," the latter of which is not even defined. *Id.* These allegations lack even the halfhearted and unsuccessful efforts to distinguish among Moving Defendants' participation in the purportedly fraudulent statements.

Moreover, allegations in the FAC regarding purportedly fraudulent tweets similarly lump together multiple Moving Defendants. *See, e.g.*, FAC ¶¶ 126, 153, 155, 176 (lumping Gibson and Castalian); FAC ¶¶ 145, 154-55 (lumping "Matthews [sic], QKM, and the other Matthews [sic] Defendants"). Thus, these allegations also are insufficiently particular under Rule 9(b).

*Second*, the remaining allegedly fraudulent statements fall even further short of Rule 9(b)'s required particularity. They yet again fail to differentiate among Moving Defendants, while also (a) failing to allege particularly ***when and where*** the statement was made, as well as the factual basis for Plaintiffs' asserted "information and belief" (*see, e.g.*, FAC ¶ 220); or (b) failing to allege ***what*** specific statement was made, and the factual basis for Plaintiffs' asserted "information and belief" regarding the Moving Defendants' purported involvement (*see, e.g.*, FAC ¶ 175).

With no plausible, specific allegations of fraud, Plaintiffs cannot plead the predicate acts of wire or mail fraud.

**b.      Plaintiffs have not plausibly alleged that anyone was deceived.**

The Court dismissed the original Complaint in part because Plaintiffs failed to allege they had been deceived by Moving Defendants. Dkt. 102 at 6. Plaintiffs now point to third parties whom they allege, "upon information and belief," were deceived. FAC ¶¶ 201-13 (alleging Simplex

---

[8] In fact, Plaintiffs fail to plead a single, specific allegation regarding the individual actions of Defendants Gary Robert Mathews, Kalyn Mathews Denno, Adam J. Denno, Keith Allen Dilling, and Rosemary Norris Hall, only offering allegations that lump them together. *See* FAC ¶¶ 21, 25, 117, 132-33, 150-51, 201-04. Dismissal of all causes of action against these Defendants is appropriate on that basis alone.

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP, and LEWIS & LLEWELLYN LLP

Investments, Jane Street Capital, Andrew Left, and Seeking Alpha were deceived). But Plaintiffs fail to allege facts to support this conclusion.

Plaintiffs claim "[u]pon information and belief," that "after reading and relying upon the false and misleading statements in the Initial Blog Post," each of these third parties purchased "put options in Banc of California stock, and thereafter lost all the money it invested in those put options." FAC ¶¶ 201-04 (similar allegations for Simplex, Jane Street, and Left). But Plaintiffs do not explain how they know this. They allege no facts to suggest Simplex, Jane Street, or Left read the blog posts. They also allege no facts to suggest these third parties purchased the put options based on the blog posts. Instead, Plaintiffs merely allege that Simplex, Jane Street, and Left purchased put options around the time of the blog posts. That is a far cry from adequately pleading that they purchased the put options in reliance on the blog posts.

Plaintiffs also allege another third party—Seeking Alpha—was duped. These allegations are difficult to follow, but it appears Plaintiffs are arguing that (1) the Mathews Defendants presented Seeking Alpha an article; (2) the Mathews Defendants promised to comply with Seeking Alpha's terms of use; (3) Seeking Alpha relied on that promise; (4) the Mathews Defendants published an article about Sugarman; (5) the article violated Seeking Alpha's terms of use; and (6) Seeking Alpha paid the Mathews Defendants. *See* FAC ¶¶ 205-213. But Plaintiffs fail to allege that the allegedly fraudulent conduct—the Mathews Defendants' alleged violation of Seeking Alpha's terms of use—caused them harm. Instead, according to Plaintiffs, it is the publication of *other* Seeking Alpha articles that caused the alleged harm. *See Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 276-77 (S.D.N.Y. 2019) (no proximate cause for RICO claim arising from multi-level marketing scheme; "conduct giving rise to the fraud must be the conduct directly causing the harm, unattenuated by substantial intervening factors or third parties"). Moreover, Plaintiffs do not allege that Seeking Alpha was deceived by the purported violation of its terms of use, and to hold otherwise would create a predicate RICO act anytime someone violates a website's terms of use.

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

DAVIS WRIGHT TREMAINE LLP, LOCKE
LORD LLP, and LEWIS & LLEWELLYN LLP

      c.      **Plaintiffs have not plausibly alleged that any Moving Defendant received money or property from a deceived person.**

Plaintiffs also fall short of establishing that the Moving Defendants received money or property from any of the allegedly deceived persons.

With respect to Simplex, Jane Street, and Left, Plaintiffs allege—again on information and belief—that the third parties' put option purchases "can be directly tied to Defendants Muddy Waters Capital, LLC, MFLAF LP, Carson Block, Castalian Partners Value Fund, LP, James Gibson, Gary Robert Matthews [sic], David Q. Matthews [sic], Kalyn Matthews [sic] Denno, Adam J Denno, Keith Allen Dilling, and Rosemary Norris Hall selling the put options they had previously purchased." FAC ¶¶ 201-04. But Plaintiffs do not allege (nor can they) that only Moving Defendants sold Banc options and could have received the funds from Simplex, Jane Street, or Left. Further, Plaintiffs fail to allege which Moving Defendant(s) received money or property from these third parties. In each of Paragraphs 201, 202, 203, and 204, Plaintiffs name eleven different parties that allegedly sold put options that "can be tied" to purchases by Simplex, Jane Street, and Left. *Id.* This improperly "lump[s] multiple defendants together." *See Swartz*, 476 F.3d at 764-65.

Plaintiffs have a similar problem with respect to Seeking Alpha. Plaintiffs allege Seeking Alpha paid the "Matthews Defendants" for a *different* article, but the FAC defines the "Matthews Defendants" to include six individuals and one entity. *Id.* ¶ 21. Even if it were plausible that each of these seven defendants sought and received payment from Seeking Alpha for a single article, Plaintiffs still may not "lump multiple defendants together." *See Swartz*, 476 F.3d at 764-65.

## V.    CONCLUSION

For these reasons, Moving Defendants respectfully ask the Court to dismiss all claims with prejudice, and award them their attorneys' fees under the anti-SLAPP statute.

DATED this 3rd day of June, 2020.

LEWIS & LLEWELLYN LLP

By */s/ Bradley E. Estes*
Marc R. Lewis (SBN: 233306)
Evangeline A.Z. Burbidge (SBN: 266966)
Bradley E. Estes (SBN: 298766)

*Attorneys for David Q. Mathews, Gary R.
Mathews, Kalyn M. Denno, Adam J. Denno,
Keith Allen Dilling, Rosemary Norris Hall,
and QKM, LLC*

DAVIS WRIGHT TREMAINE LLP

By */s/ Ambika K. Doran*
Fred B. Burnside (SBN: 211089)
Bruce E.H. Johnson (SBN: 159927)
Ambika Doran (pro hac vice)
Sanjay M. Nangia (SBN: 264986)
MaryAnn Almeida (pro hac vice)

*Attorneys for Defendants Carson Block,
Muddy Waters Capital, LLC, Muddy
Waters Research LLC, MLAF LP, and
MWCP LLC*

LOCKE LORD LLP

By */s/ David Standa*
Daniel A. Solitro (SBN: 243908)
David Standa (pro hac vice)

*Attorneys for Defendants Castalian Partners,
LLC, Castalian Partners Value Fund, LP,
and James Gibson*

DAVIS WRIGHT TREMAINE LLP, LOCKE LORD LLP. and LEWIS & LLEWELLYN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC

1

**ATTESTATION OF CONCURRENCE IN THE FILING**

2      I, Ambika K. Doran, an ECF user whose ID and password are being used to file this

3  motion, in compliance with N.D. Cal. Civil Local Rule 5-1(i)(3), attest that all other signatories

4  listed, and on whose behalf the filing is submitted, concur in the filing's content and have

5  authorized the filing.

6      I declare under penalty of perjury under the laws of the United States that the foregoing is

7  true and correct.

8      Executed this 3rd day of June, 2020, at Mercer Island, Washington.

9

10                                                            */s/ Ambika K. Doran*
                                                              Ambika K. Doran
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion to Strike and Dismiss First Amended Complaint
Case No. 3:19-cv-04248-MMC